# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**07 CIV. 6689**

96 BROADWAY LLC, its members, DOUGLAS R. DOLLINGER, MICHAEL MOLUS and CAROL MOLUS, DOUGLAS R. DOLLINGER, and THE LAW OFFICES OF DOUGLAS R. DOLLINGER, individually and others so similarly situated,

Plaintiffs,

vs.

THE CITY OF NEWBURGH, NICHOLAS VALENTINE, in his capacity as Mayor of the CITY OF NEWBURGH, THE NEWBURGH CITY COUNCIL its Council persons, REGINA ANGELO, GEORGE BOWLES, SALVATORE CRACOLICI, MARYANN DICKINSON in their capacity as members of THE NEWBURGH CITY COUNCIL, SALVATORE CARCOLICI individually , JEANNE McGRANE as NEWBURGH CITY MANAGER and individually, THE NEWBURGH CITY BUILDING DEPARTMENT, WILLIAM CUMMINGS as former Building Inspector for the CITY OF NEWBURGH and individually, THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, MARY CRABB as in her capacity as Chairperson, and individually, PETER KING in his capacity as a  as a member of THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, and individually, CORPORATION COUNSEL FOR THE CITY OF NEWBURGH, MICHELLE KELSON in her capacity as Assistant CORPORATON Counsel and individually, MICHAEL GABOR, JOHN DOEs 1-10 and JANE ROEs 1-10,  and NEWBURGHER's for ACCOUNTABILITY in GOVERNMENT,

Defendants.

Case No.:07CV

JUL 2 5 2007

USDC WP SDNY

**COPY**

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUCTIVE RELIEF PLAINTIFFS' CIVIL RIGHTS COMPLAINT FOR VIOLATIONS OF PLAINTFFS' FOURTH, FIFTH and FOURTEENTH AMENDMENT RIGHTS UNDER U.S. TITLE 42 §§1983, 1985 (1)&(3) GUARANTEED TO PLAINITFFS UNDER THE NEW YORK STATE CONSTITUTION**

**TRIAL BY JURY DEMANDED**

## PRELIMINARY STATEMENT

1.     This action seeks: (1) a temporary order from this Court restraining, enjoining and otherwise prohibiting Defendants, their agents, servants, employees or any others from illegally interfering with Plaintiffs vested rights and allowing Plaintiffs to complete the approved roof line of their building; (2) an order granting permanent injunction directing that a certain Building Permit issued to Plaintiffs by Defendants be reinstated; (3) that the accompanying "stop work orders" be vacated and that Plaintiff be allowed to complete the restoration of their building pursuant to their filed and approved building plans upon a finding from this Court that the actions of THE CITY OF NEWBURGH, NICHOLAS VALENTINE, in his capacity as Mayor of the CITY OF NEWBURGH, THE NEWBURGH CITY COUNCIL its Council persons, REGINA ANGELO, GEORGE BOWLES, SALVATORE CRACOLICI, MARYANN DICKINSON in their capacity as members of THE NEWBURGH CITY COUNCIL, SALVATORE CRACOLICI individually, JEANNE Mc GRANE as NEWBURGH CITY MANAGER, and individually, THE NEWBURGH CITY BUILDING DEPARTMENT , WILLIAM CUMMINGS as former Building Inspector for the CITY OF NEWBURGH, and individually, THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, MARY CRABB in her capacity as Chairperson, and individually, PETER KING in his capacity as a member of THE NEWBURGH CITY

ARCHITECTURAL REVIEW COMMISSION, and individually, CORPORATION COUNSEL FOR THE CITY OF NEWBURGH, MICHELLE KELSON in her capacity as Assistant Corporation Counsel and individually, MICHAEL GABOR, JOHN DOEs 1-10 and JANE ROEs 1-10, NEWBURGHER's for ACCOUNTABILITY in GOVERNMENT as direct policy makers or co-conspirators, under the color of law; (4) an award in monetary damages to Plaintiffs for having violated Plaintiffs' federal and state constitutional rights, by taking Plaintiffs' vested property interest in their building and the building permit issued for the premises located at 96 Broadway, City of Newburgh, County of Orange, State of New York and for other wrongful acts.

2.      Plaintiffs claim that Defendants have collectively engaged in invidious-unlawful conduct, or otherwise illegally conspired among themselves and acted to deny Plaintiffs the equal protection of the law in application of their due process rights because after implementing a policy-practice-custom and/or procedure wherein the CITY Building Department lawfully issued a building permit to Plaintiffs, the CITY Building Department, without a lawful purpose, reason or legal justification, but instead for entirely political pressures, and other illegitimate-improper reasons, under the color of law unlawfully revoked said building permit, wherein the CITY is requiring the Plaintiffs to restore the building-property to its former appearance so as to satisfy those asserting the political pressures-fears.

# JURISDICTION AND VENUE

3.    This Court has "federal question" jurisdiction in this case under 28 U.S.C. § 1331, as Plaintiffs have asserted claims arising under the laws of the United States and the U.S. Constitution.    Specifically, **(1)** a temporary restraining order and a permanent injunction **(2)** cause of action involves federal questions related to Plaintiffs' rights under the 4th , 5th  and 14th Amendments to the US Constitution, and violations of Plaintiffs' civil rights under Part II: 42 U.S.C. sec. 1983 (due process and equal protection clauses), **(3)** violations of Part III: 42 U.S.C. sec. 1985 (1) & (3) (conspiracy).

4.    Because Plaintiffs have asserted various claims arising under state law that form part of the same "case or controversy" as claims arising under federal law, this Court also has "supplemental jurisdiction" pursuant to 28 U.S.C. § 1367 involving **(4)** fraud by omission and nondisclosure, **(5)** common law conspiracy, **(6)** negligent infliction of emotional distress, and **(7)** intentional infliction of emotional distress, **(8)** abuse of process, **(9)** defamation, libel and slander.

5.    Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2), because Defendants reside in this judicial district, and all events giving rise to this cause of action occurred in this judicial district.

## PARTIES

6.    Plaintiff 96 BROADWAY, LLC (hereafter from time-to-time "96 BROADWAY" or Plaintiffs) is a limited liability company incorporated in the State of New York.

7.    Plaintiff 96 BROADWAY, is a landowner and taxpayer in the City of Newburgh, County of Orange, State of New York.

8.    Plaintiff 96 BROADWAY's principle members are MICHAEL MOLUS, CAROL MOLUS and DOUGLAS R. DOLLINGER (hereafter from time-to-time collectively "Plaintiffs" or by their individual identities "DOLLINGER", "M. MOLUS" and "C. MOLUS").

9.    In particular, 96 BROADWAY owns the real property located at 96 Broadway, City of Newburgh, Orange County, New York and other properties located within the City, wherein said tax assessment, both individually and collectively, are well in excess of $1000.

10.    Plaintiff DOLLINGER is an attorney licensed to practice law before all of the Court of New York State and principle of the LAW FIRM DOUGLAS R. DOLLINGER & ASSOCIATES (hereafter from time-to-time the "FIRM").

11.    The FIRM is a Professional Corporation, incorporated in the State of New York with its principle offices presently located at 113 Liberty Street, Newburgh, Orange County, New York.

12.    Plaintiff DOLLINGER, individually as Principle and on behalf of the FIRM has a "special and vested interest" in the building and permits issued because the building was and is the proposed local Law Office of the FIRM, DOUGLAS R. DOLLINGER and ASSOCIATES, and because the FIRM and DOLLINGER are and have been directly impacted by the illegal actions of the Defendants, particularly by the loss of income in his, and the FIRM's, ability to maintain a law practice at 96 Broadway, Newburgh, New York and at any other location in the City of Newburgh, or other locations in Orange County, New York based on false allegation related to criminal conduct associated with the subject building permit issued in this matter.

13.    The CITY OF NEWBURGH (hereafter the "CITY" and from time-to-time the MUNICIPAL Defendant(s)") is a municipal corporation established pursuant to the provisions of § 20 of the General City Law and is the governmental body, that has been and is being used as a vehicle  for an illegal Enterprise and which has as a governmental body by and through it members known of the conspiracy with the CITY policy makers and other defendants herein, and acting under the color of law has illegally taken Plaintiffs' vested property rights in violation of Plaintiffs' 4[th] , 5th  and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) as applicable under the New York State Constitution.

14.   The NEWBURGH CITY COMMON COUNCIL  (hereafter the "CITY COUNCIL" and from time-to-time the "MUNICIPAL Defendant(s)") is the governing legislative body and has the powers and duties set forth in the General City Law and the Municipal Home Rule Law and is a governmental body that has been used as a vehicle  for  an illegal Enterprise and which has by its elected members conspired with the CITY policy makers to illegally take Plaintiffs' vested property rights under the color of law in violation of Plaintiffs' 4th , 5th   and 14th Amendment rights to equal protection of the law, their right of due process in the application of the law and has otherwise violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) as applicable under the New York State Constitution.

15.   THE NEWBURGH CITY BUILDING DEPARTMENT  (hereafter the "BUILDING   DEPARTMENT"   and   from   time-to-time   the   "MUNICIPAL Defendant(s)")  is an arm of the CITY governing body and has the powers and duties set forth in the New York State building codes and other local code enforcement statutes and is a governmental body that has been used as a vehicle  for  an illegal Enterprise and which has by its members conspired with the CITY policy makers to illegally take Plaintiffs' vested property rights under the color of law in violation of Plaintiffs' 4th , 5th   and 14th Amendment rights to equal protection of the law, their right of due process in the application of the law and has otherwise violated Plaintiffs' civil

rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) as applicable under the New York State Constitution.

16.    NICHOLAS VALENTINE (the "MAYOR" and from time-to-time a/the "MUNICIPAL Defendant(s)") is the duly elected Mayor of the City of Newburgh and is sued in his official capacity as Mayor of the CITY because as an elected official he has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required by Plaintiffs' 4th , 5th  and 14th Amendment rights to equal protection of the law, their right of due process under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

17.    REGINA    ANGELO,    ("ANGELO"    and    from    time-to-time    a/the "MUNICIPAL Defendant(s)" ) is a member of the "CITY COUNCIL", and a policy maker and is sued in her official capacity as council person because as an elected official she has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required under Plaintiffs' 4th, 5th   and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

18.    GEORGE BOWLES, ("BOWLES" and from time-to-time a/the "MUNICIPAL Defendant") is a member of the CITY COUNCIL, and a policy maker and is sued in his official capacity as council person because as an elected official he has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required under Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

19.    SALVATORE CRACOLICI ("CRACOLICI" and from time-to-time a/the "MUNICIPAL Defendant(s)" and/or a "co-conspirator" and member of an illegal "Enterprise") is a member of the CITY COUNCIL, and a policy maker and is sued in his official capacity as council person CITY and individually as a co-conspirator and Enterprise member because he has acted individually, and in furtherance of an illegal Enterprise and as an elected official he has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required under Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

20.   MARYANN DICKINSON ("DICKINSON" and from time-to-time a/the "MUNICIPAL Defendant") is a member of the CITY COUNCIL, and a policy maker and is sued in her official capacity as counscil person CITY because as an elected official she has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required under Plaintiffs' 4th , 5th  and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

21.   JEANNE McGRANE is an attorney and is the NEWBURGH CITY MANAGER ("CITY MANANGER" or "McGRANE" and from time-to-time a/the "MUNICIPAL Defendant(s)" and "co-conspirator" and a member of an illegal "Enterprise"), and a policy maker sued in her official capacity as CITY MANAGER and individually as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

22.    WILLIAM CUMMINGS ("CUMMINGS" and from time-to-time the "MUNICIPAL Defendant(s) a "co-conspirator" and member of an illegal "Enterprise") is the former Building Inspector ("BUILDING INSPECTOR") for the CITY and a former policy maker sued in his official capacity as BUILDING INSEPCTOR and individually and as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

23.    THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, (hereafter the "ARC") is the governmental advisory commission to the CITY that has been used as a vehicle  for  the illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

24.    MARY CRABB ("CRABB" and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") is the Chairperson of the ARC and a policy maker sued in her official capacity as Chairperson and individually, and as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

25.    PETER KING ("KING" and from time-to-time a/the "MUNICIPAL Defendant(s)" a co-conspirator and member of an illegal "Enterprise") was from-time-to-time a member of the ARC and a policy maker sued in his official capacity as ARC member and individually, as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

26.    CORPORATION  COUNSEL  FOR  THE  CITY  OF  NEWBURGH (hereafter "CORPORATON COUNSEL" and from time-to-time a/the "MUNICIPAL Defendant(s)" and a "co-conspirator") is arm of the CITY government and the legal representative-advisor-prosecutor of its polices-practices-procedures and customs for the CITY of NEWBURGH that has been used by its appointed members as a vehicle to conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property under the color of law in violation of Plaintiffs' 4th , 5th   and 14th Amendment rights to equal protection of the law, their due of the process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant under  Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

27.    MICHELLE  KELSON  ("KELSON  and  from  time-to-time  a/the "MUNICIPAL   Defendant(s)"   a   "co-conspirator"   and   member   of   an   illegal "Enterprise")  is  an  attorney  Assistant  Corporation  Counsel  and  is  the  legal representative-advisor, prosecutor for the CITY of NEWBURGH who has intentionally failed to prosecute-enforce  policies, practices and procedures instituted by the CITY, acted illegally with the knowledge consent of the CITY-CITY's policy maker McGRANE and other named defendants herein, and is sued in her official capacity as Assistant Corporation Counsel and individually, as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants

herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

28.    MICHAEL GABOR, individually ("GABOR" and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") was and is a resident of the City of Newburgh and a co-conspirator-member of an illegal Enterprise sued in his official capacity as concealed-clandestine ARC member and individually, as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

29.    JOHN DOEs 1-10, ("DOE and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") whose real names and identities are unknown to Plaintiffs at this time were and are residents of the City of Newburgh and are co-conspirators-members of an illegal Enterprise

individually, and as a co-conspirators of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th , 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

30.    JANE ROEs 1-10, ("ROEs and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") whose real names and identities are unknown to Plaintiffs at this time were and are residents of the City of Newburgh and are co-conspirators-members of an illegal Enterprise individually, and as a co-conspirators of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th , 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

31.    The NEWBURGHER's for ACCOUNTABILITY in GOVERNEMENT (hereafter the "NAG's  and from time-to-time a/the "MUNICIPAL Defendant(s)" a

"co-conspirator" and member of an illegal "Enterprise") is  an association-in-fact that has been used as a vehicle  for an illegal Enterprise and which has by governmental fiat by and through it members conspired with the CITY policy makers and other defendants herein to illegally take Plaintiffs' vested property rights under the color of law in violation of Plaintiffs' 4th, 5th  and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) as applicable under the New York State Constitution.

## FACTUAL BACKGROUND

32.    At all times material hereto, on or about June 15, 2005, Plaintiff, 96 BROADWAY purchased a 4800 sq. ft. three (3) story abandoned brick building located on the northeast corner of Broadway and Liberty Street, City of Newburgh, Orange County, New York.

33.    At all times material hereto, between June 2005 and January 2006, extensive research into the history of the building site was conducted.

34.    At all times material hereto, it was determined that the building was actually three (3) separate buildings erected at three different (3) points in time,

approximately between 1850-90, and as such the oldest portion of the building is in excess of 150 years old.

35.    At all times material hereto, the property runs 21 feet east to west in length along Broadway.    The property also abuts Liberty Street and runs north from the Broadway building line 81 feet along the northwest side of Liberty Street.    The designated addresses are 96 Broadway and 139-141 Liberty Street and are within the City of Newburgh's principle economic redevelopment corridor/historical district.

36.    At all times material hereto, at some point, which appears to be about 1880-90, a single flat tin roof, pitched to each side from the center of the three (3) buildings, was added over the top of the three (3) existing roofs. The tin roof ran from the center of the structure slopping downward north and south at a pitch of 1/10.

37.    At all times material hereto, Plaintiffs' also own the parking lot behind 96 Broadway as designated 142-154 Liberty Street.    The lot is sufficient for off-street parking of 27 vehicles.

38.    At all times material hereto, prior to Plaintiffs' purchase of the building, Plaintiffs are informed and believe, that the building had remained vacant for approximately 30 years , when the CITY, in or about 1999, allowed the prior owners to proceed with restoration for both the interior and exterior of the building.

39.    At all times material hereto, Plaintiffs are informed and believe, that without the advice of engineers or any other inspections the interior of the building and

its entire infrastructure were completely stripped away and removed leaving the building as nothing more than an unstable shell.

40.    At all times material hereto, the building's tin roof was completely deteriorated and had become unsafe. The same was true for the entire top cornice and the four feet of brick veneer behind it.

41.    At all times material hereto, the cornice which was made of tin and sheet metal, and which weighed in excess of 300lbs per 25-30 foot length, was improperly repaired with fiberglass mess, apparently put in place during the 1999, repairs.

42.    At all times material hereto, it was apparent that no one understood that they were covering over many years of neglect and that the metal straps used to secure the cornice to the top of the building were rotted and decayed to the point where they had failed throughout the entire span.

43.    At all times material hereto, the cornice was lifting away from the building facade and was a danger to the public which could not be left unattended.

44.    At all times material hereto, the basement, by virtue of the open roof had over six (6) feet of pooling water which appeared by inspection and watermarks to be the tipping point for overflow into the CITY's sewer system.

45.    At all times material hereto, visually, the interior was littered with general debris and the reaming interior roofs were falling in and on themselves. This created a dangerous condition and uneven stress loads against the exterior walls.

46.   At all times material hereto, in or about August 2005, the CITY's Building Inspector, CUMMINGS was advised of the situation, demolition permits and dumpster permits were obtained.  Plaintiffs were allowed to commence preliminary clean-up and removal of the interior roofs to relieve the undue stress on the exterior walls.

47.   At all times material hereto, it was also determined, in conference with the CUMMINGS that in order to justify the expense of rehabilitating and bringing the building up to code, rather than requesting a grandfathering or even exemption under Appendix K, of the New York State Building Code, the building plans would be drawn to City Code and to fit the historic era for the original construction of the buildings to reflect the Second Empire era of 1850-1880's.

48.   At all times material hereto, a duly licensed architect was hired by Plaintiffs and a plans were drawn for a fourth floor and Mansard roof to reflect this era.

49.   At all times material hereto, a sprinkler system, elevator and handicapped access were also configured for the building and added to the plans.

50.   At all times material hereto, in or about January 2006, an application for a building permit and proposed plans were submitted to the CITY's Building Department.

51.   At all times material hereto, the rehabilitation required a two phase approach for which the CITY was consulted.

52.   At all times material hereto the first stage was necessary because the

building represented a serious hazard and danger to the public.

53.    At all times material hereto, an initial request was made for shoring and bracing of the building and for permission to repair the roof and cornice.

54.    At all times material hereto, the second phase related to the architectural changes to the building.  **See, Exhibit "2".**

\*   \*   \*

55.    At all times material hereto, Plaintiffs were advised by CUMMINGS that approval of their application and plans would be delayed for at least four (4) months because the application and building plans needed to be presented the ARC for approval and that the ARC was without a sitting architect to review the Plaintiffs' building plans.

56.    At all times material hereto, DOLLINGER advised CUMMINGS of the hazards and potential liabilities to the Plaintiffs' as well as the CITY's potential for liability unless immediate repairs could be undertaken.

57.    At all times material hereto, CUMMINGS advised DOLLINGER that he would speak with the CITY Manager McGRANE to see if he could "speed things along" and use an outside architect to review the plans on behalf of the CITY for Plaintiffs' proposed shoring and bracing request, roof repair, as well as for the architectural restoration and review of the building plans.

58.     At all times material hereto, McGRANE as policy maker for the CITY had actual authority to adopt policy-practice procedure and/or custom to have the

building department use outside consultants and issue building permits for the safety reasons and for economic reasons in her capacity as CITY Manager inclusive of by-passing approval of various CITY advisory commissions, the ARC.

59.     At all times material hereto, Plaintiffs were advised by CUMMINGS that after discussing the matter with the CITY Manager McGRANE, McGRANE approved the use of an outside architect and that Plaintiffs would be required to pay the fee for the CITY's architectural review of their plans.

60.     At all times material hereto, in or about January 2006, Plaintiffs agreed to the payment of a fee for the CITY's outside review of the repair plans and architectural review of the restoration plans.

61.     At all times material hereto, in or about January 2006, the CITY hired Mr. Whelton B. Abt, an architect to provide a review for the requested shoring, bracing and repair plans, as well as an architectural reviewed of the restoration plans.

62.     At all times material hereto, on or about February 3, 2006, in response to the restoration plans Mr. Abt requested a meeting with the Plaintiffs' representatives.

63.     At all times material hereto, on or about February 3, 2006, a permit was issued by the CITY's Building Department for repair of the roof to the building.

64.    At all times material hereto, on or about February 14, 2006, Plaintiffs' representative met with the CITY's representatives, including Abt for architectural review of the project and to determine whether the historic restrictions would apply to the project under Appendix "K" of the New York State Building Code as related to historic buildings.

65.    At all times material hereto, on or about March 22, 2006, Abt approved the architectural review of the restoration plans exempting the building from Appendix "K" or otherwise requiring a historical report and determined that the alterations to the building did not impact on the historic character of the building, wherein a building permit "could" be issued by CUMMINGS to Plaintiffs.

66.    At all times material hereto, Plaintiff are informed and believe CUMMINGS notified McGRANE of the approval by Abt, wherein McGRANE authorized CUMMINGS to issue a building permit for the Plaintiffs' building plans as submitted without the need for prior ARC approval.

67.    At all times material hereto, on or about March 23, 2006, the CITY lawfully issued Plaintiffs a building permit to perform the work Abt approved including the architectural restoration of the building, whereupon Plaintiffs commenced restoration of their building.

* * *

68.    At all times material hereto, the ARC is an advisory commission to the CITY, established for the review of certain restoration projects including those within the City of Newburgh's Economic Redevelopment Corridor/Historic District wherein said commission is required to issue a "Certificate of Appropriateness" for building alterations that met established statutory criteria .

69.    At all times material hereto, McGRANE with the CITY COUNCIL's approval appoints the members to the ARC.

70.    At all times material hereto, the CITY-CITY Manger retains the power to by-pass the ARC concerning whether or not to issue a certificate of appropriateness and building permits or otherwise veto a decision of the ARC concerning applications coming before for it, and in the past has issued building permits without prior ARC approval for among other reasons, the  safety of the public or for economic reason including the benefit-burden to/on the CITY, wherein unless otherwise approved the CITY could face liability and would lose potential economic gain/growth for its citizens if an investment in the CITY were no made.

* * *

71.    At all times material hereto, Plaintiffs are informed and believe, that GABOR, CRABB, KING, and KELSON, are and/or were in the past members or

represented that they were members of the ARC and/or CORPORATON COUNSEL, who were acting for ands under the authority of the CITY in matter coming before the ARC.

72.    At all time material hereto, Plaintiffs are informed and believe, Defendants DOEs 1-10 and ROE's 1-10 are members of the community and claimed members of NAG living and residing in the CITY who from time-to-time at the direction of CRABB and/or GABOR, who are also NAG members appear before the ARC.

73.    At all time material hereto, Plaintiffs are informed and believe, GABOR, CRABB, KING, KELSON and Defendants DOEs 1-10 and ROE's 1-10 (hereafter collectively the "ARC-NAG Enterprise") have formed an illegal union, an association-in-fact engaged in illegal conduct designed to deny the citizens appearing before the ARC, inclusive of Plaintiffs',their 4th , 5th   and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and have otherwise willfully violated other citizens and Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

74.    At all times material hereto, Plaintiffs are informed and believe, that the CITY COUNCIL was and is actually aware of the ARC-NAG Enterprise and attempted to eliminate their illegal activity by allowing McGRANE to institute a by-pass policy and by not reappointing GABOR and/or appoint others to the ARC during the period

between January 2006 and June 29, 2007.

75.    At all times material hereto,  Plaintiffs are informed and believe, the ARC-NAG Enterprise members knew and were actually aware that the CITY Manager had authorized CUMMINGS to by-pass ARC approval of Plaintiffs' project and issue the Plaintiffs their building permit without prior ARC approval based on having an outside architectural review of their plans by Abt and render his approval to issue a building permit to Plaintiffs.

76.    At all times material hereto, Plaintiffs are informed and believe, the ARC-NAG Enterprise members were angry and embarrassed by the CITY COUNCIL's refusal to reappoint GABOR and others to the ARC and the CITY's policy-practice adopted by McGRANE and CUMMINGS relative to using the retained authority of the CITY to by-pass the ARC and grant approval of the Plaintiffs' project in the historic district and economic corridor of Broadway without prior ARC approval, including Plaintiffs' project.

. 77.    At all times material hereto, Plaintiffs are informed and believe, that ARC-NAG Enterprise members met subversively in person, and over the internet, for the purpose of illegally conspiring to force McGRANE to unlawfully revoke the building permit issued by the CITY's Building Department to Plaintiffs  notwithstanding the fact that they knew the permit had been lawfully issued to Plaintiffs by CUMMINGS; to illegally force Plaintiffs to submit an application to the ARC; to illegally force

Plaintiffs to appear before the ARC; and to deny the application for political reasons through any means necessary including the violation of Plaintiffs' Constitutional and civil rights; wherein, as illegally agreed among ARC-NAG Enterprise members, to "crush" the project so as to "run plaintiffs out of town".

*   *   *

78.    At all times material hereto, thereafter, Plaintiffs are informed and believe, CRABB under the color of law and in the name of the ARC, together with GABOR, KING and the DOEs 1-10 and ROEs 1-10 Defendants  coordinating  and  intending to illegally and systematically deny Plaintiffs the equal protection of the law as well as to illegally deny Plaintiffs their due process right engaged their plan to take the Plaintiffs' vested property interest, its building permit, and otherwise injure Plaintiffs, in or about February 2006, proceeded with their illegal plan/goal.

79.    At all time material hereto, Plaintiffs are informed and believe, that notwithstanding his failure to be reappointed to the ARC by the CITY COUNSEL, GABOR, in furtherance of the illegal agreement with the other ARC-NAG Enterprise members, continued to make decisions so as to accomplish the illegal goals set of the conspiracy including an agreement that he, GABOR would file a false complaint with the CITY's Building Department; and an agreement to disseminate willfully-false information via the newspapers and internet  about Plaintiffs, 96 BROADWAY-

DOLLINGER so as to illegally sway public opinion; to force McGRANE to illegally "crush" the project; to force Plaintiffs to appear before the ARC; and to intentionally deny Plaintiff approval of their plans to "crush: the project and run Plaintiffs "out of town".

80.   At all times material hereto, Plaintiffs are informed and believe that, thereafter on or about April 28, 2006, with the knowledge consent of CRABB, KING, DOEs 1-10 and ROEs 1-10, in furtherance of their illegal plan, GABOR filed a complaint against 96 BROADWAY with the CITY Building Department falsely alleging that work performed at 96 BROADWAY was being performed on the building without permits or prior ARC approval.

81.   At all times material hereto, Plaintiffs are informed and believe that, thereafter with the knowledge consent of GABOR, KING, DOEs 1-10 and ROEs 1-10, in furtherance of their illegal plan, CRABB, illegally and under the color-authority of the ARC, Illegally demanded that CITY issue a stop work order on Plaintiffs' building and submit a application to the ARC.

\*   \*   \*

82.   At all times material hereto, in or about May 2006, CUMMINGS contacted DOLLINGER advising him that they, CUMMINGS and McGRANE were having problems with the ARC, specifically, GABOR CRABB, and "others in the

community" because they "sidestepped" the ARC when they hired Mr. Abt for his architectural review and issued the building permit to Plaintiffs without prior ARC approval wherein CUMMING's advised DOLLINGER that CRABB was demanding that the CITY issue a stop work order on Plaintiffs' building and that McGRANE directed the project be "stop" and sent to the ARC.

83.    At all times material hereto, CUMMINGS, upon DOLLINGER's inquires, stated to DOLLINGER, "what you have to understand is this is not New York City" there were "a lot of hurt feelings" people were "embarrassed" by not being consulted on the project.

84.    At all times material hereto, CUMMINGS asked DOLLINGER to "kind-a-lay-low" until he and Mc GRANGE could work things out "internally".

85.    At all times material hereto, DOLLINGER advised CUMMINGS that he could not simply stop the project because the project had certain deadlines which could not be changed, there were "cost factors" related to "investors' money" and plans. Plaintiffs had already spent in excess of Five Hundred Thousand ($500,000.00) Dollars on the project and any delay would be a burden on the project.

86.    At all times material hereto, Plaintiffs are informed and believe, that because DOLLINGER refused to stop the project, CUMMINGS at the direction of CRABB-McGRANE, so as to control or otherwise stop the project and appease the political and public pressure being asserted by GABOR, CRABB, and the other ARC-