NAG Enterprise members, and for no lawful reason, under the color of law, on or about May 2, 2006, illegally issued a stop work order at the direction of McGRANE in agreement with CRABB for the benefit of the ARC-NAG Enterprise, and by the CITY's Deputy Code Enforcement Officer Bruce Tewilliger in the name of the CITY falsely claiming a violation of Section 300-26A of the City Code.

87.    At all times material hereto, the order falsely alleges that the reason for issuing the stop work order is that a condition existed that was dangerous to the "Public Safety".

88.    At all times material hereto, Section 300-26A of the CITY Code relates to obtaining a **Certificate of Appropriateness**" from the ARC and has nothing to do with public safety, but was issued due entirely to political and public pressure exerted by CRABB-GABOR on behalf of the ARC-NAG Enterprise members.

89.    At all times material hereto, Plaintiff possessed a valid certificate of appropriateness as issued by the CITY's architect Abt on March 22, 2006.

90.    At all times hereto mentioned, upon receiving the stop work order Plaintiffs stopped work wherein Plaintiffs had spent in excess of Five Hundred Thousand ($500,000.00) Dollars in improvements in the property, had a vested property interest in the building and building permit and Defendants knew as such.

91.    At all times hereto mentioned, the action was an illegal taking of Plaintiff's property in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights, an

abuse of process, an illegal taking and a denial of the equal protection of the law and a violation of Plaintiffs civil rights.

92.   At all times material hereto, Plaintiffs are informed and believe, that simultaneous with the issuance of the forgoing order, again, in response to said political and public pressure, and for no lawful reason, under the color of law, at the direction of CRABB-McGRANE-CUMMINGS, in an agreement with CRABB-GABOR, for the benefit of the ARC-NAG Enterprise an additional stop work order was illegally issued pursuant to Section 122.12 of the City Code.

93.   At all times material hereto, the order also falsely alleges that the reason for issuing the stop work order was that a condition existed that was dangerous to the "Public Safety" but was issued due entirely due to political and public pressure created by the ARC-Enterprise.

94.   At all times material hereto, Section 122.12 of the City Code relates to obtaining a permit for exterior changes and has nothing to do with public safety.

95.   At all times material hereto, Plaintiff possessed a valid and lawfully issued building permit for the work being performed.

96.   At all times hereto mentioned, upon receiving the stop work order Plaintiffs stopped work, wherein Plaintiffs had spent in excess of Five Hundred Thousand ($500,000.00) Dollars in improvements in the property, had a vested property interest in the building and building permit and Defendants knew as such.

97.    At all times hereto mentioned, the action was an illegal taking of Plaintiff's property in violation of Plaintiffs 4th, 5th and 14th Amendment rights, an abuse of process, a illegal taking, and a denial of the equal protection of the law and a violation of Plaintiffs civil rights.

\* \* \*

98.    At all times material hereto, DOLLINGER advised CUMMINGS that the CITY was facing a "serious fight" and that unless the stop work orders were lifted Plaintiff would seek immediate judicial resolution to the problem and damages.

99.    At all times material hereto, on or about May 8, 2006, CUMMINGS lifted the stop work orders previously issued by the CITY Building Department on May 2, 2006.

\* \* \*

100.    At all times material hereto, Plaintiffs are informed and believe, that in furtherance of the Enterprise on or about May 27, 2006, DOLLINGER was contacted by a reporter for The Times Herald Record in relation to how a building permit was issued for 96 Broadway without first getting ARC approval.

101.    At all times material hereto, on or about June 2, 2006, DOLLINGER contacted CUMMINGS, wherein CUMMINGS was advised by DOLLINGER that a reporter for the Times Herald Record had requested an interview relative to the project and the issuance of obtaining the building permit without prior ARC approval.

102. At all times material hereto, on or about June 2, 2006, CUMMINGS spoke with DOLLINGER wherein, CUMMINGS advised DOLLINGER that he and McGRANE were again receiving " pressure" to "shut the job down" from the ARC-CRABB-GABOR and other "community agitators" and that after discussions with McGRANE it would be "helpful" to the situation "at least for show", if an application were presented to the ARC by Plaintiff, 96 BROADWAY.

103. At all times material hereto, DOLLINGER advised CUMMINGS that he would consider the request.

104. At all times material hereto, CUMMINGS advised DOLLINGER that McGRANE had already "worked it out" with the ARC. The ARC was to "rubber stamp" the application and the matter would be "behind us".

105. At all times hereinafter mentioned, DOLLINGER demanded of CUMMINGS more information about "what exactly" was "going on" reminding CUMMINGS that the plans had already been reviewed and approved by McGRANE and the CITY's architect, Abt and that Abt determined that the alterations to the building did not need further review because Appendix K of the New York State Building Code did not apply, nor, as discussed in February 2006, did any other historical restriction apply and that Abt agreed that the permit could be issued.

106. At all times material hereto, on or about June 2, 2006, in response to the foregoing, CUMMINGS advised DOLLINGER that he and McGRANE had things

"under control" the problem related to the "politics" and community pressure with the ARC-CRABB-GABOR and others who were falsely and intentionally alleging misconduct, including bribe taking between Plaintiff-DOLLINGER and CUMMINGS because they had in fact used an outside consultant for architectural review so as to issue the building permit.

\* \* \*

107.   At all times material hereto, on or about June 3, 2006, in furtherance of the ARC-NAG Enterprise's goal to discredit Plaintiffs and illegally sway public opinion against Plaintiffs a newspaper article appeared in the Times Herald Record, wherein GABOR falsely alleged that there was criminal wrongdoing in obtaining the building permit for 96 Broadway, including the fact that a bribe was given by Plaintiff-DOLLINGER to CUMMINGS for the building permit.

108.   At all times material hereto, in furtherance of the ARC-NAG Enterprise GABOR knowingly and falsely publicly stated that:

> "What's going on here is very, very wrong.  And, it is so secretive. We have people talking about there must be favoritism or payoffs. That's how shady it is."
> **[Emphasis added.]**

109.   At all times material hereto, on or about June 5, 2006, Plaintiffs-DOLLINGER commenced a state court slander-libel and defamation action against GABOR, and Defendants JOHN DOE 1-10 and JANE DOE 1-10, wherein, Plaintiffs

claimed that the "people talking" were members of the ARC-NAG Enterprise who had by said publications caused Plaintiffs to become the object of hatred, contempt, ridicule and obloquy, because the ARC-NAG Enterprise falsely published claims in the media insinuating that Plaintiffs via DOLLINGER, who the ARC-NAG Enterprise members knew was an attorney, were criminals and had bribed the CITY building inspector CUMMINGS so as to illegally obtain their building permit when they knew that said statements were entirely untrue and intended to illegally sway public opinion against Plaintiffs.

110.   At all times material hereto, on or about June 6, 2006, after the article appeared in the newspaper in response to said political and public pressures, and for no lawful reason, under the color of law at the direction of McGRANE and CRABB and CUMMINGS a stop work order was illegally issued by the CITY claiming a violation of Section 122.20(A) of the City Code.

111.   At all times material hereto, the order alleges that the reason for issuing the stop work order is that a condition existed that was dangerous to the "Public Safety".

112.   At all times material hereto, the stop work order has nothing to do with public safety, but was issued due entirely to political and public pressure falsely and viciously created by the ARC-NAG Enterprise members so as to illegally sway public opinion on the project.

113. At all times material hereto, Section 122.20(A) of the City Code relates to conforming the work permitted at the site to the "APPLICABLE BUILDING PERMIT" and claims that the "CORRECTIVE ACTION NEEDED:" was to "STOP WORK! EXISITNG CONSTRUCTON DOES NOT REFLECT APPROVED DRAWINGS".

114. At all times material hereto, the Order admits that there were approved drawings on file with the CITY.

115. At all times material hereto, the building plans and drawings conformed to the plans and drawings submitted to the CITY and approved by McGRANE, CUMMINGS and Mr. Abt, the CITY's architect, and otherwise conformed to all of the laws of the State of New York and the ARC criteria.

116. At all times hereto mentioned, upon receiving the stop work order Plaintiffs stopped work wherein Plaintiffs had spent in excess of Five Hundred Thousand ($500,000.00) Dollars in improvements in the property, had a vested property interest in the building and building permit and Defendants knew as such.

117. At all times hereto mentioned, the action was an illegal taking of Plaintiffs' property in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights, an abuse of process, an illegal taking and a denial of the equal protection of the law and Plaintiffs' civil rights.

*    *    *

118.  At all times material hereto, based on the representations of CUMMINGS that the matter was purely "for show" and his statement that McGRANE told CUMMINGS that the application would be "rubber stamped", Plaintiffs agreed to submit an application to the ARC.

119.  At all times material hereto, following the newspaper article of June 3, 2006, the ARC-NAG Enterprise members, in furtherance of their goals began to publish their **continuing manifesto** over the internet as designed to falsely discredit and otherwise illegally sway-injure Plaintiffs' in their application before the ARC.

120.  At all times material hereto, the ARC-NAG Enterprise members were able to cast a cloud of suspicion over the Plaintiffs having them become the object of hatred, contempt, ridicule and obloquy because the ARC-NAG Enterprise falsely published claims over the internet alleging that Plaintiffs were criminals and had bribed the CITY building inspector CUMMINGS so as to illegally obtain their building permit.

121.  At all times material hereto, GABOR admits to being "CRANKIN" and "MG" and in furtherance of the ARC-NAG Enterprise plans to discredit Plaintiffs published or caused to be published by other ARC-NAG Enterprise members the following manifesto and false-libelous statements over the internet:

**From:** Crankin
**Date:**   29 Oct 2003
**Time** :09:15:43
**Remote Name:** 204:210.148.240

"We are on a jugernaught **my fellow NAGS**. We have to keep up the pressure. The control of this city is now within our reach. **We have to take it over by any means necessary.** That means get on all the boards; go to all council meetings and NAG, NAG, NAG! **Do whatever it takes. Our group is the only one who can so let's do it** [Emphasis added.]"
Posted:  Saturday, June / 7 / 2:5 / :pm
Author:  John Doe (Undercover)
Subject:  Re: Savoy
In reply to: Goobie 's message, 'Re: Savoy" On *Thursday,* June *02:2 7pm*


The 96 broadway land baron Dollinger gets his suits altered at Nickys B'Way Tailors. The under cover question of the day is. **Why do you Mr. Dollinger pay for alterations to the Mayor of our city an envelope full of $100.00 dollar bills. Yes your Mayor was dumb enough to open it with people in the store, More information on that to come. This is way beyond shady. I guess he pays CUMMINGS liquor bills and  motel bills .Oh** yes i'm proud too, as one of the 50 hero's of Newburgh. **We the John and Jane Does of Newburgh pledge to stick together!** [Emphasis added.]

*Date Posted: 10:01:20 06/12/06 Mon*
Author:      Michael C.
Subject:     Dunbo Dollinger


This Dumbo and his lawsuit is going nowhere. Remember Rudy and Taylor's lawsuit? That went in the toilet as did the one against Fred Ernden. **WE as a group are protected by the Constitution, and freedom of speech.** This **cash Felon Dollinger** has no idea. Some one should tell him we don't back down. **We will run him out of Newburgh. This is our city and we don't want criminals bribing our officials, he can take CUMMINGS with him and give him a job.** [Emphasis added.] **See, Exhibit "23-3".**

*Date Posted: 08:23:41 06/13/06 Tue*
Author:  "We The People"
Subject: Scumbag Dollinger!


Read the Constitution. ASSHOLE! FREEDOM OF SPEECH, THE FIRST AMENDMENT!! !! You will not silence us, **you are our prime target now! You're history, you will never have any peace.**   You haven total and collossal nerve to

send someone to a public protected space to serve us with papers. Was that the idea of that fat stinkin' piece of' shit McCarthy? Think him and you, and Rudy and the rest of the criminal element all of you are associated with… You Suck what are you going to do about it.. WE got your number Dollinger…START <u>PACKING… and take CUMMINGS with you… **we have someone in his office and she lets us know about the corruption going on…**</u>YOU ARE OUTED!!![Emphasis added.]

*Date Posted: 07:3 7:45 06/14/06 Wed*
Author:      BJ
Subject:      <u>Dollinger=Crime</u>
It is a sad day we have <u>criminals like</u> this trying to lake over Newburgh.

*Date Posted: Saturday , June 17, /2:07:pm*
Author:  BJ
Subject:Re: Savoy

In reply to: Confuscious's message, "<u>Sav'*ov*</u>" on *Friday, June16, 05:OO:pm*
My most exalted and learned Confuscious. **To answer your question, when we rid Newburgh of Regina, Bowles, McGrane, and Little Nicky for starters. <u>That will stop Criminals like Dollinger from bribing our building inspector in order to get permits.</u>** Our Friends on The ARC have stopped him dead! in his tracks. Mr. "Doll"inger paid a handsome sum to Rudy for 96 Broadway, along with some "Cash under the table for Rudly". Stay tuned readers of this site, all of the corruption will come out at the lawsuit trial. Mr. Dollinger do you really want to be exposed? [Emphasis added.]

**Date Posted: *Tuesday June 20, 01:28pm***
Author:      John and Jane does
Subject:      Re: Newburgh Advocate
In reply to: Michael G.'s message *"**Re: Newburgh Advocate**"* on Wednesday, June14,1:53:pm


We as a group are the "Watchdogs of City Government" and <u>**illegal activities**</u> in our city. **<u>We support Michael Gabor Barbara Smith and Brian Flannery</u>** in their pursuit of justice. Mr. Dollinger you cannot win against the truth. Others have tried and failed. Thanks to the efforts of Jane Johnson and many others. The Advocate will breath down your neck and any others who get in the way of our fair city. <u>Its legal growth is what matters to us, not bad officials who take bribes from you. Mr. Dollinger perhaps in California you got away with</u>    your shady way of business, but that will

not stand in Newburgh. You will. not be permitted to continue, **one way or another.** [Emphasis added.]


*Date Posted: .10:44:33 06/22/06 Thu*
Author:  Michael G.
Subject: City Criminals

Let's get this investigation going...call the inspectors in Albany have them come down hard on Dollinger. **We have to crush the project ASAP**. That building was in excellent condition and he destroyed it. **He bribed our city building inspector that needs to be investigated. Our Mayor according to our witness was bribed too! Now start- the machine and bring down the all weight of** our government on the **DOLLINGER CRIME SPREE!** [Emphasis added.]

*Last Changed October 29, 2003*
*Date Posted: 10:08:48 06/12/06 k/on*
Author:    Darthy V
Subject: Dumbo. Dirtbag, Degenerate,=Dollinger


Michael oh la la ,you have such a way with words. Maybe the Orange County Bar Association should be alerted to the mis—adventures of this corrupt attorney? Did you not hear Michael of the ASBESTOS REMOVAL performed without a permit at 96 Broadway? Brian F. did and he will spread the alarm. 96 Broadway is only 2 blocks from the new school opening **Hmmm use you imagination.** Record may be interested in such a story. [Emphasis added.]

122.  At all times material hereto, in an attempt to sway public opinion, despite the clear constitutional violations of the law, GABOR and the ARC-Enterprise members actually advocate the taking over of the City **"by any means necessary"** and by doing **"whatever it takes."**

123.  Apparently, based on their conduct they were and are serious including violating Plaintiffs' Constitutional and civil rights, including the intended taking of

Plaintiffs' property.

*    *    *

124.   At all times material hereto, on or about June 13, 2006, based on the representations of CUMMINGS, DOLLINGER on behalf of 96 BROADWAY appeared before the ARC.

125.   At all times material hereto, CRABB Chaired the meeting during the ARC's review of the Plaintiffs' application, wherein, in addition to CRABB, present on the Commission were ARC-NAG Enterprise member KING, together with ASSITANT CORPRORATON COUNSEL, KELSON, and under the color of law, unbeknownst to Plaintiffs at the time, acting as governmental officials, non-members DOE-1 and DOE-2.

126.   At all times material hereto, the ARC must have appointed members with credentials consisting of at least one (1) architect and (1) historian who have sufficient background and experience in the field of architectural restoration and historic preservation to render a decision based on the criteria set forth in the CITY's Codes and who have been sworn under oath to undertake their duties and discharge them in a lawful manner.

127.   At all times material hereto, during the ARC's review of the Plaintiffs' application, Plaintiffs are informed and believe, as confirmed by CORPRORATON COUNSEL's Chief Attorney, the Commission did not have present the required

members and were otherwise proceeding illegally and in violation of Plaintiffs' 4th, 5th and 14th Amendment rights, engaged in an abuse of process, an illegal taking, a denial of the equal protection and due process of the law and Plaintiffs' civil rights.

128.   At all times material hereto, despite the representations of McGRANE and CUMMINGS, that the project was already approved, it became apparent that the ARC-NAG Enterprise members, under the color of law, and the guise of the ARC's powers in this matter, that the ARC-NAG Enterprise members were more interested in investigating the claims of wrongdoing [bribery]in relation to receiving the building permit and had no intention on approving the permit on the merits of the buildings economic or historical contribution to the community-CITY.

129.   At all times material hereto, DOLLINGER refused to engage in the query and repeatedly requested that the ARC ask questions related to the ARC approval criteria for the building.

130.   At all times material hereto, the ARC actually knew and was aware that the Plaintiffs, stopped work and had spent in excess of Five Hundred Thousand ($500,000.00) on the project and that through its members was acting collectively to deny Plaintiffs their vested property rights.

131.   At all times material hereto, ARC proceeded illegally and in violation of Plaintiffs' 4th , 5th   and 14th Amendment rights, an abuse of process, an illegal taking and a denial of the equal protection of the law and Plaintiffs' civil rights.

\* \* \*

132.   At all times material hereto, DOLLINGER advised CRABB that the project would make money for Plaintiff and the citizens of Newburgh.

133.   At all times material hereto, in violation of Plaintiffs civil rights and other federal laws against discrimination, and in furtherance of the ARC-NAG Enterprise members goal to deny Plaintiffs' application, "crush" the project and run [Plaintiff] out of town" CRABB advised DOLLINGER that his money was not "wanted" in Newburgh.

134.  At all times material hereto, CRABB in league with the other co-conspirators, under the color of law, in furtherance of the plans of the ARC-NAG Enterprise conspiracy to deny Plaintiffs' application without legal cause, in violation of Plaintiffs' right of equal protection and due process of the law, Defendants intentionally and illegally tabled the application without a decision so as to conceal the fact that the ARC was not lawfully in session and so as to frustrate Plaintiffs right to invest in CITY and otherwise damage Plaintiffs. **See, Exhibit "24".**

135.  At all times material hereto, CRABB and the remaining ARC-NAG Enterprise members actually knew and was aware that the Plaintiffs had stopped work and spent in excess of Five Hundred Thousand ($500,000.00) on the project and that she was acting to deny Plaintiffs their vested property rights.

136. At all times material hereto, CRABB proceeded illegally in the name of the ARC and individually, and or in furtherance of the ARC-NAG Enterprise in violation of Plaintiffs' 4th, 5th and 14th Amendment rights, an abuse of process, an illegal taking and a denial of the equal protection of the law and Plaintiffs' civil rights.

*  *  *

137. At all times material hereto, notwithstanding her lawful duty not to advocate or otherwise sponsor a political-public position one way or another, under the color of law, both after and during the public comment period of the application proceedings, before the ARC, KELSON who is present at all ARC meetings, in furtherance of the ARC-NAG Enterprise, used her position as Assistant Corporation Counsel, notwithstanding her actual knowledge that the ARC was not lawfully convened to review Plaintiffs' application, and allowed the ARC-NAG Enterprise to illegally preside over Plaintiffs' application, wherein unbeknownst to Plaintiffs, KELSON allowed CRABB to proceed with non-members of the ARC sitting on the Commission and to question DOLLINGER or otherwise issue comment during the non-public phase of the review process.

138. At all times material hereto, notwithstanding her lawful duty not to advocate or otherwise sponsor a public position one way or another, under the color of law, both after and during the public comment period of the application proceedings, KELSON, in furtherance of the ARC-NAG Enterprise, left the conference table holding

secret conversations with the GABOR and other named DOEs 1-10 and ROEs 1-10

Defendants who, as planned, appeared in the audience before the Commission

claiming to give public comment, wherein KELSON's returned to the conference table,

with comment-questions from GABOR- DOEs1-10 and ROEs 1-10 and thereafter

allowed questions to be presented to DOLLINGER concerning the civil action filed by

Plaintiffs-DOLLINGER against GABOR and others relating to the claims of criminal

wrongdoing [bribery] in obtaining the subject building permit for the City building

inspectors CUNNINGS.

*    *    *

139.  At all times material hereto, thereafter, KELSON illegally met with

members of the ARC-NAG Enterprise, wherein Plaintiffs are informed and believe, it

was agreed that KELSON would use the Office of Corporation Counsel to further assist

the ARC-NAG Enterprise to reverse the policy-practice of the CITY's, CITY

Manager's and its Building Department  in issuing Plaintiffs and others building

permits under the CITY's retained powers and to force Plaintiffs to restoration the

buildings to its prior appearance.

140.  At all times material hereto, KELSON actually knew and was aware that

the Plaintiffs had stopped work and had spent in excess of Five Hundred Thousand

($500,000.00) on the project and that she was acting collectively to deny Plaintiffs their

vested property rights.

141.   At all times material hereto, KELSON proceeded illegally in the name of CORPRATON COUNSEL and individually, and or in furtherance of the ARC-NAG Enterprise in violation of Plaintiffs 4th ; 5th and 14th Amendment rights, an abuse of process, an illegal taking and a denial of the equal protection of the law and Plaintiffs' civil rights.

\*      \*      \*

142.   At all times material hereto, Plaintiffs attempted to resolve the matter and attended at least three (3) ARC meetings and three (3) separate workshops at the request of McGRANE and the Building Department.

143.   At all times material hereto, after his appearance before the ARC DOLLINGER approached McGRANE relative to her original consent to issue the permit and requested that she direct the ARC to issue their "Certificate of Appropriateness" as promised based on her authority as CITY Manager.

144.   At all times material hereto, in or about March 2007, McGRANE met with DOLLINGER together with the CITY's CORPORATION COUNSEL, wherein it was agreed that if Plaintiffs simply submitted their plans to the ARC without comment the matter would be resolved.

\*      \*      \*

145.   At all time materiel hereto, McGRANE knew and was aware that her policy-practice of sidestepping the ARC had created problems for her among the

legitimate ARC members and ARC-NAG Enterprise members and had no intention of resolving the matter based on her policy-practice of having previously approved the project without ARC review and was desperate to force Plaintiffs to appear before the ARC.

146.   At all times material hereto, thereafter, notwithstanding her statements in front of the CITY's Chief Corporation Counsel and DOLLINGER, at their prior meeting that the plans were to simply be submitted to the ARC without comment, Plaintiffs representative was advised by McGRANE and KELSON, in furtherance of the ARC-NAG Enterprise that additional revisions to the plans were required before submission to the ARC could take place.

*   *   *

147.   On or about April 29, 2007, DOLLINGER discovered that the members of the ARC who were to render a vote on Plaintiffs' application had failed or refused to take the oath or be sworn for service on the ARC unless GABOR were reappointed to the ARC.

148.   On or about April 30, 2007, notwithstanding their knowledge of the foregoing, Plaintiffs' once again submitted their plans to the ARC, but refused to attend the May 8, 2007 meeting.

* * *

149. At all times material hereto, in retaliation for the failure to reappoint GABOR to the ARC; the anger and the embarrassment over the CITY's policy-practice of issuing building permits without prior ARC approval, on May 8, 2007, the ARC illegally, and without a lawful reason, voted 4-0 against issuing the Plaintiffs a Certificate of Appropriateness.

150. At all times material hereto, the denial of the permit by the ARC was without a lawful vote and was not based on criteria outlined in its charter or the law, but was instead a decision not to allow the Plaintiff's building to look better than City Hall and in retaliation for sidestepping the ARC and other political processes owing to McGRANE hostile relationship with the ARC-Enterprise.

151. At all time material hereto, the CITY and the ARC has issued certificates of appropriateness to property owners or otherwise exempted property owners from the need for said certificate for the same or similarly looking project including projects located opposite historic sites within the CITY.

152. At all times material hereto, the decision to take Plaintiffs' vested property interest was arbitrary and caprious and the result of invidious conduct and bad faith on the part of the CITY, the CITY policy maker McGRANE and their failure to stand by the CITY's policy-practice to allow the CITY's Building Inspector CUMMINGS to issue the building permit for 96 BROADWAY without prior ARC approval and was a

response to political and feigned community disapproval of the project.

153.  At all times hereto mentioned, the action was an illegal taking of Plaintiff's property in violation of Plaintiffs 4th , 5th and 14th Amendment rights, an abuse of process in the equal protection of the law and a violation of Plaintiffs' civil rights.

*   *   *

154.  At all times material hereto, the CITY and its CORPORATON COUNSEL knew and was aware of the invidious conduct of McGRANE-CUMMINGS and that of the ARC-NAG Enterprise and authorized-directed the filing of a certain state court action in Orange County Supreme Court, State of New York demanding that Plaintiffs restore their building to its former appearance.

155.  At all times material hereto, the act of suing Plaintiff to restore the building to its former appearance was and is a "signal" to the Community that GABOR's statements relating to Plaintiffs-96 BRAODWAY-DOLLINGER having paid a bribe to CUMMINGS for the building permit was true and that Plaintiffs had indeed done something criminally wrong in obtaining their building permit.

156.  At all times material hereto, Plaintiffs-DOLLINGER have been humiliated by the intentional, criminal acts, invidious, willful, wanton, reckless, callous, grossly negligent, negligent and careless conduct of the CITY-CITY COUNSEL, McGRANE, CUMMINGS, the ARC, ARC-NAG Enterprise, CRABB, GABOR, KING,

KELSON, DOEs 1-10, ROEs 1-10 CORPORATION COUNSEL and have disregard the Plaintiffs Constitutional and civil rights because the CITY-CITY COUNCIL actually knew and was aware of the illegal-invidious conduct of McGRANE, CUMMINGS, the ARC, ARC-NAG Enterprise, CRABB, GABOR, KING, KELSON, DOEs 1-10, ROEs 1-10 CORPORATION COUNSEL and have failed to act or acted in support of their conduct in violation of their duty to act  and  to protect Plaintiffs legal rights.

157.   At all times hereto mentioned, the action was an attempt to illegally take Plaintiff's property in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights abuse of process and equal protection of the law and a violation of Plaintiffs' civil rights.

\* \* \*

158.   At all times material hereto, on or about June 27, 2007, DOLLINGER verified that the ARC members who had voted on Plaintiff's application had failed to take the oath to sit on the ARC as required under the law, including Defendant KING and other DOEs-1 and ROEs-1 Defendants and advised Counsel member ANGELO that this was just another indication that she, McGRANE, and the ARC-NAG Enterprise members were acting in bad faith towards 96 BROADWAY  and attempting to force them to unlawfully appear before the ARC.

159.   At all times material hereto, ANGLEO suggested to speak with additional counsel members to see if "we could   resolve the situation".

\*   \*   \*

160. At all times material hereto, DOLLINGER approached members of the CITY COUNCIL, ANGELO and BOWELS to address the problem related to McGRANE's original permission to issue the building permit based on Abt's architectural review and approval of the permit and her refusal to stand by her policy-practice and her determination to force Plaintiffs to appear before the ARC.

161. At all times material hereto, DOLLINGER, having been previously unaware was advised by ANGELO of the serious degree of animosity between McGRANE, the legitimate ARC members and ARC-NAG Enterprise members and McGRANE's fear of losing her job.

162. At all times material hereto, not until in or about June 2007, was DOLLINGER advised by the Counsel member ANGELO that McGRANE did not have a good relationship with the legitimate ARC members or the ARC-NAG Enterprise members and that in addition to her causing ARC members embarrassment animosity between them by sidestepping their authority and having CUMMINGS issue Plaintiffs their building permit, she, McGRANE was the political target of the ARC-NAG Enterprise members based on claimed misconduct involving allegations of dishonesty in her leaving the scene of a personal injury accident involving a CITY owned vehicle, her avoidance of criminal prosecution in that matter, and the CITY Counsel's decision to continue her employment despite the alleged claims of alcohol contribution to the

accident.

163.   At all times material hereto, DOLLINGER met separately with Counsel members, wherein at least three (3) counsel members have agreed to override the authority of McGRANE, the ARC and CORPORATION COUNSEL and have affirmatively and positively advised Plaintiffs, or Plaintiffs have been advised that they will vote for approval of the project to  by-pass the ARC and direct that a certificate of appropriateness be issued for the project.

164.   At all times material hereto, McGRANE, the ARC-NAG Enterprise and CORPORATION COUNSEL in furtherance of their illegal activities have prohibited said CITY officials from lawfully delivering the votes to allow Plaintiffs to proceed with construction of the building.

165.   At all time the action was an illegal taking of Plaintiff's property in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights abuse of process and equal protection of the law and Plaintiffs' civil rights.

*    *    *

166.   At all times material hereto, DOLLINGER was and is an attorney duly admitted to practice law in the State of New York maintaining offices in the City of Newburgh, Orange County, New York.

167.   At all times material hereto, DOLLINGER was a member of the Orange County Assigned Counsel Program authorized to appear and represent indigent

defendants appearing in the City of Newburgh pursuant to Section 18-B of the New York State Judiciary Law.

168.   At all times material hereto, DOLLINGER appeared personally and on behalf of the FIRM on an almost daily basis in the CITY Court and on behalf of assigned clients.

169.   At all times material hereto, the civil action instituted by the CITY at the direction of McGRANE, CORPORATON COUNSEL and the ARC-NAG Enterprise members and was an act of bad faith, known by the CITY to be the same in light of the illegal conduct of McGRANE, CORPORATON COUNSEL, CUMMINGS and the ARC-NAG Enterprise in the revoking the building permit issued to Plaintiffs.

170.   At all times material hereto, the civil action instituted by the CITY at the direction of McGRANE and CORPORATON COUNSEL and the ARC-NAG Enterprise members has humiliation, embarrassment anxiety and anger; has caused an appearance, and actual or potential conflict, wherein DOLLINGER and the FIRM can no longer represent clients in most matters before the Courts of the CITY in both 18-B and private matters.

*   *   *

171.   At all times material hereto, Plaintiff are informed and believe, that during the foregoing period, between June 13, 2006 and June 29, 2007 GABOR demanded that the CITY reappoint him to the ACR.

172.   At all time material hereto, during the period of time between June 13, 2006 and June 29, 2007 the alleged ARC members voted on projects submitted to the ARC, including Plaintiffs' project, wherein the CITY and McGRANE knew and were aware that some members had refused or otherwise failed to take such oath unless GABOR was offered a position on a community board.

173.   At all times material hereto notwithstanding the false newspaper and internet claims of bribery made by GABOR involving the CITY's Building Inspector CUMMINGS as allegedly made by Plaintiffs-DOLLINGER so as to obtain the building permit, and because GABOR could not sit on the ARC until Plaintiffs' application was officially resolved, the CITY, notwithstanding the actual case in controversy instituted in Orange County on by Defendants, on or about June 22, 2007, voted to appoint GABOR to the City of Newburgh's Arts and Cultural Commission.

174.   At all times material hereto, on or about June 29, 2007, after the action was filed, McGRANE notified GABOR of his appointment to the City of Newburgh's Arts and Cultural Commission.

175.   At all time material hereto, the act of appointing GABOR to the Arts Council was a "signal" to the Community that GABOR's statements relating to 96 BROADWAY having paid a bribe to CUMMINGS were true.

176.   At all time material hereto, the act of appointing GABOR to the Arts Commission was intention and/or negligent, reckless or careless in response to the

political pressure of the ARC-NAG Enterprise and was intended to humiliate or otherwise cause emotional upset to Plaintiff-DOLLNGER.

\* \* \*

177.   At all times material hereto, Plaintiff are informed and believe, that in or about October 2006, CARCOLICI offered to purchase Plaintiffs' building.

178.   At all times material hereto, Plaintiff-DOLLINGER advised the CITY COUNCIL members and CORPORATION COUNSEL of CARCOLICI's offer.

179.   At all times material hereto, neither the CITY COUNCIL members and/or CORPORATION COUNSEL took action in favor of Plaintiff in relation to CARCOLICI's offer to purchase Plaintiffs building.

\* \* \*

180.   At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in or about May-June 2007 the owner(s) of the building located at 113 Liberty Street, Newburgh, Orange County New York were issued multiple fire and building code violations by the CITY.

181.   At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in furtherance of the ARC-NAG Enterprise in or about July 2007, CARCOLICI on behalf of the ARC-NAG Enterprise, obtain an appointment with Chief

Counsel for CORPRATION COUNSEL, wherein GABOR at the institution-instruction of CARCOLICI falsely accused DOLLINGER of having the new CITY building inspector Steve Hunter "in his back pocket" and that Hunter was taking "bribes" from DOLLINGER as did CUMMINGS.

182. At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in furtherance of the ARC-NAG Enterprise in or about July 2007, GABOR at the institution-instruction of CARCOLICI , although they knew otherwise and had actual knowledge otherwise, falsely stated to Chief Counsel, and accused DOLLINGER of having paid the new CITY building inspector Steve Hunter a bribe so as to falsely and illegally have the premises located at 113 Liberty Street, Newburgh, Orange County New York issued multiple fire and building code violations and condemned so as to cause the summary evection of the tenants living at 113 Liberty Street, Newburgh, Orange County, New York.

183. At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in furtherance of the ARC-NAG Enterprise in or about July 2007, GABOR at the institution-instruction of CARCOLICI, although they knew otherwise, and had actual knowledge of the same, falsely stated to Chief Counsel that the building was without violation and had recently passed inspection for its sale and that said condemnation was issued because DOLLINGER bribed Hunter so as to allow DOLLINGER to force the owners to sell DOLLINGER the building.

\* \* \*

184  At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in furtherance of the ARC-NAG Enterprise in or about July 2007, the ARC-NAG Enterprise published false accusations over the internet and at public meetings, wherein it was falsely alleged that the new CITY building inspector Steve Hunter was "in [DOLLINGER's] back pocket" and that Hunter was taking "bribes" from DOLLINGER.

185.  At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in furtherance of the ARC-NAG Enterprise in or about July 2007, GABOR at the institution-instruction of CARCOLICI, although they knew otherwise and had actual knowledge otherwise, published false accusations over the internet and at public meetings falsely stated accused DOLLINGER of having paid the new CITY building inspector Steve Hunter a bribe so as to falsely and illegally have the premises located at 113 Liberty Street, Newburgh, Orange County New York issued multiple fire and building code violations and condemned so as to cause the summary evection of the tenants living at 113 Liberty Street, Newburgh, Orange County, New York.

186.  At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in furtherance of the ARC-NAG Enterprise in or about July 2007, GABOR at the institution-instruction of CARCOLICI, GABOR, although they knew otherwise, and had actual knowledge of the same published false accusations over the

internet and at public meetings falsely advising that the building was without violation and had recently passed inspection for its sale and that said condemnation was issued because DOLLINGER bribed Hunter so as to allow DOLLINGER to force the owners to sell DOLLINGER the building, wherein the CITY knew the allegations to be false, but failed to take corrective action or otherwise inform the public that they knew the allegation to be false.

187.    At all times material hereto, the CARCOLICI and GABOR on behalf of the ARC-NAG Enterprise members were able to cast a cloud of suspicion over the Plaintiffs having them become the object of hatred, contempt, ridicule and obloquy because the ARC-NAG Enterprise falsely published claims over the internet alleging that Plaintiffs were criminals and had bribed the CITY building inspector CUMMINGS so as to illegally obtain their building permit, and bribed Hunter so as to force the owners of  113 Liberty Street, Newburgh, New York to sell the building to Plaintiff-Dollinger.

## COUNT I
### Plaintiffs' Request For Permanent Injunction Relief

### [MUNICIPLE  Defendants]

188.    Plaintiffs, repeat, reiterate and reallege each and every allegation contained in paragraphs marked "1" through "187" inclusive, with the same force and affect as though they were more fully set forth herein at length.

189.  Plaintiffs since June 2005, are now, and at all times material to this Complaint, have been, the lawful owners of the real property located at 96 Broadway, City of Newburgh, Orange County, New York.

190.  Plaintiffs in January 2006, filed their application for a building permit, together with sealed-stamped plans attesting to the fact that they were drawn by a duly licensed Architect and Engineer, Eric Osborne and have paid all of the necessary fees to the CITY's MUNICIPLE-Defendant(s) Building Inspector's Office for issuance of the building permit for 96 Broadway, City of Newburgh, Orange County, New York.

191.  On or about March 23, 2006, Plaintiffs were lawfully issued a building permit by the CITY MUNICIPLE-Defendant(s) and commenced restoration of the building.

192.  Plaintiffs posses a lawfully issued building permit which has been illegally revoked by the CITY MUNICIPLE-Defendant(s) for political reasons and community activism wherein no lawful basis exist for the taking.

193.  Since on or about May 2, 2006, and continuing to the present, the CITY-MUNICIPLE-Defendant(s) have and wrongfully and unlawfully taken or caused to be taken, the vested property from the Plaintiffs, their building permit for 96 Broadway, City of Newburgh, Orange County, New York.

194.  Since on or about May 2, 2006, and at other times between that date and the present, Plaintiffs have demanded that CITY-MUNICIPLE-Defendant(s) refrain

from committing the above named acts in paragraphs 1-187, and requested that Plaintiffs be allowed to return to work but the CITY MUNICIPLE-Defendant(s) have refused and have threatened to continue such acts, and continues to act in violation of Plaintiffs Constitutional and civil rights.

195.   Plaintiffs have spent in excess of Five Hundred Thousand ($500,000.00) Dollars in the purchase and restoration of the building, and Defendant knew as such.

196.   As a result of defendant's acts, Plaintiffs has sustained/will sustain great and irreparable injury, in that Plaintiffs cannot be fully compensated in damages, and is without an adequate remedy at law because the exact amount of damage Plaintiffs will sustain will be difficult to determine, and because the acts are of a nature against Plaintiffs and the public wherein a continuing wrong exist if said acts are allowed to continue because said acts are a direct and intentional deprivation of Plaintiffs Constitutional and civil rights.

197.   As a further result of defendant's acts, Plaintiff has sustained damage in the amount of Five Hundred Thousand ($500,000.00) Dollars.

198.   If these acts are permitted to continue, Plaintiffs will be further damaged in an amount to be alleged when additional damages have been determined.

199.   At all times material hereto, the CARCOLICI and GABOR on behalf of the ARC-NAG Enterprise members were able to cast a cloud of suspicion over the Plaintiffs having them become the object of hatred, contempt, ridicule and obloquy

because the ARC-NAG Enterprise falsely published claims over the internet alleging that Plaintiffs were criminals and had bribed the CITY building inspector CUMMINGS so as to illegally obtain their building permit.

**WHEREFORE,** Plaintiff requests that this Court issue a permanent injunction prohibiting the CITY-MUNICIPLE-Defendant(s) from requiring Plaintiffs to change the existing building configuration as set forth in the seal-stamped and approved plans filed with the CITY-MUNICIPLE-Defendant(s); that the CITY-MUNICIPLE-Defendant(s) vacate the stop work orders as previously issued to Plaintiffs for the premises 96Broadway; that the CITY-MUNICIPLE-Defendant(s) restore the building permit previously issued to Plaintiffs for the premises 96 Broadway and otherwise refrain from other illegal conduct in the future.

## COUNT II

**Conspiracy To Interfere With Plaintiffs' Equal Protection and Due Process Right**

**[CITY-MUNICIPLE Defendant(s), McGRANE, CUMMINGS,  CRABB, GABOR, KELSON,  KING, CRACOLICI, DOE's 1-10 and ROEs  1-10, Each   Individually the ARC-NAG Enterprise Members Collectively and as MUNICPLE Defendant(s)**

200.  Plaintiffs, repeat, reiterate and reallege each and every allegation contained in paragraphs marked "1" through "199" inclusive, with the same force and effect as though they were more fully set forth herein at length.