# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**07 CIV. 6689**

96 BROADWAY LLC, its members, DOUGLAS R. DOLLINGER, MICHAEL MOLUS and CAROL MOLUS, DOUGLAS R. DOLLINGER, and THE LAW OFFICES OF DOUGLAS R. DOLLINGER, individually and others so similarly situated,

Case No.:07CV

JUL 2 5 2007

USDC WP SDNY

**COPY**

Plaintiffs,

vs.

THE CITY OF NEWBURGH, NICHOLAS VALENTINE, in his capacity as Mayor of the CITY OF NEWBURGH, THE NEWBURGH CITY COUNCIL its Council persons, REGINA ANGELO, GEORGE BOWLES, SALVATORE CRACOLICI, MARYANN DICKINSON in their capacity as members of THE NEWBURGH CITY COUNCIL, SALVATORE CARCOLICI individually , JEANNE McGRANE as NEWBURGH CITY MANAGER and individually, THE NEWBURGH CITY BUILDING DEPARTMENT, WILLIAM CUMMINGS as former Building Inspector for the CITY OF NEWBURGH and individually, THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, MARY CRABB as in her capacity as Chairperson, and individually, PETER KING in his capacity as a as a member of THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, and individually, CORPORATION COUNSEL FOR THE CITY OF NEWBURGH, MICHELLE KELSON in her capacity as Assistant CORPORATON Counsel and individually, MICHAEL GABOR, JOHN DOEs 1-10 and JANE ROEs 1-10, and NEWBURGHER's for ACCOUNTABILITY in GOVERNMENT,

Defendants.

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUCTIVE RELIEF PLAINTIFFS' CIVIL RIGHTS COMPLAINT FOR VIOLATIONS OF PLAINTFFS' FOURTH, FIFTH and FOURTEENTH AMENDMENT RIGHTS UNDER U.S. TITLE 42 §§1983, 1985 (1)&(3) GUARANTEED TO PLAINITFFS UNDER THE NEW YORK STATE CONSTITUTION**

**TRIAL BY JURY DEMANDED**

## PRELIMINARY STATEMENT

1.    This action seeks: (1) a temporary order from this Court restraining, enjoining and otherwise prohibiting Defendants, their agents, servants, employees or any others from illegally interfering with Plaintiffs vested rights and allowing Plaintiffs to complete the approved roof line of their building; (2) an order granting permanent injunction directing that a certain Building Permit issued to Plaintiffs by Defendants be reinstated; (3) that the accompanying "stop work orders" be vacated and that Plaintiff be allowed to complete the restoration of their building pursuant to their filed and approved building plans upon a finding from this Court that the actions of THE CITY OF NEWBURGH, NICHOLAS VALENTINE, in his capacity as Mayor of the CITY OF NEWBURGH, THE NEWBURGH CITY COUNCIL its Council persons, REGINA ANGELO, GEORGE BOWLES, SALVATORE CRACOLICI, MARYANN DICKINSON in their capacity as members of THE NEWBURGH CITY COUNCIL, SALVATORE CRACOLICI individually, JEANNE Mc GRANE as NEWBURGH CITY MANAGER, and individually, THE NEWBURGH CITY BUILDING DEPARTMENT , WILLIAM CUMMINGS as former Building Inspector for the CITY OF NEWBURGH, and individually, THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, MARY CRABB in her capacity as Chairperson, and individually, PETER KING in his capacity as a member of THE NEWBURGH CITY

2

Plaintiffs' Civil Rights Complaint

ARCHITECTURAL REVIEW COMMISSION, and individually, CORPORATION COUNSEL FOR THE CITY OF NEWBURGH, MICHELLE KELSON in her capacity as Assistant Corporation Counsel and individually, MICHAEL GABOR, JOHN DOEs 1-10 and JANE ROEs 1-10, NEWBURGHER's for ACCOUNTABILITY in GOVERNMENT as direct policy makers or co-conspirators, under the color of law; (4) an award in monetary damages to Plaintiffs for having violated Plaintiffs' federal and state constitutional rights, by taking Plaintiffs' vested property interest in their building and the building permit issued for the premises located at 96 Broadway, City of Newburgh, County of Orange, State of New York and for other wrongful acts.

2. Plaintiffs claim that Defendants have collectively engaged in invidious-unlawful conduct, or otherwise illegally conspired among themselves and acted to deny Plaintiffs the equal protection of the law in application of their due process rights because after implementing a policy-practice-custom and/or procedure wherein the CITY Building Department lawfully issued a building permit to Plaintiffs, the CITY Building Department, without a lawful purpose, reason or legal justification, but instead for entirely political pressures, and other illegitimate-improper reasons, under the color of law unlawfully revoked said building permit, wherein the CITY is requiring the Plaintiffs to restore the building-property to its former appearance so as to satisfy those asserting the political pressures-fears.

## JURISDICTION AND VENUE

3.    This Court has "federal question" jurisdiction in this case under 28 U.S.C. § 1331, as Plaintiffs have asserted claims arising under the laws of the United States and the U.S. Constitution.    Specifically, **(1)** a temporary restraining order and a permanent injunction **(2)** cause of action involves federal questions related to Plaintiffs' rights under the 4th , 5th  and 14th Amendments to the US Constitution, and violations of Plaintiffs' civil rights under Part II: 42 U.S.C. sec. 1983 (due process and equal protection clauses), **(3)** violations of Part III: 42 U.S.C. sec. 1985 (1) & (3) (conspiracy).

4.    Because Plaintiffs have asserted various claims arising under state law that form part of the same "case or controversy" as claims arising under federal law, this Court also has "supplemental jurisdiction" pursuant to 28 U.S.C. § 1367 involving **(4)** fraud by omission and nondisclosure, **(5)** common law conspiracy, **(6)** negligent infliction of emotional distress, and **(7)** intentional infliction of emotional distress, **(8)** abuse of process, **(9)** defamation, libel and slander.

5.    Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2), because Defendants reside in this judicial district, and all events giving rise to this cause of action occurred in this judicial district.

## PARTIES

6. Plaintiff 96 BROADWAY, LLC (hereafter from time-to-time "96 BROADWAY" or Plaintiffs) is a limited liability company incorporated in the State of New York.

7. Plaintiff 96 BROADWAY, is a landowner and taxpayer in the City of Newburgh, County of Orange, State of New York.

8. Plaintiff 96 BROADWAY's principle members are MICHAEL MOLUS, CAROL MOLUS and DOUGLAS R. DOLLINGER (hereafter from time-to-time collectively "Plaintiffs" or by their individual identities "DOLLINGER", "M. MOLUS" and "C. MOLUS").

9. In particular, 96 BROADWAY owns the real property located at 96 Broadway, City of Newburgh, Orange County, New York and other properties located within the City, wherein said tax assessment, both individually and collectively, are well in excess of $1000.

10. Plaintiff DOLLINGER is an attorney licensed to practice law before all of the Court of New York State and principle of the LAW FIRM DOUGLAS R. DOLLINGER & ASSOCIATES (hereafter from time-to-time the "FIRM").

11. The FIRM is a Professional Corporation, incorporated in the State of New York with its principle offices presently located at 113 Liberty Street, Newburgh, Orange County, New York.

12.    Plaintiff DOLLINGER, individually as Principle and on behalf of the FIRM has a "special and vested interest" in the building and permits issued because the building was and is the proposed local Law Office of the FIRM, DOUGLAS R. DOLLINGER and ASSOCIATES, and because the FIRM and DOLLINGER are and have been directly impacted by the illegal actions of the Defendants, particularly by the loss of income in his, and the FIRM's, ability to maintain a law practice at 96 Broadway, Newburgh, New York and at any other location in the City of Newburgh, or other locations in Orange County, New York based on false allegation related to criminal conduct associated with the subject building permit issued in this matter.

13.    The CITY OF NEWBURGH (hereafter the "CITY" and from time-to-time the MUNICIPAL Defendant(s)") is a municipal corporation established pursuant to the provisions of § 20 of the General City Law and is the governmental body, that has been and is being used as a vehicle  for an illegal Enterprise and which has as a governmental body by and through it members known of the conspiracy with the CITY policy makers and other defendants herein, and acting under the color of law has illegally taken Plaintiffs' vested property rights in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) as applicable under the New York State Constitution.

14.   The NEWBURGH CITY COMMON COUNCIL  (hereafter the "CITY COUNCIL" and from time-to-time the "MUNICIPAL Defendant(s)") is the governing legislative body and has the powers and duties set forth in the General City Law and the Municipal Home Rule Law and is a governmental body that has been used as a vehicle for an illegal Enterprise and which has by its elected members conspired with the CITY policy makers to illegally take Plaintiffs' vested property rights under the color of law in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights to equal protection of the law, their right of due process in the application of the law and has otherwise violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) as applicable under the New York State Constitution.

15.   THE NEWBURGH CITY BUILDING DEPARTMENT  (hereafter the "BUILDING   DEPARTMENT"   and   from   time-to-time   the   "MUNICIPAL Defendant(s)") is an arm of the CITY governing body and has the powers and duties set forth in the New York State building codes and other local code enforcement statutes and is a governmental body that has been used as a vehicle for an illegal Enterprise and which has by its members conspired with the CITY policy makers to illegally take Plaintiffs' vested property rights under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process in the application of the law and has otherwise violated Plaintiffs' civil

rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) as applicable under the New York State Constitution.

16.   NICHOLAS VALENTINE (the "MAYOR" and from time-to-time a/the "MUNICIPAL Defendant(s)") is the duly elected Mayor of the City of Newburgh and is sued in his official capacity as Mayor of the CITY because as an elected official he has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required by Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

17.   REGINA  ANGELO, ("ANGELO" and  from  time-to-time  a/the "MUNICIPAL Defendant(s) ) is a member of the "CITY COUNCIL", and a policy maker and is sued in her official capacity as council person because as an elected official she has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required under Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

18. GEORGE BOWLES, ("BOWLES" and from time-to-time a/the "MUNICIPAL Defendant") is a member of the CITY COUNCIL, and a policy maker and is sued in his official capacity as council person because as an elected official he has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required under Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

19. SALVATORE CRACOLICI ("CRACOLICI" and from time-to-time a/the "MUNICIPAL Defendant(s)" and/or a "co-conspirator" and member of an illegal "Enterprise") is a member of the CITY COUNCIL, and a policy maker and is sued in his official capacity as council person CITY and individually as a co-conspirator and Enterprise member because he has acted individually, and in furtherance of an illegal Enterprise and as an elected official he has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required under Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

20.    MARYANN DICKINSON ("DICKINSON" and from time-to-time a/the "MUNICIPAL Defendant") is a member of the CITY COUNCIL, and a policy maker and is sued in her official capacity as counscil person CITY because as an elected official she has acted unlawfully or otherwise refused-failed to act to protect Plaintiffs' vested property interest as required under Plaintiffs' 4th , 5th  and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

21.    JEANNE McGRANE is an attorney and is the NEWBURGH CITY MANAGER ("CITY MANANGER" or "McGRANE" and from time-to-time a/the "MUNICIPAL Defendant(s)" and "co-conspirator" and a member of an illegal "Enterprise"), and a policy maker sued in her official capacity as CITY MANAGER and individually as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

22.    WILLIAM CUMMINGS ("CUMMINGS" and from time-to-time the "MUNICIPAL Defendant(s) a "co-conspirator" and member of an illegal "Enterprise") is the former Building Inspector ("BUILDING INSPECTOR") for the CITY and a former policy maker sued in his official capacity as BUILDING INSEPCTOR and individually and as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4[th], 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

23.    THE NEWBURGH CITY ARCHITECTURAL REVIEW COMMISSION, (hereafter the "ARC") is the governmental advisory commission to the CITY that has been used as a vehicle for the illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

24.    MARY CRABB ("CRABB" and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") is the Chairperson of the ARC and a policy maker sued in her official capacity as Chairperson and individually, and as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

25.    PETER KING ("KING" and from time-to-time a/the "MUNICIPAL Defendant(s)" a co-conspirator and member of an illegal "Enterprise") was from-time-to-time a member of the ARC and a policy maker sued in his official capacity as ARC member and individually, as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

26.    CORPORATION COUNSEL FOR THE CITY OF NEWBURGH (hereafter "CORPORATON COUNSEL" and from time-to-time a/the "MUNICIPAL Defendant(s)" and a "co-conspirator") is arm of the CITY government and the legal representative-advisor-prosecutor of its polices-practices-procedures and customs for the CITY of NEWBURGH that has been used by its appointed members as a vehicle to conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due of the process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant under Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

27.    MICHELLE KELSON ("KELSON and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") is an attorney Assistant Corporation Counsel and is the legal representative-advisor, prosecutor for the CITY of NEWBURGH who has intentionally failed to prosecute-enforce policies, practices and procedures instituted by the CITY, acted illegally with the knowledge consent of the CITY-CITY's policy maker McGRANE and other named defendants herein, and is sued in her official capacity as Assistant Corporation Counsel and individually, as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants

13

herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

28.   MICHAEL GABOR, individually ("GABOR" and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") was and is a resident of the City of Newburgh and a co-conspirator-member of an illegal Enterprise sued in his official capacity as concealed-clandestine ARC member and individually, as a co-conspirator of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

29.   JOHN DOEs 1-10, ("DOE and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") whose real names and identities are unknown to Plaintiffs at this time were and are residents of the City of Newburgh and are co-conspirators-members of an illegal Enterprise

individually, and as a co-conspirators of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

30.    JANE ROEs 1-10, ("ROEs and from time-to-time a/the "MUNICIPAL Defendant(s)" a "co-conspirator" and member of an illegal "Enterprise") whose real names and identities are unknown to Plaintiffs at this time were and are residents of the City of Newburgh and are co-conspirators-members of an illegal Enterprise individually, and as a co-conspirators of an illegal Enterprise, which has conspired with the CITY policy makers and other defendants herein to take Plaintiffs' vested property interest under the color of law in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and has otherwise willfully violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

31.    The NEWBURGHER's for ACCOUNTABILITY in GOVERNEMENT (hereafter the "NAG's  and from time-to-time a/the "MUNICIPAL Defendant(s)" a

"co-conspirator" and member of an illegal "Enterprise") is an association-in-fact that has been used as a vehicle for an illegal Enterprise and which has by governmental fiat by and through it members conspired with the CITY policy makers and other defendants herein to illegally take Plaintiffs' vested property rights under the color of law in violation of Plaintiffs' 4th, 5th and 14th Amendment rights to equal protection of the law, their right of due process under the U. S. Constitution in the application of the law and has otherwise violated Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983; Part III: 42 U.S.C. §1985(1), (3) as applicable under the New York State Constitution.

## FACTUAL BACKGROUND

32.   At all times material hereto, on or about June 15, 2005, Plaintiff, 96 BROADWAY purchased a 4800 sq. ft. three (3) story abandoned brick building located on the northeast corner of Broadway and Liberty Street, City of Newburgh, Orange County, New York.

33.   At all times material hereto, between June 2005 and January 2006, extensive research into the history of the building site was conducted.

34.   At all times material hereto, it was determined that the building was actually three (3) separate buildings erected at three different (3) points in time,

approximately between 1850-90, and as such the oldest portion of the building is in excess of 150 years old.

35.   At all times material hereto, the property runs 21 feet east to west in length along Broadway.  The property also abuts Liberty Street and runs north from the Broadway building line 81 feet along the northwest side of Liberty Street.   The designated addresses are 96 Broadway and 139-141 Liberty Street and are within the City of Newburgh's principle economic redevelopment corridor/historical district.

36.   At all times material hereto, at some point, which appears to be about 1880-90, a single flat tin roof, pitched to each side from the center of the three (3) buildings, was added over the top of the three (3) existing roofs. The tin roof ran from the center of the structure slopping downward north and south at a pitch of 1/10.

37.   At all times material hereto, Plaintiffs' also own the parking lot behind 96 Broadway as designated 142-154 Liberty Street.  The lot is sufficient for off-street parking of 27 vehicles.

38.   At all times material hereto, prior to Plaintiffs' purchase of the building, Plaintiffs are informed and believe, that the building had remained vacant for approximately 30 years , when the CITY, in or about 1999, allowed the prior owners to proceed with restoration for both the interior and exterior of the building.

39.   At all times material hereto, Plaintiffs are informed and believe, that without the advice of engineers or any other inspections the interior of the building and

its entire infrastructure were completely stripped away and removed leaving the building as nothing more than an unstable shell.

40. At all times material hereto, the building's tin roof was completely deteriorated and had become unsafe. The same was true for the entire top cornice and the four feet of brick veneer behind it.

41. At all times material hereto, the cornice which was made of tin and sheet metal, and which weighed in excess of 300lbs per 25-30 foot length, was improperly repaired with fiberglass mess, apparently put in place during the 1999, repairs.

42. At all times material hereto, it was apparent that no one understood that they were covering over many years of neglect and that the metal straps used to secure the cornice to the top of the building were rotted and decayed to the point where they had failed throughout the entire span.

43. At all times material hereto, the cornice was lifting away from the building facade and was a danger to the public which could not be left unattended.

44. At all times material hereto, the basement, by virtue of the open roof had over six (6) feet of pooling water which appeared by inspection and watermarks to be the tipping point for overflow into the CITY's sewer system.

45. At all times material hereto, visually, the interior was littered with general debris and the reaming interior roofs were falling in and on themselves. This created a dangerous condition and uneven stress loads against the exterior walls.

46.    At all times material hereto, in or about August 2005, the CITY's Building Inspector, CUMMINGS was advised of the situation, demolition permits and dumpster permits were obtained.  Plaintiffs were allowed to commence preliminary clean-up and removal of the interior roofs to relieve the undue stress on the exterior walls.

47.    At all times material hereto, it was also determined, in conference with the CUMMINGS that in order to justify the expense of rehabilitating and bringing the building up to code, rather than requesting a grandfathering or even exemption under Appendix K, of the New York State Building Code, the building plans would be drawn to City Code and to fit the historic era for the original construction of the buildings to reflect the Second Empire era of 1850-1880's.

48.    At all times material hereto, a duly licensed architect was hired by Plaintiffs and a plans were drawn for a fourth floor and Mansard roof to reflect this era.

49.    At all times material hereto, a sprinkler system, elevator and handicapped access were also configured for the building and added to the plans.

50.    At all times material hereto, in or about January 2006, an application for a building permit and proposed plans were submitted to the CITY's Building Department.

51.    At all times material hereto, the rehabilitation required a two phase approach for which the CITY was consulted.

52.    At all times material hereto the first stage was necessary because the

building represented a serious hazard and danger to the public.

53.    At all times material hereto, an initial request was made for shoring and bracing of the building and for permission to repair the roof and cornice.

54.    At all times material hereto, the second phase related to the architectural changes to the building. **See, Exhibit "2".**

\* \* \*

55.    At all times material hereto, Plaintiffs were advised by CUMMINGS that approval of their application and plans would be delayed for at least four (4) months because the application and building plans needed to be presented the ARC for approval and that the ARC was without a sitting architect to review the Plaintiffs' building plans.

56.    At all times material hereto, DOLLINGER advised CUMMINGS of the hazards and potential liabilities to the Plaintiffs' as well as the CITY's potential for liability unless immediate repairs could be undertaken.

57.    At all times material hereto, CUMMINGS advised DOLLINGER that he would speak with the CITY Manager McGRANE to see if he could "speed things along" and use an outside architect to review the plans on behalf of the CITY for Plaintiffs' proposed shoring and bracing request, roof repair, as well as for the architectural restoration and review of the building plans.

58.    At all times material hereto, McGRANE as policy maker for the CITY had actual authority to adopt policy-practice procedure and/or custom to have the

building department use outside consultants and issue building permits for the safety reasons and for economic reasons in her capacity as CITY Manager inclusive of by-passing approval of various CITY advisory commissions, the ARC.

59.    At all times material hereto, Plaintiffs were advised by CUMMINGS that after discussing the matter with the CITY Manager McGRANE, McGRANE approved the use of an outside architect and that Plaintiffs would be required to pay the fee for the CITY's architectural review of their plans.

60.    At all times material hereto, in or about January 2006, Plaintiffs agreed to the payment of a fee for the CITY's outside review of the repair plans and architectural review of the restoration plans.

61.    At all times material hereto, in or about January 2006, the CITY hired Mr. Whelton B. Abt, an architect to provide a review for the requested shoring, bracing and repair plans, as well as an architectural reviewed of the restoration plans.

62.    At all times material hereto, on or about February 3, 2006, in response to the restoration plans Mr. Abt requested a meeting with the Plaintiffs' representatives.

63.    At all times material hereto, on or about February 3, 2006, a permit was issued by the CITY's Building Department for repair of the roof to the building.

64.   At all times material hereto, on or about February 14, 2006, Plaintiffs' representative met with the CITY's representatives, including Abt for architectural review of the project and to determine whether the historic restrictions would apply to the project under Appendix "K" of the New York State Building Code as related to historic buildings.

65.   At all times material hereto, on or about March 22, 2006, Abt approved the architectural review of the restoration plans exempting the building from Appendix "K" or otherwise requiring a historical report and determined that the alterations to the building did not impact on the historic character of the building, wherein a building permit "could" be issued by CUMMINGS to Plaintiffs.

66.   At all times material hereto, Plaintiff are informed and believe CUMMINGS notified McGRANE of the approval by Abt, wherein McGRANE authorized CUMMINGS to issue a building permit for the Plaintiffs' building plans as submitted without the need for prior ARC approval.

67.   At all times material hereto, on or about March 23, 2006, the CITY lawfully issued Plaintiffs a building permit to perform the work Abt approved including the architectural restoration of the building, whereupon Plaintiffs commenced restoration of their building.

* * *

68.   At all times material hereto, the ARC is an advisory commission to the CITY, established for the review of certain restoration projects including those within the City of Newburgh's Economic Redevelopment Corridor/Historic District wherein said commission is required to issue a "Certificate of Appropriateness" for building alterations that met established statutory criteria .

69.   At all times material hereto, McGRANE with the CITY COUNCIL's approval appoints the members to the ARC.

70.   At all times material hereto, the CITY-CITY Manger retains the power to by-pass the ARC concerning whether or not to issue a certificate of appropriateness and building permits or otherwise veto a decision of the ARC concerning applications coming before for it, and in the past has issued building permits without prior ARC approval for among other reasons, the  safety of the public or for economic reason including the benefit-burden to/on the CITY, wherein unless otherwise approved the CITY could face liability and would lose potential economic gain/growth for its citizens if an investment in the CITY were no made.

* * *

71.   At all times material hereto, Plaintiffs are informed and believe, that GABOR, CRABB, KING, and KELSON, are and/or were in the past members or

23

represented that they were members of the ARC and/or CORPORATON COUNSEL, who were acting for ands under the authority of the CITY in matter coming before the ARC.

72.    At all time material hereto, Plaintiffs are informed and believe, Defendants DOEs 1-10 and ROE's 1-10 are members of the community and claimed members of NAG living and residing in the CITY who from time-to-time at the direction of CRABB and/or GABOR, who are also NAG members appear before the ARC.

73.    At all time material hereto, Plaintiffs are informed and believe, GABOR, CRABB, KING, KELSON and Defendants DOEs 1-10 and ROE's 1-10 (hereafter collectively the "ARC-NAG Enterprise") have formed an illegal union, an association-in-fact engaged in illegal conduct designed to deny the citizens appearing before the ARC, inclusive of Plaintiffs',their 4th , 5th   and 14th Amendment rights to equal protection of the law, their due process rights under the U.S. Constitution in the application of the law and have otherwise willfully violated other citizens and Plaintiffs' civil rights pursuant to Part II: 42 U.S.C. § 1983;  Part III: 42 U.S.C. §1985(1), (3) and the New York State Constitution.

74.    At all times material hereto, Plaintiffs are informed and believe, that the CITY COUNCIL was and is actually aware of the ARC-NAG Enterprise and attempted to eliminate their illegal activity by allowing McGRANE to institute a by-pass policy and by not reappointing GABOR and/or appoint others to the ARC during the period

between January 2006 and June 29, 2007.

75.    At all times material hereto, Plaintiffs are informed and believe, the ARC-NAG Enterprise members knew and were actually aware that the CITY Manager had authorized CUMMINGS to by-pass ARC approval of Plaintiffs' project and issue the Plaintiffs their building permit without prior ARC approval based on having an outside architectural review of their plans by Abt and render his approval to issue a building permit to Plaintiffs.

76.    At all times material hereto, Plaintiffs are informed and believe, the ARC-NAG Enterprise members were angry and embarrassed by the CITY COUNCIL's refusal to reappoint GABOR and others to the ARC and the CITY's policy-practice adopted by McGRANE and CUMMINGS relative to using the retained authority of the CITY to by-pass the ARC and grant approval of the Plaintiffs' project in the historic district and economic corridor of Broadway without prior ARC approval, including Plaintiffs' project.

77.    At all times material hereto, Plaintiffs are informed and believe, that ARC-NAG Enterprise members met subversively in person, and over the internet, for the purpose of illegally conspiring to force McGRANE to unlawfully revoke the building permit issued by the CITY's Building Department to Plaintiffs notwithstanding the fact that they knew the permit had been lawfully issued to Plaintiffs by CUMMINGS; to illegally force Plaintiffs to submit an application to the ARC; to illegally force

Plaintiffs to appear before the ARC; and to deny the application for political reasons through any means necessary including the violation of Plaintiffs' Constitutional and civil rights; wherein, as illegally agreed among ARC-NAG Enterprise members, to "crush" the project so as to "run plaintiffs out of town".

\* \* \*

78.   At all times material hereto, thereafter, Plaintiffs are informed and believe, CRABB under the color of law and in the name of the ARC, together with GABOR, KING and the DOEs 1-10 and ROEs 1-10 Defendants coordinating and intending to illegally and systematically deny Plaintiffs the equal protection of the law as well as to illegally deny Plaintiffs their due process right engaged their plan to take the Plaintiffs' vested property interest, its building permit, and otherwise injure Plaintiffs, in or about February 2006, proceeded with their illegal plan/goal.

79.   At all time material hereto, Plaintiffs are informed and believe, that notwithstanding his failure to be reappointed to the ARC by the CITY COUNSEL, GABOR, in furtherance of the illegal agreement with the other ARC-NAG Enterprise members, continued to make decisions so as to accomplish the illegal goals set of the conspiracy including an agreement that he, GABOR would file a false complaint with the CITY's Building Department; and an agreement to disseminate willfully-false information via the newspapers and internet about Plaintiffs, 96 BROADWAY-

DOLLINGER so as to illegally sway public opinion; to force McGRANE to illegally "crush" the project; to force Plaintiffs to appear before the ARC; and to intentionally deny Plaintiff approval of their plans to "crush: the project and run Plaintiffs "out of town".

80.    At all times material hereto, Plaintiffs are informed and believe that, thereafter on or about April 28, 2006, with the knowledge consent of CRABB, KING, DOEs 1-10 and ROEs 1-10, in furtherance of their illegal plan, GABOR filed a complaint against 96 BROADWAY with the CITY Building Department falsely alleging that work performed at 96 BROADWAY was being performed on the building without permits or prior ARC approval.

81.    At all times material hereto, Plaintiffs are informed and believe that, thereafter with the knowledge consent of GABOR, KING, DOEs 1-10 and ROEs 1-10, in furtherance of their illegal plan, CRABB, illegally and under the color-authority of the ARC, Illegally demanded that CITY issue a stop work order on Plaintiffs' building and submit a application to the ARC.

*    *    *

82.    At all times material hereto, in or about May 2006, CUMMINGS contacted DOLLINGER advising him that they, CUMMINGS and McGRANE were having problems with the ARC, specifically, GABOR CRABB, and "others in the

community" because they "sidestepped" the ARC when they hired Mr. Abt for his architectural review and issued the building permit to Plaintiffs without prior ARC approval wherein CUMMING's advised DOLLINGER that CRABB was demanding that the CITY issue a stop work order on Plaintiffs' building and that McGRANE directed the project be "stop" and sent to the ARC.

83.    At all times material hereto, CUMMINGS, upon DOLLINGER's inquires, stated to DOLLINGER, "what you have to understand is this is not New York City" there were "a lot of hurt feelings" people were "embarrassed" by not being consulted on the project.

84.    At all times material hereto, CUMMINGS asked DOLLINGER to "kind-a-lay-low" until he and Mc GRANGE could work things out "internally".

85.    At all times material hereto, DOLLINGER advised CUMMINGS that he could not simply stop the project because the project had certain deadlines which could not be changed, there were "cost factors" related to "investors' money" and plans. Plaintiffs had already spent in excess of Five Hundred Thousand ($500,000.00) Dollars on the project and any delay would be a burden on the project.

86.    At all times material hereto, Plaintiffs are informed and believe, that because DOLLINGER refused to stop the project, CUMMINGS at the direction of CRABB-McGRANE, so as to control or otherwise stop the project and appease the political and public pressure being asserted by GABOR, CRABB, and the other ARC-

NAG Enterprise members, and for no lawful reason, under the color of law, on or about May 2, 2006, illegally issued a stop work order at the direction of McGRANE in agreement with CRABB for the benefit of the ARC-NAG Enterprise, and by the CITY's Deputy Code Enforcement Officer Bruce Tewilliger in the name of the CITY falsely claiming a violation of Section 300-26A of the City Code.

87.    At all times material hereto, the order falsely alleges that the reason for issuing the stop work order is that a condition existed that was dangerous to the "Public Safety".

88.    At all times material hereto, Section 300-26A of the CITY Code relates to obtaining a **Certificate of Appropriateness"** from the ARC and has nothing to do with public safety, but was issued due entirely to political and public pressure exerted by CRABB-GABOR on behalf of the ARC-NAG Enterprise members.

89.    At all times material hereto, Plaintiff possessed a valid certificate of appropriateness as issued by the CITY's architect Abt on March 22, 2006.

90.    At all times hereto mentioned, upon receiving the stop work order Plaintiffs stopped work wherein Plaintiffs had spent in excess of Five Hundred Thousand ($500,000.00) Dollars in improvements in the property, had a vested property interest in the building and building permit and Defendants knew as such.

91.    At all times hereto mentioned, the action was an illegal taking of Plaintiff's property in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights, an

abuse of process, an illegal taking and a denial of the equal protection of the law and a violation of Plaintiffs civil rights.

92.   At all times material hereto, Plaintiffs are informed and believe, that simultaneous with the issuance of the forgoing order, again, in response to said political and public pressure, and for no lawful reason, under the color of law, at the direction of CRABB-McGRANE-CUMMINGS, in an agreement with CRABB-GABOR, for the benefit of the ARC-NAG Enterprise an additional stop work order was illegally issued pursuant to Section 122.12 of the City Code.

93.   At all times material hereto, the order also falsely alleges that the reason for issuing the stop work order was that a condition existed that was dangerous to the "Public Safety" but was issued due entirely due to political and public pressure created by the ARC-Enterprise.

94.   At all times material hereto, Section 122.12 of the City Code relates to obtaining a permit for exterior changes and has nothing to do with public safety.

95.   At all times material hereto, Plaintiff possessed a valid and lawfully issued building permit for the work being performed.

96.   At all times hereto mentioned, upon receiving the stop work order Plaintiffs stopped work, wherein Plaintiffs had spent in excess of Five Hundred Thousand ($500,000.00) Dollars in improvements in the property, had a vested property interest in the building and building permit and Defendants knew as such.

97.   At all times hereto mentioned, the action was an illegal taking of Plaintiff's property in violation of Plaintiffs 4th, 5th and 14th Amendment rights, an abuse of process, a illegal taking, and a denial of the equal protection of the law and a violation of Plaintiffs civil rights.

\*   \*   \*

98.   At all times material hereto, DOLLINGER advised CUMMINGS that the CITY was facing a "serious fight" and that unless the stop work orders were lifted Plaintiff would seek immediate judicial resolution to the problem and damages.

99.   At all times material hereto, on or about May 8, 2006, CUMMINGS lifted the stop work orders previously issued by the CITY Building Department on May 2, 2006.

\*   \*   \*

100.  At all times material hereto, Plaintiffs are informed and believe, that in furtherance of the Enterprise on or about May 27, 2006, DOLLINGER was contacted by a reporter for The Times Herald Record in relation to how a building permit was issued for 96 Broadway without first getting ARC approval.

101.  At all times material hereto, on or about June 2, 2006, DOLLINGER contacted CUMMINGS, wherein CUMMINGS was advised by DOLLINGER that a reporter for the Times Herald Record had requested an interview relative to the project and the issuance of obtaining the building permit without prior ARC approval.

102. At all times material hereto, on or about June 2, 2006, CUMMINGS spoke with DOLLINGER wherein, CUMMINGS advised DOLLINGER that he and McGRANE were again receiving ". pressure" to "shut the job down" from the ARC-CRABB-GABOR and other "community agitators" and that after discussions with McGRANE it would be "helpful" to the situation "at least for show", if an application were presented to the ARC by Plaintiff, 96 BROADWAY.

103. At all times material hereto, DOLLINGER advised CUMMINGS that he would consider the request.

104. At all times material hereto, CUMMINGS advised DOLLINGER that McGRANE had already "worked it out" with the ARC. The ARC was to "rubber stamp" the application and the matter would be "behind us".

105. At all times hereinafter mentioned, DOLLINGER demanded of CUMMINGS more information about "what exactly" was "going on" reminding CUMMINGS that the plans had already been reviewed and approved by McGRANE and the CITY's architect, Abt and that Abt determined that the alterations to the building did not need further review because Appendix K of the New York State Building Code did not apply, nor, as discussed in February 2006, did any other historical restriction apply and that Abt agreed that the permit could be issued.

106. At all times material hereto, on or about June 2, 2006, in response to the foregoing, CUMMINGS advised DOLLINGER that he and McGRANE had things

"under control" the problem related to the "politics" and community pressure with the ARC-CRABB-GABOR and others who were falsely and intentionally alleging misconduct, including bribe taking between Plaintiff-DOLLINGER and CUMMINGS because they had in fact used an outside consultant for architectural review so as to issue the building permit.

\* \* \*

107. At all times material hereto, on or about June 3, 2006, in furtherance of the ARC-NAG Enterprise's goal to discredit Plaintiffs and illegally sway public opinion against Plaintiffs a newspaper article appeared in the Times Herald Record, wherein GABOR falsely alleged that there was criminal wrongdoing in obtaining the building permit for 96 Broadway, including the fact that a bribe was given by Plaintiff-DOLLINGER to CUMMINGS for the building permit.

108. At all times material hereto, in furtherance of the ARC-NAG Enterprise GABOR knowingly and falsely publicly stated that:

> "What's going on here is very, very wrong.  And, it is so
> secretive. <u>We have people talking about there must be
> favoritism or payoffs.</u> That's how shady it is."
> **[Emphasis added.]**

109. At all times material hereto, on or about June 5, 2006, Plaintiffs-DOLLINGER commenced a state court slander-libel and defamation action against GABOR, and Defendants JOHN DOE 1-10 and JANE DOE 1-10, wherein, Plaintiffs

claimed that the "people talking" were members of the ARC-NAG Enterprise who had by said publications caused Plaintiffs to become the object of hatred, contempt, ridicule and obloquy, because the ARC-NAG Enterprise falsely published claims in the media insinuating that Plaintiffs via DOLLINGER, who the ARC-NAG Enterprise members knew was an attorney, were criminals and had bribed the CITY building inspector CUMMINGS so as to illegally obtain their building permit when they knew that said statements were entirely untrue and intended to illegally sway public opinion against Plaintiffs.

110.  At all times material hereto, on or about June 6, 2006, after the article appeared in the newspaper in response to said political and public pressures, and for no lawful reason, under the color of law at the direction of McGRANE and CRABB and CUMMINGS a stop work order was illegally issued by the CITY claiming a violation of Section 122.20(A) of the City Code.

111.  At all times material hereto, the order alleges that the reason for issuing the stop work order is that a condition existed that was dangerous to the "Public Safety".

112.  At all times material hereto, the stop work order has nothing to do with public safety, but was issued due entirely to political and public pressure falsely and viciously created by the ARC-NAG Enterprise members so as to illegally sway public opinion on the project.

113. At all times material hereto, Section 122.20(A) of the City Code relates to conforming the work permitted at the site to the "APPLICABLE BUILDING PERMIT" and claims that the "CORRECTIVE ACTION NEEDED:" was to "STOP WORK! EXISITNG CONSTRUCTON DOES NOT REFLECT APPROVED DRAWINGS".

114. At all times material hereto, the Order admits that there were approved drawings on file with the CITY.

115. At all times material hereto, the building plans and drawings conformed to the plans and drawings submitted to the CITY and approved by McGRANE, CUMMINGS and Mr. Abt, the CITY's architect, and otherwise conformed to all of the laws of the State of New York and the ARC criteria.

116. At all times hereto mentioned, upon receiving the stop work order Plaintiffs stopped work wherein Plaintiffs had spent in excess of Five Hundred Thousand ($500,000.00) Dollars in improvements in the property, had a vested property interest in the building and building permit and Defendants knew as such.

117. At all times hereto mentioned, the action was an illegal taking of Plaintiffs' property in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights, an abuse of process, an illegal taking and a denial of the equal protection of the law and Plaintiffs' civil rights.

\* \* \*

118. At all times material hereto, based on the representations of CUMMINGS that the matter was purely "for show" and his statement that McGRANE told CUMMINGS that the application would be "rubber stamped", Plaintiffs agreed to submit an application to the ARC.

119. At all times material hereto, following the newspaper article of June 3, 2006, the ARC-NAG Enterprise members, in furtherance of their goals began to publish their **continuing manifesto** over the internet as designed to falsely discredit and otherwise illegally sway-injure Plaintiffs' in their application before the ARC.

120. At all times material hereto, the ARC-NAG Enterprise members were able to cast a cloud of suspicion over the Plaintiffs having them become the object of hatred, contempt, ridicule and obloquy because the ARC-NAG Enterprise falsely published claims over the internet alleging that Plaintiffs were criminals and had bribed the CITY building inspector CUMMINGS so as to illegally obtain their building permit.

121. At all times material hereto, GABOR admits to being "CRANKIN" and "MG" and in furtherance of the ARC-NAG Enterprise plans to discredit Plaintiffs published or caused to be published by other ARC-NAG Enterprise members the following manifesto and false-libelous statements over the internet:

From: Crankin
Date:  29 Oct 2003
Time :09:15:43
Remote Name: 204.210.148.240

36
Plaintiffs' Civil Rights Complaint

"We are on a jugernaught **my fellow NAGS**. We have to keep up the pressure. The control of this city is now within our reach. **We have to take it over by any means necessary.** That means get on all the boards; go to all council meetings and NAG, NAG, NAG! **Do whatever it takes. Our group is the only one who can so let's do** it [Emphasis added.]"
Posted:  Saturday, June / 7 / 2:5 / :pm
Author:  John Doe (Undercover)
Subject: Re: Savoy
In reply to: Goobie 's message, 'Re: Savoy" On *Thursday,* June *02:2 7pm*


The 96 broadway land baron Dollinger gets his suits altered at Nickys B'Way Tailors. The under cover question of the day is. **Why do you Mr. Dollinger pay for alterations to the Mayor of our city an envelope full of $100.00 dollar bills. Yes your Mayor was dumb enough to open it with people in the store, More information on that to come. This is way beyond shady. I guess he pays CUMMINGS liquor bills and motel bills .Oh** yes i'm proud too, as one of the 50 hero's of Newburgh. **We the John and Jane Does of Newburgh pledge to stick together!** [Emphasis added.]


*Date Posted: 10:01:20 06/12/06 Mon*
Author:    Michael C.
Subject:    Dunbo Dollinger


This Dumbo and his lawsuit is going nowhere. Remember Rudy and Taylor's lawsuit? That went in the toilet as did the one against Fred Ernden. **WE as a group are protected by the Constitution, and freedom of speech.** This cash Felon Dollinger has no idea. Some one should tell him we don't back down. **We will run him out of Newburgh. This is our city and we don't want criminals bribing our officials, he can take CUMMINGS with him and give him a job.** [Emphasis added.] See, Exhibit "23-3".


*Date Posted: 08:23:41 06/13/06 Tue*
Author:  "We The People"
Subject: Scumbag Dollinger!


Read the Constitution. ASSHOLE! FREEDOM OF SPEECH, THE FIRST AMENDMENT!! !! You will not silence us, **you are our prime target now! You're history, you will never have any peace.**  You haven total and collossal nerve to

send someone to a public protected space to serve us with papers. Was that the idea of that fat stinkin' piece of shit McCarthy? Think him and you, and Rudy and the rest of the criminal element all of you are associated with… You Suck what are you going to do about it.. WE got your number Dollinger…START <u>PACKING… and take</u> <u>CUMMINGS with you… <b>we have someone in his office and she lets us know about</b></u> <u><b>the corruption going on…YOU ARE OUTED</b></u>!!![Emphasis added.]

*Date Posted: 07:3 7:45 06/14/06 Wed*
Author:      BJ
Subject:     <u>Dollinger=Crime</u>
It is a sad day we have <u>criminals like</u> this trying to lake over Newburgh.

*Date Posted: Saturday , June 17, /2:07:pm*
Author:  BJ
Subject:Re: Savoy

In reply to: Confuscious's message, "<u>Sav'oy</u>'' on *Friday, June16, 05:OO:pm*
My most exalted and learned Confuscious. **To answer your question, when we rid Newburgh of Regina, Bowles, McGrane, and Little Nicky for starters.** <u>That will</u> <u>stop Criminals like Dollinger from bribing our building inspector in order to get</u> <u>permits.</u> Our Friends on The ARC have stopped him dead! in his tracks. Mr. "Doll"inger paid a handsome sum to Rudy for 96 Broadway, along with some "Cash under the table for Rudly". Stay tuned readers of this site, all of the corruption will come out at the lawsuit trial. Mr. Dollinger do you really want to be exposed? [Emphasis added.]

**Date Posted:** *Tuesday June 20, 01:28pm*
Author:    John and Jane does
Subject:   Re: Newburgh Advocate
In reply to: Michael G.'s message *"<u>Re: Newburgh Advocate</u>"* on Wednesday, June14,1:53:pm

We as a group are the "Watchdogs of City Government" and **illegal activities** in our city. **We support Michael Gabor Barbara Smith and Brian Flannery** in their pursuit of justice. Mr. Dollinger you cannot win against the truth. Others have tried and failed. Thanks to the efforts of Jane Johnson and many others. The Advocate will breath down your neck and any others who get in the way of our fair city. <u>Its legal</u> <u>growth is what matters to us, not bad officials who take bribes from you. Mr. Dollinger</u> <u>perhaps in California you got away with   your shady way of business, but that will</u>

not stand in Newburgh. You will. not be permitted to continue, **one way or another.** [Emphasis added.]


*Date Posted: .10:44:33 06/22/06 Thu*
Author:  Michael G.
Subject: City Criminals

Let's get this investigation going...call the inspectors in Albany have them come down hard on Dollinger. **We have to crush the project ASAP.** That building was in excellent condition and he destroyed it. **He bribed our city building inspector that needs to be investigated. Our Mayor according to our witness was bribed too! Now start- the machine and bring down the all weight of our government on the DOLLINGER CRIME SPREE!** [Emphasis added.]

*Last Changed October 29, 2003*
*Date Posted: 10:08:48 06/12/06 k/on*
Author:    Darthy V
Subject: Dumbo. Dirtbag, Degenerate,=Dollinger


Michael oh la la ,you have such a way with words. Maybe the Orange County Bar Association should be alerted to the mis—adventures of this corrupt attorney? Did you not hear Michael of the ASBESTOS REMOVAL performed without a permit at 96 Broadway? Brian F. did and he will spread the alarm. 96 Broadway is only 2 blocks from the new school opening **Hmmm use you imagination.** Record may be interested in such a story. [Emphasis added.]

122.    At all times material hereto, in an attempt to sway public opinion, despite

the clear constitutional violations of the law, GABOR and the ARC-Enterprise

members actually advocate the taking over of the City **"by any means necessary"** and

by doing **"whatever it takes."**

123.    Apparently, based on their conduct they were and are serious including

violating Plaintiffs' Constitutional and civil rights, including the intended taking of

Plaintiffs' property.

*  *  *

124.  At all times material hereto, on or about June 13, 2006, based on the representations of CUMMINGS, DOLLINGER on behalf of 96 BROADWAY appeared before the ARC.

125.  At all times material hereto, CRABB Chaired the meeting during the ARC's review of the Plaintiffs' application, wherein, in addition to CRABB, present on the Commission were ARC-NAG Enterprise member KING, together with ASSITANT CORPRORATON COUNSEL, KELSON, and under the color of law, unbeknownst to Plaintiffs at the time, acting as governmental officials, non-members DOE-1 and DOE-2.

126.  At all times material hereto, the ARC must have appointed members with credentials consisting of at least one (1) architect and (1) historian who have sufficient background and experience in the field of architectural restoration and historic preservation to render a decision based on the criteria set forth in the CITY's Codes and who have been sworn under oath to undertake their duties and discharge them in a lawful manner.

127.  At all times material hereto, during the ARC's review of the Plaintiffs' application, Plaintiffs are informed and believe, as confirmed by CORPRORATON COUNSEL's Chief Attorney, the Commission did not have present the required

members and were otherwise proceeding illegally and in violation of Plaintiffs' 4th, 5th and 14th Amendment rights, engaged in an abuse of process, an illegal taking, a denial of the equal protection and due process of the law and Plaintiffs' civil rights.

128. At all times material hereto, despite the representations of McGRANE and CUMMINGS, that the project was already approved, it became apparent that the ARC-NAG Enterprise members, under the color of law, and the guise of the ARC's powers in this matter, that the ARC-NAG Enterprise members were more interested in investigating the claims of wrongdoing [bribery]in relation to receiving the building permit and had no intention on approving the permit on the merits of the buildings economic or historical contribution to the community-CITY.

129. At all times material hereto, DOLLINGER refused to engage in the query and repeatedly requested that the ARC ask questions related to the ARC approval criteria for the building.

130. At all times material hereto, the ARC actually knew and was aware that the Plaintiffs, stopped work and had spent in excess of Five Hundred Thousand ($500,000.00) on the project and that through its members was acting collectively to deny Plaintiffs their vested property rights.

131. At all times material hereto, ARC proceeded illegally and in violation of Plaintiffs' 4th, 5th and 14th Amendment rights, an abuse of process, an illegal taking and a denial of the equal protection of the law and Plaintiffs' civil rights.

\* \* \*

132. At all times material hereto, DOLLINGER advised CRABB that the project would make money for Plaintiff and the citizens of Newburgh.

133. At all times material hereto, in violation of Plaintiffs civil rights and other federal laws against discrimination, and in furtherance of the ARC-NAG Enterprise members goal to deny Plaintiffs' application, "crush" the project and run [Plaintiff] out of town" CRABB advised DOLLINGER that his money was not "wanted" in Newburgh.

134. At all times material hereto, CRABB in league with the other co-conspirators, under the color of law, in furtherance of the plans of the ARC-NAG Enterprise conspiracy to deny Plaintiffs' application without legal cause, in violation of Plaintiffs' right of equal protection and due process of the law, Defendants intentionally and illegally tabled the application without a decision so as to conceal the fact that the ARC was not lawfully in session and so as to frustrate Plaintiffs right to invest in CITY and otherwise damage Plaintiffs. See, Exhibit "24".

135. At all times material hereto, CRABB and the remaining ARC-NAG Enterprise members actually knew and was aware that the Plaintiffs had stopped work and spent in excess of Five Hundred Thousand ($500,000.00) on the project and that she was acting to deny Plaintiffs their vested property rights.

136. At all times material hereto, CRABB proceeded illegally in the name of the ARC and individually, and or in furtherance of the ARC-NAG Enterprise in violation of Plaintiffs' 4th , 5th  and 14th Amendment rights, an abuse of process, an illegal taking and a denial of the equal protection of the law and Plaintiffs' civil rights.

\* \* \*

137. At all times material hereto, notwithstanding her lawful duty not to advocate or otherwise sponsor a political-public position one way or another, under the color of law, both after and during the public comment period of the application proceedings, before the ARC, KELSON who is present at all ARC meetings, in furtherance of the ARC-NAG Enterprise, used her position as Assistant Corporation Counsel, notwithstanding her actual knowledge that the ARC was not lawfully convened to review Plaintiffs' application, and allowed the ARC-NAG Enterprise to illegally preside over Plaintiffs' application, wherein unbeknownst to Plaintiffs, KELSON allowed CRABB to proceed with non-members of the ARC sitting on the Commission and to question DOLLINGER or otherwise issue comment during the non-public phase of the review process.

138. At all times material hereto, notwithstanding her lawful duty not to advocate or otherwise sponsor a public position one way or another, under the color of law, both after and during the public comment period of the application proceedings, KELSON, in furtherance of the ARC-NAG Enterprise, left the conference table holding

secret conversations with the GABOR and other named DOEs 1-10 and ROEs 1-10

Defendants who, as planned, appeared in the audience before the Commission

claiming to give public comment, wherein KELSON's returned to the conference table,

with comment-questions from GABOR- DOEs1-10 and ROEs 1-10 and thereafter

allowed questions to be presented to DOLLINGER concerning the civil action filed by

Plaintiffs-DOLLINGER against GABOR and others relating to the claims of criminal

wrongdoing [bribery] in obtaining the subject building permit for the City building

inspectors CUNNINGS.

\*   \*   \*

139.  At all times material hereto, thereafter, KELSON illegally met with

members of the ARC-NAG Enterprise, wherein Plaintiffs are informed and believe, it

was agreed that KELSON would use the Office of Corporation Counsel to further assist

the ARC-NAG Enterprise to reverse the policy-practice of the CITY's, CITY

Manager's and its Building Department  in issuing Plaintiffs and others building

permits under the CITY's retained powers and to force Plaintiffs to restoration the

buildings to its prior appearance.

140.  At all times material hereto, KELSON actually knew and was aware that

the Plaintiffs had stopped work and had spent in excess of Five Hundred Thousand

($500,000.00) on the project and that she was acting collectively to deny Plaintiffs their

vested property rights.

141. At all times material hereto, KELSON proceeded illegally in the name of CORPRATON COUNSEL and individually, and or in furtherance of the ARC-NAG Enterprise in violation of Plaintiffs 4th ; 5th and 14th Amendment rights, an abuse of process, an illegal taking and a denial of the equal protection of the law and Plaintiffs' civil rights.

*    *    *

142. At all times material hereto, Plaintiffs attempted to resolve the matter and attended at least three (3) ARC meetings and three (3) separate workshops at the request of McGRANE and the Building Department.

143. At all times material hereto, after his appearance before the ARC DOLLINGER approached McGRANE relative to her original consent to issue the permit and requested that she direct the ARC to issue their "Certificate of Appropriateness" as promised based on her authority as CITY Manager.

144. At all times material hereto, in or about March 2007, McGRANE met with DOLLINGER together with the CITY's CORPORATION COUNSEL, wherein it was agreed that if Plaintiffs simply submitted their plans to the ARC without comment the matter would be resolved.

*    *    *

145. At all time materiel hereto, McGRANE knew and was aware that her policy-practice of sidestepping the ARC had created problems for her among the

legitimate ARC members and ARC-NAG Enterprise members and had no intention of resolving the matter based on her policy-practice of having previously approved the project without ARC review and was desperate to force Plaintiffs to appear before the ARC.

146.  At all times material hereto, thereafter, notwithstanding her statements in front of the CITY's Chief Corporation Counsel and DOLLINGER, at their prior meeting that the plans were to simply be submitted to the ARC without comment, Plaintiffs representative was advised by McGRANE and KELSON, in furtherance of the ARC-NAG Enterprise that additional revisions to the plans were required before submission to the ARC could take place.

\*   \*   \*

147.  On or about April 29, 2007, DOLLINGER discovered that the members of the ARC who were to render a vote on Plaintiffs' application had failed or refused to take the oath or be sworn for service on the ARC unless GABOR were reappointed to the ARC.

148.  On or about April 30, 2007, notwithstanding their knowledge of the foregoing, Plaintiffs' once again submitted their plans to the ARC, but refused to attend the May 8, 2007 meeting.

\* \* \*

149. At all times material hereto, in retaliation for the failure to reappoint GABOR to the ARC; the anger and the embarrassment over the CITY's policy-practice of issuing building permits without prior ARC approval, on May 8, 2007, the ARC illegally, and without a lawful reason, voted 4-0 against issuing the Plaintiffs a Certificate of Appropriateness.

150. At all times material hereto, the denial of the permit by the ARC was without a lawful vote and was not based on criteria outlined in its charter or the law, but was instead a decision not to allow the Plaintiff's building to look better than City Hall and in retaliation for sidestepping the ARC and other political processes owing to McGRANE hostile relationship with the ARC-Enterprise.

151. At all time material hereto, the CITY and the ARC has issued certificates of appropriateness to property owners or otherwise exempted property owners from the need for said certificate for the same or similarly looking project including projects located opposite historic sites within the CITY.

152. At all times material hereto, the decision to take Plaintiffs' vested property interest was arbitrary and caprious and the result of invidious conduct and bad faith on the part of the CITY, the CITY policy maker McGRANE and their failure to stand by the CITY's policy-practice to allow the CITY's Building Inspector CUMMINGS to issue the building permit for 96 BROADWAY without prior ARC approval and was a

response to political and feigned community disapproval of the project.

153. At all times hereto mentioned, the action was an illegal taking of Plaintiff's property in violation of Plaintiffs 4th, 5th and 14th Amendment rights, an abuse of process in the equal protection of the law and a violation of Plaintiffs' civil rights.

\* \* \*

154. At all times material hereto, the CITY and its CORPORATON COUNSEL knew and was aware of the invidious conduct of McGRANE-CUMMINGS and that of the ARC-NAG Enterprise and authorized-directed the filing of a certain state court action in Orange County Supreme Court, State of New York demanding that Plaintiffs restore their building to its former appearance.

155. At all times material hereto, the act of suing Plaintiff to restore the building to its former appearance was and is a "signal" to the Community that GABOR's statements relating to Plaintiffs-96 BRAODWAY-DOLLINGER having paid a bribe to CUMMINGS for the building permit was true and that Plaintiffs had indeed done something criminally wrong in obtaining their building permit.

156. At all times material hereto, Plaintiffs-DOLLINGER have been humiliated by the intentional, criminal acts, invidious, willful, wanton, reckless, callous, grossly negligent, negligent and careless conduct of the CITY-CITY COUNSEL, McGRANE, CUMMINGS, the ARC, ARC-NAG Enterprise, CRABB, GABOR, KING,

KELSON, DOEs 1-10, ROEs 1-10 CORPORATION COUNSEL and have disregard the Plaintiffs Constitutional and civil rights because the CITY-CITY COUNCIL actually knew and was aware of the illegal-invidious conduct of McGRANE, CUMMINGS, the ARC, ARC-NAG Enterprise, CRABB, GABOR, KING, KELSON, DOEs 1-10, ROEs 1-10 CORPORATION COUNSEL and have failed to act or acted in support of their conduct in violation of their duty to act and to protect Plaintiffs legal rights.

157.   At all times hereto mentioned, the action was an attempt to illegally take Plaintiff's property in violation of Plaintiffs' 4th, 5th and 14th Amendment rights abuse of process and equal protection of the law and a violation of Plaintiffs' civil rights.

\*   \*   \*

158.   At all times material hereto, on or about June 27, 2007, DOLLINGER verified that the ARC members who had voted on Plaintiff's application had failed to take the oath to sit on the ARC as required under the law, including Defendant KING and other DOEs-1 and ROEs-1 Defendants and advised Counsel member ANGELO that this was just another indication that she, McGRANE, and the ARC-NAG Enterprise members were acting in bad faith towards 96 BROADWAY and attempting to force them to unlawfully appear before the ARC.

159.   At all times material hereto, ANGLEO suggested to speak with additional counsel members to see if "we could resolve the situation".

\* \* \*

160. At all times material hereto, DOLLINGER approached members of the CITY COUNCIL, ANGELO and BOWELS to address the problem related to McGRANE's original permission to issue the building permit based on Abt's architectural review and approval of the permit and her refusal to stand by her policy-practice and her determination to force Plaintiffs to appear before the ARC.

161. At all times material hereto, DOLLINGER, having been previously unaware was advised by ANGELO of the serious degree of animosity between McGRANE, the legitimate ARC members and ARC-NAG Enterprise members and McGRANE's fear of losing her job.

162. At all times material hereto, not until in or about June 2007, was DOLLINGER advised by the Counsel member ANGELO that McGRANE did not have a good relationship with the legitimate ARC members or the ARC-NAG Enterprise members and that in addition to her causing ARC members embarrassment animosity between them by sidestepping their authority and having CUMMINGS issue Plaintiffs their building permit, she, McGRANE was the political target of the ARC-NAG Enterprise members based on claimed misconduct involving allegations of dishonesty in her leaving the scene of a personal injury accident involving a CITY owned vehicle, her avoidance of criminal prosecution in that matter, and the CITY Counsel's decision to continue her employment despite the alleged claims of alcohol contribution to the

accident.

163. At all times material hereto, DOLLINGER met separately with Counsel members, wherein at least three (3) counsel members have agreed to override the authority of McGRANE, the ARC and CORPORATION COUNSEL and have affirmatively and positively advised Plaintiffs, or Plaintiffs have been advised that they will vote for approval of the project to by-pass the ARC and direct that a certificate of appropriateness be issued for the project.

164. At all times material hereto, McGRANE, the ARC-NAG Enterprise and CORPORATION COUNSEL in furtherance of their illegal activities have prohibited said CITY officials from lawfully delivering the votes to allow Plaintiffs to proceed with construction of the building.

165. At all time the action was an illegal taking of Plaintiff's property in violation of Plaintiffs' 4th, 5th and 14th Amendment rights abuse of process and equal protection of the law and Plaintiffs' civil rights.

\*    \*    \*

166. At all times material hereto, DOLLINGER was and is an attorney duly admitted to practice law in the State of New York maintaining offices in the City of Newburgh, Orange County, New York.

167. At all times material hereto, DOLLINGER was a member of the Orange County Assigned Counsel Program authorized to appear and represent indigent

defendants appearing in the City of Newburgh pursuant to Section 18-B of the New York State Judiciary Law.

168. At all times material hereto, DOLLINGER appeared personally and on behalf of the FIRM on an almost daily basis in the CITY Court and on behalf of assigned clients.

169. At all times material hereto, the civil action instituted by the CITY at the direction of McGRANE, CORPORATON COUNSEL and the ARC-NAG Enterprise members and was an act of bad faith, known by the CITY to be the same in light of the illegal conduct of McGRANE, CORPORATON COUNSEL, CUMMINGS and the ARC-NAG Enterprise in the revoking the building permit issued to Plaintiffs.

170. At all times material hereto, the civil action instituted by the CITY at the direction of McGRANE and CORPORATON COUNSEL and the ARC-NAG Enterprise members has humiliation, embarrassment anxiety and anger; has caused an appearance, and actual or potential conflict, wherein DOLLINGER and the FIRM can no longer represent clients in most matters before the Courts of the CITY in both 18-B and private matters.

\*    \*    \*

171. At all times material hereto, Plaintiff are informed and believe, that during the foregoing period, between June 13, 2006 and June 29, 2007 GABOR demanded that the CITY reappoint him to the ACR.

172. At all time material hereto, during the period of time between June 13, 2006 and June 29, 2007 the alleged ARC members voted on projects submitted to the ARC, including Plaintiffs' project, wherein the CITY and McGRANE knew and were aware that some members had refused or otherwise failed to take such oath unless GABOR was offered a position on a community board.

173. At all times material hereto notwithstanding the false newspaper and internet claims of bribery made by GABOR involving the CITY's Building Inspector CUMMINGS as allegedly made by Plaintiffs-DOLLINGER so as to obtain the building permit, and because GABOR could not sit on the ARC until Plaintiffs' application was officially resolved, the CITY, notwithstanding the actual case in controversy instituted in Orange County on by Defendants, on or about June 22, 2007, voted to appoint GABOR to the City of Newburgh's Arts and Cultural Commission.

174. At all times material hereto, on or about June 29, 2007, after the action was filed, McGRANE notified GABOR of his appointment to the City of Newburgh's Arts and Cultural Commission.

175. At all time material hereto, the act of appointing GABOR to the Arts Council was a "signal" to the Community that GABOR's statements relating to 96 BROADWAY having paid a bribe to CUMMINGS were true.

176. At all time material hereto, the act of appointing GABOR to the Arts Commission was intention and/or negligent, reckless or careless in response to the

political pressure of the ARC-NAG Enterprise and was intended to humiliate or otherwise cause emotional upset to Plaintiff-DOLLNGER.

\*   \*   \*

177.   At all times material hereto, Plaintiff are informed and believe, that in or about October 2006, CARCOLICI offered to purchase Plaintiffs' building.

178.   At all times material hereto, Plaintiff-DOLLINGER advised the CITY COUNCIL members and CORPORATION COUNSEL of CARCOLICI's offer.

179.   At all times material hereto, neither the CITY COUNCIL members and/or CORPORATION COUNSEL took action in favor of Plaintiff in relation to CARCOLICI's offer to purchase Plaintiffs building.

\*   \*   \*

180.   At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in or about May-June 2007 the owner(s) of the building located at 113 Liberty Street, Newburgh, Orange County New York were issued multiple fire and building code violations by the CITY.

181.   At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in furtherance of the ARC-NAG Enterprise in or about July 2007, CARCOLICI on behalf of the ARC-NAG Enterprise, obtain an appointment with Chief

Counsel for CORPRATION COUNSEL, wherein GABOR at the institution–instruction of CARCOLICI falsely accused DOLLINGER of having the new CITY building inspector Steve Hunter "in his back pocket" and that Hunter was taking "bribes" from DOLLINGER as did CUMMINGS.

182. At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in furtherance of the ARC-NAG Enterprise in or about July 2007, GABOR at the institution-instruction of CARCOLICI , although they knew otherwise and had actual knowledge otherwise, falsely stated to Chief Counsel, and accused DOLLINGER of having paid the new CITY building inspector Steve Hunter a bribe so as to falsely and illegally have the premises located at 113 Liberty Street, Newburgh, Orange County New York issued multiple fire and building code violations and condemned so as to cause the summary evection of the tenants living at 113 Liberty Street, Newburgh, Orange County, New York.

183. At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in furtherance of the ARC-NAG Enterprise in or about July 2007, GABOR at the institution-instruction of CARCOLICI, although they knew otherwise, and had actual knowledge of the same, falsely stated to Chief Counsel that the building was without violation and had recently passed inspection for its sale and that said condemnation was issued because DOLLINGER bribed Hunter so as to allow DOLLINGER to force the owners to sell DOLLINGER the building.

\* \* \*

184. At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in furtherance of the ARC-NAG Enterprise in or about July 2007, the ARC-NAG Enterprise published false accusations over the internet and at public meetings, wherein it was falsely alleged that the new CITY building inspector Steve Hunter was "in [DOLLINGER's] back pocket" and that Hunter was taking "bribes" from DOLLINGER.

185. At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in furtherance of the ARC-NAG Enterprise in or about July 2007, GABOR at the institution-instruction of CARCOLICI, although they knew otherwise and had actual knowledge otherwise, published false accusations over the internet and at public meetings falsely stated accused DOLLINGER of having paid the new CITY building inspector Steve Hunter a bribe so as to falsely and illegally have the premises located at 113 Liberty Street, Newburgh, Orange County New York issued multiple fire and building code violations and condemned so as to cause the summary evection of the tenants living at 113 Liberty Street, Newburgh, Orange County, New York.

186. At all times material hereto, Plaintiff-DOLLINGER is informed and believes, that in furtherance of the ARC-NAG Enterprise in or about July 2007, GABOR at the institution-instruction of CARCOLICI, GABOR, although they knew otherwise, and had actual knowledge of the same published false accusations over the

internet and at public meetings falsely advising that the building was without violation and had recently passed inspection for its sale and that said condemnation was issued because DOLLINGER bribed Hunter so as to allow DOLLINGER to force the owners to sell DOLLINGER the building, wherein the CITY knew the allegations to be false, but failed to take corrective action or otherwise inform the public that they knew the allegation to be false.

187.  At all times material hereto, the CARCOLICI and GABOR on behalf of the ARC-NAG Enterprise members were able to cast a cloud of suspicion over the Plaintiffs having them become the object of hatred, contempt, ridicule and obloquy because the ARC-NAG Enterprise falsely published claims over the internet alleging that Plaintiffs were criminals and had bribed the CITY building inspector CUMMINGS so as to illegally obtain their building permit, and bribed Hunter so as to force the owners of  113 Liberty Street, Newburgh, New York to sell the building to Plaintiff-Dollinger.

### COUNT I
**Plaintiffs' Request For Permanent Injunction Relief**

**[MUNICIPLE Defendants]**

188.  Plaintiffs, repeat, reiterate and reallege each and every allegation contained in paragraphs marked "1" through "187" inclusive, with the same force and affect as though they were more fully set forth herein at length.

189. Plaintiffs since June 2005, are now, and at all times material to this Complaint, have been, the lawful owners of the real property located at 96 Broadway, City of Newburgh, Orange County, New York.

190. Plaintiffs in January 2006, filed their application for a building permit, together with sealed-stamped plans attesting to the fact that they were drawn by a duly licensed Architect and Engineer, Eric Osborne and have paid all of the necessary fees to the CITY's MUNICIPLE-Defendant(s) Building Inspector's Office for issuance of the building permit for 96 Broadway, City of Newburgh, Orange County, New York.

191. On or about March 23, 2006, Plaintiffs were lawfully issued a building permit by the CITY MUNICIPLE-Defendant(s) and commenced restoration of the building.

192. Plaintiffs posses a lawfully issued building permit which has been illegally revoked by the CITY MUNICIPLE-Defendant(s) for political reasons and community activism wherein no lawful basis exist for the taking.

193. Since on or about May 2, 2006, and continuing to the present, the CITY-MUNICIPLE-Defendant(s) have and wrongfully and unlawfully taken or caused to be taken, the vested property from the Plaintiffs, their building permit for 96 Broadway, City of Newburgh, Orange County, New York.

194. Since on or about May 2, 2006, and at other times between that date and the present, Plaintiffs have demanded that CITY-MUNICIPLE-Defendant(s) refrain

from committing the above named acts in paragraphs 1-187, and requested that Plaintiffs be allowed to return to work but the CITY MUNICIPLE-Defendant(s) have refused and have threatened to continue such acts, and continues to act in violation of Plaintiffs Constitutional and civil rights.

195. Plaintiffs have spent in excess of Five Hundred Thousand ($500,000.00) Dollars in the purchase and restoration of the building, and Defendant knew as such.

196. As a result of defendant's acts, Plaintiffs has sustained/will sustain great and irreparable injury, in that Plaintiffs cannot be fully compensated in damages, and is without an adequate remedy at law because the exact amount of damage Plaintiffs will sustain will be difficult to determine, and because the acts are of a nature against Plaintiffs and the public wherein a continuing wrong exist if said acts are allowed to continue because said acts are a direct and intentional deprivation of Plaintiffs Constitutional and civil rights.

197. As a further result of defendant's acts, Plaintiff has sustained damage in the amount of Five Hundred Thousand ($500,000.00) Dollars.

198. If these acts are permitted to continue, Plaintiffs will be further damaged in an amount to be alleged when additional damages have been determined.

199. At all times material hereto, the CARCOLICI and GABOR on behalf of the ARC-NAG Enterprise members were able to cast a cloud of suspicion over the Plaintiffs having them become the object of hatred, contempt, ridicule and obloquy

because the ARC-NAG Enterprise falsely published claims over the internet alleging that Plaintiffs were criminals and had bribed the CITY building inspector CUMMINGS so as to illegally obtain their building permit.

   **WHEREFORE,** Plaintiff requests that this Court issue a permanent injunction prohibiting the CITY-MUNICIPLE-Defendant(s) from requiring Plaintiffs to change the existing building configuration as set forth in the seal-stamped and approved plans filed with the CITY-MUNICIPLE-Defendant(s); that the CITY-MUNICIPLE-Defendant(s) vacate the stop work orders as previously issued to Plaintiffs for the premises 96Broadway; that the CITY-MUNICIPLE-Defendant(s) restore the building permit previously issued to Plaintiffs for the premises 96 Broadway and otherwise refrain from other illegal conduct in the future.

## COUNT II

**Conspiracy To Interfere With Plaintiffs' Equal Protection and Due Process Right**

**[CITY-MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI, DOE's 1-10 and ROEs 1-10, Each Individually the ARC-NAG Enterprise Members Collectively and as MUNICPLE Defendant(s)**

   200. Plaintiffs, repeat, reiterate and reallege each and every allegation contained in paragraphs marked "1" through "199" inclusive, with the same force and effect as though they were more fully set forth herein at length.

201.  At all relevant times herein, Plaintiffs have a right to equal protection and under the due process under the federal and state constitutions not to be deprived of their constitutionally protected interest in their property.

202.  At all times relevant herein, the Defendants were state actors, or private persons, jointly engaged with state officials in the challenged action, and are acting "under color" of law for purposes of this action.

203.  The CITY allowed instituted a policy-practice and/or custom of allowing building permits to be issued without prior ARC approval and then for no legitimate legal reason after Plaintiffs had obtained a vested property interest in the building by investing in excess of Five Hundred Thousand ($500,000.00) Dollars in the restoration of their building the CITY unlawfully revoked said building permit and demanded that Plaintiffs restore the building to its prior appearance.

204.  The only explanation is that the CITY has discriminated against Plaintiffs because of the political pressures from the community as caused to be swayed by the illegal conduct the McGRANE, CUMMINGS and ARC-NAG Enterprise Defendants.

205.  By depriving the land owners-Plaintiffs of their rights to equal protection after issuing the building permit and after Plaintiffs had obtained a vested right in the permit and then without legal justification revoking said permit, Plaintiff were denied the due process rights because while at times the MUNICPAL Defendants affording others the right to by-pass the ARC, Plaintiffs were denied their vested rights,

notwithstanding their accrual expenses, wherein by said conduct the CITY MUNICPLE Defendant(s) insinuated itself into the conspiracy and metamorphosed the individual actors into State actors wherein they actually knew and allowed McGRANE, CUMMINGS, and the ARC-NAG Enterprise to continue the acts of illegal revocation by allowing McGRANE, CUMMINGS and CRABB on behalf of the ARC-NAG Enterprise to proceed to force Plaintiff to submit an application to the ARC, forcing Plaintiffs to appear before the ARC so as to have the ARC review their previously approved plans, while actually knowing that the ARC did not have the proper sworn or qualified members to review said plans and that the application would be rejected because of political and public pressure but did nothing to correct the illegal acts of McGRANE, CUMMINGS, CRABB and KELSON on behalf of the ARC-NAG Enterprise and/or CORPORATON COUNSEL.

206. Acting under the color of law, Defendants worked a denial of Plaintiffs' rights, privileges, or immunities secured by the United States Constitution or by Federal law and guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, and the New York State Constitution to wit, they sought and got court orders based on their misrepresentations.

207. As a result of Defendants' concerted unlawful and malicious conduct, Plaintiffs were both deprived of their rights to equal protection of all the laws and to due process of law, of their right to their property, and the due course of justice was

impeded, in violation of the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec. 1983.

208.   Plaintiffs were harmed, have incurred considerable legal debt which would not otherwise have been incurred, and has suffered the loss of use of their building, have been displaced form the community, lost confidence in and experience feelings of betrayal by the CITY of NEWBURGH and can no longer remain in the CITY or otherwise help rebuild the CITY and have suffered other damages.

**WHEREFORE,** Plaintiff demands judgment for the violation of his civil rights against all the defendants, the CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON,   KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and the ARC Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment the defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and as ARC-NAG Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT III

### Conspiracy To Interfere With Civil Rights In Violation Of 42 U.S.C. § 1985(1)&(3)

[CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, Each Individually The ARC-NAG Enterprise Members Collectively and as MUNICPLE Defendant(s)

209. Plaintiffs, repeat, reiterate and reallege each and every allegation contained in paragraphs marked "1" through "208" inclusive, with the same force and affect as though they were more fully set forth herein at length.

210. Plaintiffs are informed and believe that, each of the illegal incidents described in paragraphs "1-198", above, were planned and ordered within the State of New York by Defendants acting in their official capacity, individually or as a coconspirator and ARC-NAG Enterprise members.

211. Plaintiffs are informed and believe that, the purpose and intent of Defendants individual and collective tactics, in planning and organizing the aforementioned illegal taking of Plaintiffs' vested property interest was to illegally prevent the CITY-MUNICIPLE-Defendant(s) in their respective offices from effectively establishing-executing a policy-practice of by-passing the ARC for safety and/or economic reasons, and that in other words, these tactics were designed to intimidate, the CITY MANGER McGRANE, CUMMINGS and the CITY COUNCIL and COPRORATON COUNCIL from effectively administering governmental policy-

practice and custom and to cause injury to Plaintiffs in the taking of their property.

212. Plaintiffs are informed and believe that, so as to prevent the CITY-MUNICIPLE-Defendant(s) from performing their duties  at least two or more Defendants in this State conspired to prevent, by force, intimidation, and/or threat, the CITY-MUNICIPLE-Defendant(s) from holding their office, trust, or place of confidence under the a duly formed governmental body in the CITY, and/or obstructed the discharging of their duties thereof; and/or attempted to induce by like means said officers to fail to perform said office as required to be performed while engaged in the lawful conduct thereof,  and as such have molested Plaintiffs, interrupted, hindered, and/or impeded said officer in the discharge of their official duties to said Plaintiffs.

213. Plaintiffs are informed and believe that, Defendants agreed and conspired among themselves, and with others, to interrupted, hindered, and/or impeded disrupt, harass, intimidate, and otherwise harm Plaintiffs in the exercise of their Constitutional and civil rights and to prevent Plaintiffs from continuing to effectively exercise these rights by conspiring among themselves and with others to influence and utilize CITY-MUNICIPLE-Defendant(s) to actively interrupted, hindered, and/or impeded, disrupt, harass, intimidate, and otherwise harm Plaintiffs in the taking of their property and in the exercise of their Constitutional and civil rights and to prevent Plaintiffs from continuing to effectively exercise these rights.

214. Plaintiffs are informed and believe, that Defendants' aforementioned conspiracy to prevent Plaintiffs from effectively exercising these rights was predicated upon animus toward Plaintiffs because of the MUNICIPLE Defendant(s) establishment of their policy and practice of by-passing the ARC and their status as out of state investors not welcomed in the CITY of Newburgh.

215. Plaintiffs are citizen of the United States of America, and can legally invest and own property in an absentee status in all of the States and territories of the U.S.

216. Plaintiffs have been illegally prevented from effectively owning said property by intimidation, and other illegal conduct, perpetrated by Defendants in this action which as result of exercising Plaintiffs' rights, Plaintiffs were injured in their person and property by the means described in detail above.

217. As a result of Defendants' conspiracy to prevent Plaintiffs from exercising their rights of ownership, Plaintiffs, suffered substantial damages to their personal property costing in loss valuable time and substantial money damages, including the money spent over the past year to defend themselves against Defendants' false accusations of bribery and other cost.

218. As a result of Defendants' conspiracy to prevent Plaintiff-DOLLINGER from exercising his rights, Plaintiff-DOLLINGER has suffered substantial damages to his good reputation in the community-county because his character has been severely and unjustifiably maligned.

219.  As a result of Defendants' conspiracy to prevent Plaintiff-DOLLINGER from exercising his rights, Plaintiff- DOLLINGER has suffered substantial damages in the form of mental anguish and emotional distress.

**WHEREFORE,** Plaintiff demands judgment for the violation of his civil rights against all the defendants, the CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON,  KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and the ARC Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment the defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and as ARC-NAG Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT IV

### Fraud By Omission Or Nondisclosure

[CITY  MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON,   KING, CRACOLICI, DOE's 1-10 and ROEs 1-10, Each Individually The ARC-NAG Enterprise Members Collectively and as MUNICPLE Defendant(s)

220. Plaintiffs repeat and reallege and incorporate by reference the allegations in paragraphs "1" through "219" above with the same force and effect as if herein set forth.

221. The policy-practice and/or custom of issuing building permits without prior ARC approval is a valid exercise of the retained powers of local government officials and should not to be lightly disregarded, because investors-land owners must be able to rely on the governmental officials in their official capacities and must be able to rely on the policies-practices adopted by local officials without fear that the policy-practice or custom will fall victim to political or community pressure.

222. When a land owner pays the fees for, and receives a lawfully issued building permit, and undertakes the expenditure of construction the result is a trust between the parties.

223. When McGRANE exercised the MUNICIPAL Defendant(s) policy making powers and CUMMINGS instituted the practice of issuing the Plaintiffs a building permit for 96 Broadway, and then issued stop work orders based on political pressures and community outcry without KELSON disclosing to the ARC and/or the public that they were exercising their reserved governmental powers and were instead revoking the building permit or otherwise stopping the project due to the political and community pressures they knew the reasons given, that the permit was mistakenly issued, to be neither true nor accurate, and a misrepresentation, wherein they were attempting to defraud Plaintiffs and the public by nondisclosure.

224. By their intentional withholding of the truth and failure to be truthful about their policy and practice of by-passing the ARC and intentionally issuing Plaintiff their building permit the repeated misrepresentations of McGRANE, CUMMINGS and KELSON caused Plaintiffs expenses that were reasonably foreseeable as a possible result of the defendants intentional acts.

225. The Defendants are responsible not only for their outright untrue statements, but also for forcing Plaintiffs to appear before the ARC, especially when the had actual knowledge that the ARC was without the proper members to render a decision on Plaintiffs' appilication.

226. Plaintiffs were harmed and have been caused to incur considerable legal expenses in order answer the false claims and have been suffering from anxiety, a feeling of hopelessness, loss of trust, loss of confidence in and feelings of betrayal by the justice system, shock, and emotional scarring, all compensable as emotional distress, and other damages.

**WHEREFORE,** Plaintiff demands judgment for the violation of his civil rights against all the defendants, the CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and the ARC Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment the

defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and as ARC-NAG Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT V

### Common Law Conspiracy

**[CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI. DOE's 1-10 and ROEs 1-10, Each Individually The ARC-NAG Enterprise Members Collectively and as MUNICPLE Defendant(s)**

227.  Plaintiffs repeat and reallege and incorporate by reference the allegations in paragraphs "1" through "226" above with the same force and effect as if herein set forth.

228.  All the Defendants **(a)** had an illegal object to be accomplished; **(b)** had an agreement on the illegal object or illegal course of action, to wit, to deprive Plaintiffs of their right to the equal protection of the laws, specifically, the right to build and restore their own property; **(c)** performed one or more unlawful overt acts; and **(d)** caused Plaintiffs damages that were a direct result of those acts.

229.  In furtherance of their object, defendants did two or more overt acts against the plaintiffs. Those unlawful overt acts include, but are not limited to, the

facts outlined in paragraphs "1" through "226" above and amount to an illegal conspiracy under the law.

230. All Defendants are liable for their acts, because Plaintiffs suffered harm and damages, for the reasons stated above and as a direct result of those acts.

**WHEREFORE,** Plaintiff demands judgment for the violation of his civil rights against all the defendants, the CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and the ARC Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment the defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and as ARC-NAG Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT IV

### Negligent Infliction Of Emotional Distress

[CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI. DOE's 1-10 and ROEs 1-10, Each Individually The ARC-NAG Enterprise Members Collectively and as MUNICPLE Defendant(s)

231. Plaintiff-DOLLINGER repeats and realleges and incorporates by reference the allegations in paragraphs "1" through "229" above with the same force and effect as if herein set forth.

232. Defendants CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI, DOE's 1-10 and ROEs 1-10, each individually and the ARC Enterprise Members collectively and as CITY MUNICPLE Defendant(s) continually negligently inflicted emotional distress on the Plaintiff-DOLLINGER.

233. The CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI. DOE's 1-10 and ROEs 1-10, each individually and the ARC Enterprise Members collectively and as CITY MUNICPLE Defendant(s) had a continuing affirmative duty to perform their official and quasi-official duties in such a manner as not to inflict emotional distress on Plaintiff-DOLLINGER.

234. Defendants CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI, DOE's 1-10 and ROEs 1-10, each individually and the ARC Enterprise Members collectively and as CITY MUNICPLE Defendant(s) breached their duties to Plaintiff-DOLLINGER.

235. Plaintiff-DOLLINGER was by the appointment of GABOR to a post on the CITY Arts commission, wherein said act was grossly negligent, careless, reckless

and otherwise an act of bad faith inasmuch as the CITY had commenced a civil action against Plaintiffs-DOLLINGER wherein as a direct defense the CITY-McGRANE knew or should have known that a claim or defense would have involved GABOR and the allegations of bribery.

236. Plaintiff-DOLLINGER suffered not only physical symptomatologies but also, as a consequence of the physical injury, mentally by breach of duties in the administration of the law.

237. Plaintiff-DOLLINGER was, is, and, with a high degree of likelihood, will continue to be inflicted with emotional distress due to the negligence of set forth above in paragraphs "1" through "229".

238. As a result of Defendants negligent conduct, DOLLINGER has suffered and will continue to suffer physical symptomatologies, such as severe, continuous headaches and pains in his extremities, pain, anguish, severe emotional trauma, embarrassment, and humiliation.

**WHEREFORE**, Plaintiff demands judgment for the violation of his civil rights against all the defendants, the CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON,  KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and the ARC Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment the

defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and as ARC-NAG Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT VII

[CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, Each Individually The ARC-NAG Enterprise Members Collectively and as MUNICPLE Defendant(s)]

### Intentional Infliction Of Emotional Distress

239. Plaintiff repeats and realleges and incorporate by reference the allegations in paragraphs "1" through "238" above with the same force and effect as if herein set forth.

240. Defendants intentionally and deliberately inflicted emotional distress on DOLLINGER by interfering with his civil rights and conspiring against him, and publishing false accusation about him and thereby destroying his trust in the judicial system.

241. Plaintiff-DOLLINGER was deeply humiliated by the appointment of GABOR to a post on the CITY Arts commission, wherein said act was grossly negligent, careless, reckless and otherwise an act of bad faith inasmuch as the CITY

had commenced a civil action against Plaintiffs-DOLLINGER the CITY-McGRANE-CORPROATON COUNSEL-KELSON knew or should have known that a direct claim- or defense would have involved GABOR and the allegations of bribery related to CUMMINGS and the Plaintiffs receipt of the building permit.

242. Defendants' conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

243. The actions of the Defendants were the cause of DOLLINGER's distress.

244. DOLLINGER is a reasonable man.

245. The emotional distress sustained by DOLLINGER, was severe and of a nature that no reasonable man could be expected to endure.

246. As a result of the Defendants' extreme and outrageous conduct, DOLLINGER has suffered and with a high degree of likelihood, will continue to suffer mental pain and anguish, embarrassment, humiliation that he was so betrayed by the judicial system, and severe emotional trauma.

**WHEREFORE,** Plaintiff demands judgment for the violation of his civil rights against all the defendants, the CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and the ARC Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment the

defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and as ARC-NAG Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT VIII

### Abuse of Process

**[CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI, DOE's 1-10 and ROEs 1-10, Each Individually The ARC-NAG Enterprise Members Collectively and as MUNICPLE Defendant(s)**

247.  Plaintiff repeats and realleges and incorporate by reference the allegations in paragraphs "1" through "246" above with the same force and effect as if herein set forth.

248.  With respect to the events between January 2006 and continuing to date, wherein the CITY filed false stop work orders and demanded that Plaintiffs submit an application to the ARC after lawfully issuing Plaintiff their building permit for 96 Broadway, and of which the CITY filed a false civil complaint in the Orange County Supreme Court failing to disclose the truth of the circumstances by which said building permit was issued and demanding the Plaintiffs restore their building to its prior appearance, the filing of those false stop  work orders forced appearance before the

ARC, and that of the false the civil complaint was an effort to take Plaintiffs ownership interest in their property by claiming that when CUMMINGS issued Plaintiffs' their building permit he was mistaken.

249.  The intent and purpose of Defendants in planning, ordering, the filing of the complaint demanding that the building be restored to it former appearance was a taking of Plaintiffs' property and in response to political and community pressures.

250.  There was never any real legal basis upon which to substantiate the taking of Plaintiffs' vested property but it was the intent and purpose of Defendants in this action to use the legal process to appease political and community pressures by contriving the truth in the practice and policy of the CITY in issuing building permits without prior ARC approval and a that the claimed mistake was a fabrication, which could then be and was/is being exploited regardless of veracity.

251.  As a result of Defendants' illegal use of the legal process, Plaintiffs have suffered substantial financial damages, including the money he has spent over the past year to restore their building.

252.  As a result of Defendants' illegal use of the legal process, Plaintiffs-DOLLINGER have suffered substantial damages in their property and in particular DOLLINGER to his good reputation in the community because his character has been severely and unjustifiably maligned.

253.  As a result of Defendants' illegal use of the legal process, Plaintiff-

DOLLINGER and his FIRM's ability to practice law in the City of Newburgh and through Orange County, New York was unfairly and unjustifiably undermined.

254. As a result of Defendants' illegal use of the legal process, Plaintiff has suffered substantial damages in the loss of their property and in the form of mental anguish and emotional distress.

**WHEREFORE,** Plaintiff demands judgment for the violation of his civil rights against all the defendants, the CITY MUNICIPLE Defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and the ARC Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment the defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and as ARC-NAG Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for punitive damages in an amount to be determined by the jury, plus the costs of this action, including attorney's fees, and such other relief deemed to be just, fair, and appropriate.

## COUNT VIII

### Libel, Slander and Deformation

**CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, Each Individually The ARC-NAG Enterprise Members Collectively**

255. Plaintiff repeats and realleges and incorporate by reference the allegations in paragraphs "1" through "254" above with the same force and effect as if herein set forth.

256. By knowingly and falsely publishing their continuing manifesto and false messages over the internet as designed to discredit and otherwise illegally sway public opinion against Plaintiffs and so as to injure Plaintiffs' in their application before the ARC, and then again by repeating the same false allegations to the CITY's Chief CORPORATON COUNSEL and before the CITY COUNCIL meeting, each being non-privileged communications, or otherwise made at a public forum CRACOLICI and GABOR individually and/or on behalf of the ARC-NAG Enterprise members were able to cast a cloud of suspicion over the Plaintiffs having them become the object of hatred, contempt, ridicule and obloquy because they falsely published claims alleging that Plaintiffs were criminals and had bribed the CITY building inspectors so as to illegally obtain their building permit and/or otherwise receive favorable treatment.

257. As a result of the acts perpetrated as described above, Plaintiffs-DOLLINGER have suffered substantial financial damages, including the money spent over the past year to defend against Defendants' false accusation of bribery.

258. As a result of the acts perpetrated as described above, Plaintiffs-DOLLINGER-the FIRM have suffered and will suffer substantial monetary damages to their property and DOLLINGER to his good reputation in the community

because his character has been severely and unjustifiably maligned.

259.  As a result of the acts perpetrated by Defendant as described above, DOLLINGER has suffered from substantial mental anguish and emotional distress.

260.  There is absolutely no legal justification whatsoever for Defendants false publications, nor is there any justification for any of the other acts perpetrated by Defendants as described in detail, above.

261.  At all times material hereto, the CARCOLICI and GABOR on behalf of the ARC-NAG Enterprise members were able to cast a cloud of suspicion over the Plaintiffs having them become the object of hatred, contempt, ridicule and obloquy because the ARC-NAG Enterprise falsely published claims over the internet alleging that Plaintiffs were criminals and had bribed the CITY building inspector CUMMINGS so as to illegally obtain their building permit, and bribed Hunter so as to force the owners of 113 Liberty Street, Newburgh, New York to sell the building to Plaintiff-Dollinger.

**WHEREFORE,** Plaintiff demands judgment for the violation of his civil rights against all the defendants, CRABB, GABOR, KELSON, KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and the ARC Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and severally, for actual, general, special, compensatory damages in the amount of $5,000,000 and further demands judgment the defendant(s), McGRANE, CUMMINGS, CRABB, GABOR, KELSON,

KING, CRACOLICI DOE's 1-10 and ROEs 1-10, each individually and as ARC-NAG

Enterprise Members collectively and as CITY MUNICPLE Defendant(s) jointly and

severally, for punitive damages in an amount to be determined by the jury, plus the

costs of this action, including attorney's fees, and such other relief deemed to be just,

fair, and appropriate.

Dated: Newburgh, New York
      July 23, 2007
                      Yours, etc.,_____

                              DOUGLAS R. DOLLINGER, ESQ.(5922)
                              Pro Se Attorney for Plaintiff(s)
                              P.O. Box 1111
                              113 Liberty Street
                              City of Newburgh
                              Newburgh, New York 12550
                              Tele. (845) 562-9601