B. Redevelopment of preexisting vacant lots. The redevelopment of a lot for a single-family attached or semi-attached dwelling shall be permitted provided the following conditions are met:

   (1) The dwelling is proposed on a preexisting lot that was previously used and occupied by a row dwelling.

   (2) The proposed row dwelling adjoins another row dwelling.

   (3) The proposed row dwelling shall meet all applicable standards of the City of Newburgh fire and building code. Editor's Note: See Ch. 122, Building Construction, and Ch. 172, Fire Prevention.

   (4) Within a historic district or architectural design district, the facade of the row dwelling shall be substantially consistent with the adjoining structure to which it shall be attached. "Substantially consistent" shall be interpreted to include similar building sheathing and rhythm of windows and door openings.

C. Nothing in this section shall be construed to permit a single-family detached dwelling on a lot less than the minimum lot required for a single-family detached residence in the R-1 Zoning District.

## ARTICLE V Historic and Architectural Design Overlay Districts

### § 300-22. Purpose.

It is hereby a matter of public policy that the protection, enhancement and perpetuation of historic, architectural and cultural structures, buildings and properties is necessary to promote the economic, cultural, education, and general welfare of the public. Inasmuch as the identity of a people is founded on its past, and inasmuch as the City of Newburgh has many significant historic, architectural and cultural resources which constitute its heritage, this article is intended to:

A. Designate, protect and enhance the landmarks, historic districts and architectural districts which represent distinctive elements of the City of Newburgh's historic, architectural, and cultural heritage;

B. Foster civic pride in the accomplishments of the past;

C. Protect and enhance the City of Newburgh's attractiveness to visitors, thereby supporting and stimulating the local and regional economy; and

D. Ensure the harmonious, orderly, and efficient growth and development of the City of Newburgh.

### § 300-23. Architectural Review Commission.

A. Creation; membership. There is hereby created a Commission to be known as the "City of Newburgh Architectural Review Commission." The Review Commission shall consist of seven members to be appointed by the City Manager as follows: **[Amended 8-12-2002 by Ord. No. 17-2002]** Editor's Note: This ordinance also provided that the initial terms of the additional members appointed after the adoption of this ordinance shall be five years for the first such member appointed, and shall expire as of December 31, 2006, and four years for the second such member appointed, and shall expire as of December 31, 2005.

   (1) At least one shall be an historian; such member may be a nonresident of the City; **[Amended 6-9-2003 by Ord. No. 10-2003]**

   (2) At least three shall be residents of a historic district or architectural design district established within the City or residents of a designated individual landmark building;

   (3) At least one shall be an architect;

   (4) All should have demonstrated significant interest in and commitment to the field of historic preservation or architecture evidenced by involvement in a local historic preservation group, employment or volunteer activities in the field of historic preservation or architecture, and serious interest in the field; and

   (5) Except as provided above, all members shall be residents and shall have an interest in historic preservation and architectural development within the City of Newburgh.

B. Terms of office. Commission members shall serve a term of five years, with the exception of the initial terms of the members, one of which shall be one year, one of which shall be two years, one of which shall be three years, one of which shall be four years, and one of which shall be five years.

C. Chairman. The Chairman shall be appointed by the City Manager. If he shall not appoint a Chairman, than the Chairman shall be elected by and from among the members of the Commission.

D. Vacancies. Vacancies occurring other than by expiration of term shall be filled for the remainder of the unexpired term in the same manner as the original appointments.

E. Meetings. The Review Commission shall meet at least monthly, but meetings may be held at any time on the written request of any of the Commission members or on the call of the Chairman or the City Manager.

F. Quorum. A quorum for the transaction of business shall consist of four of the Commission's members, but not less than a majority of the full authorized membership may grant or deny a certificate of appropriateness or recommend the designation of a landmark, historic district or architectural design district. **[Amended 4-14-2003 by Ord. No. 3-2003]**

### § 300-24. Powers and duties of Review Commission.

A. The Review Commission shall exercise aesthetic judgment so as to maintain the character of historic and architectural design districts, or a landmark, and to prevent construction, reconstruction, alteration or demolition which would be out of harmony with the style, materials, colors, line and details of same.

B. The Review Commission shall act as an advisory board to review any application for variances and/or special use permits in the district not previously presented to it for approval and shall present its recommendations to both the Zoning Board of Appeals and the Planning Board of the City of Newburgh.

C. In addition to the aforementioned powers, the powers of the Commission shall include:

   (1) Employment of staff and professional consultants to the extent funds therefor are budgeted by the Council as necessary to carry out the duties of the Commission.

   (2) Promulgation of rules and regulations, which shall be subject to the approval of the City Manager, as necessary for the conduct of its business.

   (3) Adoption of criteria for the identification of significant historic, architectural, and cultural landmarks and for the delineation of historic districts.

   (4) Conduct of surveys of significant historic, architectural, and cultural landmarks and historic districts within the city.

   (5) Designation of a building, structure or property or a collection of buildings, structures or properties as a landmark, historic district or architectural design district, hereafter referred to as "designated properties."

   (6) Acceptance on behalf of the City government of the donation of facade easements and development rights, and the making of recommendations to the City government concerning the acquisition of facade easements or other interests in real property as necessary to carry out the purposes of this article.

   (7) Increasing public awareness of the value of historic, cultural, and architectural preservation by developing and participating in public education programs.

   (8) Making recommendations to City government concerning the utilization of state, federal or private funds to promote the preservation of designated properties within the city.

   (9) Recommending acquisition of designated property by the City government where its preservation is essential to the purposes of this article and where private preservation is not feasible.

   (10) Approval or disapproval of applications for certificates of appropriateness pursuant to this article as to designated properties pursuant to this article and as to all changes in exterior features or demolition of designated properties duly established by ordinance of the city.

### § 300-25. Designation of landmarks, historic districts or architectural design districts.

A. Landmark designation.

   (1) The Commission may recommend to the City Council the designation of a structure, building, or property as a landmark if it:

      (a) Possesses special character or historic or aesthetic interest or value as part of the cultural,

political, economic or social history of the City of Newburgh, Hudson River Valley, New York State or the United States;

    (b) Is identified with historic personages;

    (c) Embodies the distinguishing characteristics of an architectural style;

    (d) Is the work of a designer whose work has significantly influenced an age; or

    (e) Because of a unique location or singular physical attribute, represents an established and familiar visual feature of the neighborhood.

(2) Notice of a proposed designation shall be sent by regular mail to the owner of the property proposed for designation at the address on file for said property owner with the City Assessor, describing the property proposed and announcing a public hearing by the City Council to consider the designation. The proposal shall also be published at least once in all official newspapers of the City at least five days prior to the date of the public hearing. Once the City Council has issued notice of a proposed designation, no building permit shall be issued by the Building Inspector until the City Council has made its decision.

(3) The City Council shall hold a public hearing prior to designation of any landmark. The Commission, owners, and interested parties may present testimony or documentary evidence at the hearing which will become part of a record regarding the historic, architectural, or cultural importance of the proposed landmark. The record may also contain staff reports, public comments, or other evidence offered outside of the hearing.

(4) The City Council shall forward notice of each property designated as a landmark to the office of the Orange County Clerk for recordation.

(5) The location of each landmark designated henceforth shall be specified in detail and shall be filed, in writing, in the Building Inspector's office for public inspection.

B. Historic district or architectural design district.

  (1) The Commission may recommend to the Council the designation of a group of properties as a historic district or architectural design district if the proposed district:

    (a) Contains properties which meet one or more of the criteria for designation of a landmark; and

    (b) By reason of possessing such qualities, constitutes a distinct section of the city.

  (2) Designation of a historic district or architectural design district represents an amendment to this chapter and Zoning Map and shall be done in accordance with the procedures contained in § 300-9 of this chapter and in accordance with § 83 of the General City Law of the State of New York.

  (3) The location of each historic district or architectural design district designated henceforth shall be specified in detail and shall be filed, in writing, in the Building Inspector's office for public inspection.

  (4) The location of each historic district or architectural district shall be shown as an overlay district on the City of Newburgh Zoning Map.

  (5) The City Council shall forward notice of each designated historic district or architectural design district to the office of the Orange County Clerk for recordation.

### § 300-26. Certificate of appropriateness.

A. Certificate required. No person shall carry out any exterior alteration, restoration, reconstruction, demolition, new construction or moving of a landmark, nor shall any person make any material change in the appearance of such a property, its light fixtures, signs, sidewalks, fences, steps, paving or other exterior elements visible from a public street or alley which affect the appearance and cohesiveness of a district and its designated properties, without first obtaining a certificate of appropriateness.

B. In passing upon an application for a certificate of appropriateness, the Commission shall not consider changes to interior spaces, unless they are open to the public, or to architectural features that are not visible from a public place, public street or alley.

C. Decisionmaking. The Commission's decision shall be based upon the following principles:

  (1) Designated properties which contribute to the character of an historic district or architectural design district shall be retained, with their historic or architectural features altered as little as possible;

  (2) Any alteration of a designated property shall be compatible with its historic character, as well as with the surrounding district; and

  (3) New construction shall be compatible with the district in which it is located and with the design guidelines established for such district.

D. Principles of compatibility. The Commission shall consider the following factors:

  (1) The general design, character, and appropriateness to the property of the proposed alteration or new construction.

  (2) The scale of proposed alteration or new construction in relation to the property itself, surrounding properties, and the neighborhood.

  (3) Texture, materials, and color and their relation to similar features of other properties in the neighborhood.

  (4) Visual compatibility with surrounding properties, including proportion of the property's front facade, proportion and arrangement of windows and other openings within the facade, roof shape, and the rhythm of spacing of properties in streets, including setback.

  (5) The importance of historic, architectural or other features to the significance of the property.

  (6) The proposed action's consistency with design guidelines established for an historic or architectural design district.

E. Certificate of appropriateness procedure. Prior to the commencement of any work requiring a certificate of appropriateness the owner shall file an application for such a certificate with the Commission. The application shall contain:

  (1) Name, address, and telephone number of the applicant.

  (2) Location and photographs of the property and any structures located thereon.

  (3) Elevation drawings of proposed changes, if available.

  (4) Perspective drawings, including relationship to adjacent properties, if available.

  (5) Samples of color or materials to be used.

  (6) Where the proposal includes signs or lettering, a scale drawing showing the type of lettering to be used, all dimensions and colors, a description of materials to be used, method of illumination and a plan showing the sign's location on the property.

  (7) Any other information which the Commission may deem necessary in order to visualize the proposed work, including a representation of all phases of a proposed project.

  (8) Copies of any site plans or subdivision plans as may be required by ordinance of the city.

  (9) Copies of all SEQRA documents and proceedings.

F. No building permit shall be issued for such proposed work until a certificate of appropriateness has first been issued by the Commission. The certificate of appropriateness required by this section shall be in addition to and not in lieu of any building permit that may be required by any other ordinance of the City of Newburgh.

G. The Commission shall approve, deny, or approve the application for a certificate with modifications within 30 days from the closing of the public hearing, if any, and otherwise within 30 days from the receipt of the completed application. The Commission shall hold a public hearing on the application at which an opportunity will be provided for proponents and opponents of the application to present their views. Notice of such public hearing shall be published in the official newspaper of the City of Newburgh at least five days prior to said hearing, provided that a public hearing shall not be required for an application limited to approval of paint color or repair or maintenance of a building or structure or property that does not involve the alteration or removal of any exterior feature.

H. All decisions of the Commission shall be in writing. A copy shall be sent to the applicant by regular mail and a copy filed with the Building Inspector's office for public inspection. The Commission's decision shall state the reasons for denying or modifying any application.

### § 300-27. Hardship criteria.

A. An applicant whose certificate of appropriateness for a proposed demolition has been denied may apply for relief on the ground of hardship. In order to provide the existence of hardship, the applicant shall establish that:

(1) The property is incapable of earning a reasonable return, regardless of whether that return represents the most profitable return possible.

(2) The property cannot be adapted for any other use, whether by the current owner or by a purchaser, which would result in a reasonable return.

(3) Efforts to find a purchaser interested in acquiring the property and preserving it have failed.

B. An applicant whose certificate of appropriateness for a proposed alteration has been denied may apply for relief on the ground of hardship. In order to prove the existence of hardship, the applicant shall establish that the property is incapable of earning a reasonable return, regardless of whether that return represents the most profitable return possible.

C. Hardship application procedure. After receiving written notification from the Commission of the denial of a certificate of appropriateness, an applicant may commence the hardship process. No building permit or demolition permit shall be issued unless the Commission makes a finding that a hardship exists.

D. Public hearing. The Commission shall hold a public hearing on the hardship application at which an opportunity will be provided for proponents and opponents of the application to present their views. Notices of such public hearing shall be published in the official newspaper of the City at least five days prior to said hearing.

E. Alternatives analysis. The applicant shall consult in good faith with the Commission, local preservation groups and interested parties in a diligent effort to seek an alternative that will result in preservation of the property.

F. Decisions and filing. All decisions of the Commission shall be in writing. A copy shall be sent to the applicant by regular mail and a copy filed with the Building Inspector's office for public inspection. The Commission's decision shall state the reasons for granting or denying the hardship application.

### § 300-28. Administration and enforcement.

A. Enforcement. All work performed pursuant to a certificate of appropriateness issued under this article shall conform to any requirements included therein. It shall be the duty of the Building Inspector to inspect periodically any such work to assure compliance. In the event work is found that is not being performed in accordance with a certificate of appropriateness, the Building Inspector shall issue a stop-work order and all work shall immediately cease. No further work shall be undertaken on the project as long as a stop-work order is in effect.

B. Maintenance required. Nothing in this article shall be construed to prevent the ordinary maintenance and repair of any exterior architectural feature of a landmark or property within a historic district which does not involve a change in the design, material, color, or outward appearance. No owner or person with an interest in a designated property shall permit the property to fall into a serious state of disrepair so as to result in the deterioration of any exterior architectural or historic feature which would, in the judgment of the Commission, produce a detrimental effect upon the character of a historic or architectural district as a whole or the life and character of a landmark. Examples of such deterioration include:

(1) Deterioration of exterior walls or other vertical supports;

(2) Deterioration of roofs and other horizontal members;

(3) Deterioration of exterior chimneys;

(4) Deterioration or crumbling of exterior stucco or mortar;

(5) Ineffective waterproofing of exterior walls, roofs, or foundations, including broken windows or doors; and

(6) Deterioration of any features so as to create a hazardous condition which could lead to a claim that demolition is necessary for the public safety.

C. Violations.

(1) Failure to comply with any of the provisions of this article shall be deemed a violation, and upon conviction the violator shall be liable to a fine of not less than $250 or 15 days in jail or both for each day the violation continues.

(2) Any person who demolishes, alters, constructs or permits a designated property to fall into a serious state of disrepair in violation of this article shall be required to restore the property and its site to its appearance prior to the violation. An action to enforce this subsection may be brought by the City in any court of competent jurisdiction. This civil remedy shall be in addition to and not in lieu of any criminal prosecution and penalty.

D. Appeals. Any person aggrieved by a decision of the Commission relating to hardship or a certificate of appropriateness may, within 30 days of the decision, file a notice of petition pursuant to Article 78 of the Civil Practice Law and Rules to the Supreme Court.

### § 300-29. Designation of districts and standards.

A. Design guidelines. The City Council, by resolution, may adopt design guidelines for any historic or architectural design district. Said design guidelines shall be drafted with the input and participation of the Review Commission and owners of property located within the district. A public hearing shall be held prior to the adoption of design guidelines, and notice of said public hearing shall be in accordance with § 300-25A(2).

B. The Review Commission, in its deliberations, shall be guided by design guidelines that have duly been adopted by the City Council in any review authorized herein.

C. Historic District: East End.

(1) Features regulated. These standards shall apply to all buildings, structures, outbuildings, walls, fences, steps, topographical features, earthworks, paving, sidewalks and signs within the Historic District. No changes in any exterior architectural feature, including but not limited to construction, reconstruction, alteration, restoration, removal, demolition, or painting, shall be made in such district except as hereinafter provided.

(2) Materials. All improvements must present a finished appearance similar to that given by the building materials commonly employed in the appropriate historic period or common to the style and period of the designated property. These materials are generally of three types: wood, stone or brick. No larger areas of polished metal, glass or aluminum siding will be allowed.

(3) Site design. In determining building setback for new construction, the Commission may require new buildings to be set behind existing building lines to give emphasis to existing structures of historic or aesthetic merit or to allow for suitable landscaping. However, no setback may be required which is greater than that required in the district.

(4) Landscaping and paving. Landscaping is deemed an important element of site development and may be required by the Commission as an integral part thereof.

(a) Evergreen materials may be required for screening functions.

(b) Bluestone and slate laid in concrete are the only materials allowed for sidewalks. Curbs may only be constructed of slate or granite in an adequate foundation.

(c) Maintenance of plant material shall be the responsibility of the owner, including the responsibility to keep growth trimmed and trained to meet the Commission's requirement.

(5) Parking. Parking areas shall be partially screened from public view with appropriate walls, fences or landscaping. The area allotted for the planting around parking lots shall be at least 5% of the amount allotted to the parking surface.

D. Architectural Design District: Colonial Terraces. The Review Commission, in its deliberations, shall be guided by the "Colonial Terraces Design Guidelines" duly adopted by the City Council by Ordinance 3-2005 dated 6-20-2005.

E. Architectural Design District: Hudson Waterfront. The Review Commission, in its deliberations, shall be guided by the "Hudson Waterfront Design Guidelines" duly adopted by the City Council by Ordinance ____ dated _____.

## ARTICLE VI View Preservation Overlay District

### § 300-30. Purpose and intent.

A. It is hereby declared as a matter of public policy that the protection, enhancement and perpetuation of scenic public views is a public necessity and is required in the interest of the general health, safety and welfare of the people. The purpose of this article is to effect and accomplish the protection, enhancement and perpetuation of the city's scenic resources and aesthetic and cultural heritage as embodied in the landscape and geologic features of the city.

B. It is declared to be the intent of the City of Newburgh to protect and preserve the scenic resources of the city, to ensure that the benefits provided by the Hudson River views will not be lost for present and future generations and to protect the broader public interest.

C. These regulations are enacted with the intent of providing an equitable balance between the rights of the individual property owner to the free use of property and the rights of present and future generations. Therefore, this article recognizes the rights of the owners of property within view preservation districts to use their property for allowed uses consistent with these and other regulations and controls, provided such use does not result in a significant loss or impairment to the scenic resources of the city.

### § 300-31. Identification and designation.

A. A View Preservation District has been created to preserve and protect views, hereinafter more specifically described, of the Hudson River, Hudson Highlands and East Bank of the Hudson River from certain existing streets, parks and legally accessible public property.

B. The following view planes within the View Preservation District shall be protected, and all construction or development within the defined view planes shall be subject to the review and approval of the Architectural Review Commission in those areas within the city's Historic District or to the review and approval of the Planning Board in those areas not within the city's Historic District.

  (1) Grand and Washington Streets.
    (a) View reference line. The view reference line for V-A is a line at an elevation of 100 feet, located along a line extending from the eastern boundary of the Grand Street right-of-way from the northern boundary of the Washington Street right-of-way to the southern boundary of said right-of-way.
    (b) View framing line. The view framing line for V-A is a line along the corporate boundary of the City centered on the Hudson River from the point of intersection with a line extending from the view reference line 8° north of the northern right-of-way of Washington Street to the point of intersection with a line extending from the view reference line 6° south of the southern right-of-way of Washington Street.
    (c) View plane. The view plane for V-A is an imaginary plane formed by joining the elevation of the view reference line with the elevation of the view framing line.
    (d) Description of scenic view. A wall of trees is on the left. Another wall consisting of trees, the Washington's Headquarters fence and monument is on the right. Washington Street, its sidewalk and the grass strip separating them form three parallel lines that sweep down to the river, a glimpse of which is seen in the background, along the mountain on the eastern bank. Thus, the natural properties of the enclosure provide a welcome visual contrast to the built environment of the central business district.

  (2) Washington's Headquarters.
    (a) View reference line. The view reference line for V-B is a line at an elevation of 100 feet located along the eastern edge of the monument of Washington's Headquarters.