UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
96 BROADWAY LLC, its members, DOUGLAS
DOLLINGER MICHAEL MOLUS and CAROL
MOLUS, DOUGLAS R. DOLLINGER, and the
LAW OFFICES OF DOUGLAS R. DOLLINGER,
individually and others so similarly situated,

                                         07 Civ. 6689 (SCR)
                                         ECF Case

                      Plaintiffs,

            -vs-

THE CITY OF NEWBURGH, et al.,

                    Defendants.
-----------------------------------------------------------X

**DEFENDANT MICHAEL GABOR'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

STEPHEN BERGSTEIN (6810)

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for defendant Michael Gabor

# <u>TABLE OF CONTENTS</u>

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT: THE COMPLAINT DOES NOT STATE ANY COGNIZABLE CLAIMS . . . . . 5

POINT I:      THIS CASE IS A SLAPP SUIT IN VIOLATION OF NEW YORK LAW . . . . . 7

POINT II:     GABOR DID NOT ACT UNDER COLOR OF LAW . . . . . . . . . . . . . . . . . . . . 9

POINT III:    ASSUMING GABOR WAS A STATE ACTOR, THE CAUSAL CHAIN
              WAS BROKEN WHEN THE CITY LIFTED THE STOP-WORK ORDER . . . 13

POINT IV:     THE STATE LAW CLAIMS SHOULD BE DISMISSED . . . . . . . . . . . . . . . . 14

      A.  Any defamation from June 2006 public comments is not actionable . . . . . . . . . . . 15

      B.  The remaining defamation claims have no merit . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## **TABLE OF AUTHORITIES**

Auster Oil & Gas, Inc. v. Stream, 764 F.2d 381 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 11

Bell Atlantic v. Twombly, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

Boddie v. Schnieder, 105 F.3d 857 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

City of Saratoga Springs v. ZBA, 279 A.D.2d 756 (3d Dept. 2001) . . . . . . . . . . . . . . . . . . . . 7

Conley v. Gibson, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

Culebras Enterprises Corp. v. Rios, 813 F.2d 506 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 10

Daniel v. Ferguson, 839 F.2d 1124 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Dennis v. Sparks, 449 U.S. 24 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83 (2d Cir. 2002) . . 9-10

Durre v. Dempsey, 869 F.2d 543 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Dutton v. Buckingham Twp., 1997 U.S. Dist. LEXIS 18068 (E.D. Pa. 1997) . . . . . . . . . . . . . 10

Friends of Rockland Shelter v. Mullen, 313 F. Supp. 2d 339 (S.D.N.Y. 2004) . . . . . . . . . . . . . 8

Ginsberg v. Healey Car & Truck Leasing, 189 F.3d 268 (2d Cir. 1999) . . . . . . . . . . . . . . . . . 9

Glaros v. Perse, 628 F.2d 679 (1st Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Gordon v. Marrone, 155 Misc.2d 726 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Greenbelt Publishing v. Bresler, 398 U.S. 6 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Guerrero v. Carva, 10 A.D.2d 105 (1st Dept. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13, 14, 17

Gross v. New York Times, 82 N.Y.2d 146 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Harfenes v. Sea Gate Association, 167 Misc.2d 647 (1995) . . . . . . . . . . . . . . . . . 7, 8, 13, 14, 17

Higazy v. Templeton, 2007 U.S. App. LEXIS 24443 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 13

Immuno AG v. Moor-Jankowski, 77 N.Y.2d 235 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Kelly v. Schmidberger, 806 F.2d 44 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Matter of Related Properties v. Town Board, 22 A.D.2d 587 (2d Dept. 2005) . . . . . . . . . . . . . . 9

Morrison v. National Broadcasting Co., 19 N.Y.2d 453 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . 15

Powell v. Workmen's Compensation Board, 327 F.2d 131 (2d Cir. 1964) . . . . . . . . . . . . . . . . 11

Scott v. Greenville County, 716 F.2d 1409 (4th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Shapiro v. City of Glen Cove, 2005 U.S. Dist. LEXIS 43276 (E.D.N.Y. 2005) . . . . . . . . . . . . 11

Serbalik v. Gray, 27 F. Supp. 2d 127 (N.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204 (7th Cir. 1980) . . . . . . . . . . . . . . . . . 11

Townes v. City of New York, 176 F.3d 138 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

United Mine Workers v. Illinois State Bar Ass'n., 389 U.S. 217 (1967) . . . . . . . . . . . . . . . . . . 10

Warner v. Orange County Dep't of Prob., 115 F.3d 1068 (2d Cir. 1996) . . . . . . . . . . . . . . . . . 13

West v. Atkins, 487 U.S. 42 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Yeshiva Chofetz v. Village of New Hempstead, 98 F. Supp. 2d 347 (S.D.N.Y. 2000) . . . . . . . . 8

600 W. 115th St.  v. Von Gutfeld, 80 N.Y.2d 130 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16-17

## INTRODUCTION

Defendant Michael Gabor respectfully submits this memorandum of law in support of his motion to dismiss the Complaint under Rule 12(b)(6). Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and State law claiming that public and private defendants conspired to violate their civil rights as property owners in the City of Newburgh. Although the Complaint asserts a wide-ranging conspiracy, close analysis confirms that it states no claim upon which relief may be granted. This Honorable Court should dismiss the Complaint against Gabor.

## STATEMENT OF FACTS

Paring down the 81-page Complaint to its essentials, plaintiffs make the following allegations against defendant Michael Gabor. The Complaint does not allege that Gabor was a member of City government at any relevant time. Rather, it alleges that Gabor was a "concealed-clandestine" member of the Architectural Review Commission (ARC) and also a "co-conspirator of an illegal Enterprise, which has conspired with the City policy makers and other defendants herein to" violate plaintiffs' constitutional rights. (Complaint ¶ 28).

In June 2005, plaintiffs purchased 96 Broadway, an historic building in City of Newburgh. Id. at ¶ 32. Intending to renovate this building, plaintiffs sought a building permit in January 2006. Id. at ¶¶ 47, 50. The Building Inspector told plaintiff Douglas Dollinger that the ARC had to review the permit application. Id. at ¶ 55. The permit was issued in February 2006 to repair the roof. Id. at ¶ 63. Approximately six weeks later, the City issued another permit for the remaining work, including historic restoration. Id. at ¶ 67.

The ARC is an advisory commission authorized to issue a Certificate of Appropriateness for building alterations and restoration projects. Id. at ¶ 68. In her discretion, the City Manager may by-pass the ARC or veto its decisions. Id. at ¶ 70. Gabor was a member of the ARC through

January 2006 (id. at ¶ 74), approximately the same time that plaintiffs sought their building permit from the City. Id. at ¶ 50. The Complaint notes that Gabor was not a member of the ARC at any time relevant to this case. See, e.g., id. at ¶ 171 ("at all times material hereto, Plaintiff are [sic] informed and believe, that during the foregoing period, between June 13, 2006 and June 29, 2007, Gabor demanded that the City reappoint him to the ARC").

Although the City Council declined to re-appoint Gabor and others to the ARC (id. at ¶ 74), these individuals – described as members of a conspiratorial "Enterprise" – "met subversively in person, and over the internet, for the purpose of conspiring to force [City Manager] McGrane to revoke the building permit" for 96 Broadway and force plaintiffs to appear before the ARC. Id. at ¶ 77. The plan to scuttle plaintiffs' renovation plans began in February 2006. Id. at ¶ 78.

Plaintiffs allege that Gabor secretly accomplished the illegal goals of the Enterprise by agreeing with municipal officials to (1) file a false complaint with the Building Department and (2) disseminate false information to the public in order to "illegally sway public opinion" and "force" the City Manager to "crush" the project. Id. at ¶ 79. The false complaint (1) alleged that plaintiffs worked on the building without a permit or ARC approval and (2) demanded that the City issue a stop-work order on the project. Id. at ¶¶ 80-81.

On May 2, 2006, for pretextual reasons, the City issued the stop-work order "to appease the political and public pressure being asserted by" Gabor and other members of the Enterprise. Id. at ¶¶ 86-87. According to plaintiffs, the City revoked the permit "due entirely to political and public pressure." Id. at ¶ 88. While the Complaint is not clear on this point, plaintiffs appear to allege that this public pressure prompted the City to issue a bogus subsequent stop-work order at an unspecified time. Id. at ¶¶ 92-93.

The building inspector, William Cummings, lifted the stop-work orders on May 8, 2006. Id. at ¶ 99. However, less than a month later, Cummings told Dollinger that the City was again facing community pressure by the Enterprise to "shut the job down" and that Dollinger should submit an application to the ARC "at least for show" which the ARC would "rubber stamp." Id. at ¶¶ 102-04. At this time, Cummings told Dollinger that things were under control and that "the problem related to the 'politics' and community pressure" from the Enterprise which protested the City's use of an outside consultant in reviewing the project. Id. at ¶ 106.

Meanwhile, according to the Complaint, on June 3, 2006, the local newspaper quoted Gabor's assertion that the permit process for 96 Broadway "is very, very wrong. And, it is so secretive. We have people talking about there must be favoritism or payoffs. That's how shady it is." Id. at ¶ 108. Three days later, again caving in to pressure from the Enterprise, City officials again issued a stop-work order on the project for pretextual reasons. Id. at ¶¶ 110-12. Plaintiffs allege that "the stop work order has nothing to do with public safety, but was issued due entirely to political and public pressure falsely and viciously created by the ARC-NAG Enterprise members so as to illegally sway public opinion on the project." Id. at ¶ 112.

The Complaint further alleges that, commencing in June 2006, members of the Enterprise continued to influence public opinion and discredit plaintiffs by publishing libelous statements on an Internet message board. Id. at ¶¶ 119-122. The Complaint quotes extensively from these messages, which mix juvenile and profane name-calling with condemnations of Dollinger.[1]

---

[1] While the Complaint alleges that the messages also advocate taking over the government "by any means necessary," the context of this message confirms that it bore no relationship to plaintiff's building project as the message pre-dates the purchase of 96 Broadway by two years. Nor does the message advocate insurrection. Rather, it represents an exhortation to join municipal boards and attend council meetings for the purpose of influencing City policy.

On June 13, 2006, Dollinger appeared before the ARC on behalf of 96 Broadway. Id. at ¶ 124. Focusing on the bribery allegations, ARC members had pre-determined to deny plaintiffs any permit. Id. at ¶ 128. Accordingly, "in league with the other co-conspirators," ARC Chairwoman Crabb denied the application without cause. Id. at ¶ 134. During this meeting, the Corporation Counsel's office improperly conferred with members of the Enterprise without plaintiffs' knowledge. Id. at ¶ 137.

Plaintiffs allege that the City's lawyer "allowed the ARC-NAG Enterprise to illegally preside over Plaintiff's application." Id. at ¶ 137. This cannot mean that members of the public, such as Gabor, sat in place of duly authorized members of the ARC. In context, this allegation can only mean that City officials conferred with members of the public during the meeting. This is so because plaintiffs allege that these conferences took place without plaintiffs' knowledge. Id. See also, id. at ¶¶ 138-39 (alleging that the City's lawyer asked questions which Gabor and other Enterprise members gave to her and that she conspired to do the Enterprise's bidding). Moreover, the Complaint alleges that Dollinger discovered that ARC members were never properly sworn in. Id. at ¶¶ 158, 205, 225. To the extent plaintiffs claim that non ARC members met in private to make decisions on the ARC's behalf, they also allege that Dollinger was present at this time and that the ARC asked him questions. Id. at ¶¶ 137-38. Fairly read, plaintiffs are claiming that the Enterprise and other members of the public influenced the ARC in the course of petitioning the government, not that the Enterprise actually served as ARC members.

The next chain of events took place in Spring 2007. In March 2007, the City Manager told Dollinger that re-submitting his application to the ARC would resolve the matter. Id. at ¶ 144.

---

(Complaint at ¶ 121 [October 29, 2003 entry]).

4

However, "in furtherance of the ARC-NAG Enterprise," City officials told Dollinger that "additional revisions to the plans were required before submission to the ARC could take place." Id. at ¶ 146. In the end, the ARC unlawfully and for pretextual reasons rejected Dollinger's application in protest over the City's refusal to re-appoint Gabor to this commission. Id. at ¶¶ 149-51. This denial "was a response to political and feigned community disapproval of the project." Id. at ¶ 152.

Finally, the Complaint alleges that another building in the City, 113 Liberty Street, received multiple fire and building code violations in May-June 2007. Id. at ¶ 180. According to plaintiffs, prompted by a member of the City Council, Gabor falsely told the City's lawyer that Dollinger had bribed the building inspector to improperly issue those violations. The bribery allegation was also published on the Internet and at public meetings. Id. at ¶ 184. Plaintiffs allege that this false assertion of bribery resulted in the forced sale of that building to Dollinger. Id. at ¶¶ 180-87.

Other allegations about Gabor do not predicate plaintiffs' claims for relief against him. Plaintiffs allege that members of the ARC were derelict in their responsibilities in protest over Gabor's non-appointment to the ARC. Id. at ¶ 172. The Complaint further alleges that the City appointed Gabor to the Arts and Cultural Commission in June 2007, a tacit endorsement of Gabor's allegedly libelous public comments about plaintiff a year earlier. Id. at ¶¶ 172-75.

## ARGUMENT

### THE COMPLAINT FAILS TO STATE ANY COGNIZABLE CLAIMS

In Bell Atlantic v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court clarified the pleading standards governing Rule 12(b)(6). While recognizing Conley v. Gibson's age-old counsel that a complaint cannot be dismissed "unless it appears beyond doubt that the plaintiff can prove no

set of facts in support of his claim which would entitle him to relief," 355 U.S. 41, 45-46 (1957),

Bell Atlantic concluded that "Conley's 'no set of facts' language has been questioned, criticized, and

explained away long enough."  127 S.Ct. at 1969.

Instead, "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do.  Factual allegations must be enough to raise a right to relief above the

speculative level,' on the assumption that all the allegations in the complaint are true (even if

doubtful in fact)."  Id. at 1964-65 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure

§ 1216, at 235-36 (3d ed. 2004) ("The pleading must contain something more . . . than . . . a

statement of facts that merely creates a suspicion [of] a legally cognizable right of action").

Twombly applies in the context of civil rights conspiracy claims.  In Iqbal v. Hasty, 490

F.3d 143, 177 (2d Cir. 2007), the Court of Appeals noted that the "bare allegation of conspiracy

supported only by an allegation of conduct that is readily explained as individual action" is not

enough to survive a motion to dismiss.  That standard applies here.  The Complaint does not state

a cause of action against Gabor who was not a public official at any time relevant to this case and

merely exercised his First Amendment right to petition the government in opposing plaintiffs'

development project.

The Complaint does not, and cannot, allege that Gabor was a public official during the

pendency of plaintiff's ARC permit application.  Indeed, one theme running through the Complaint

is that the community pressured the City to reject plaintiffs' project in protest over Gabor's non-

appointment to the ARC.  Instead, plaintiffs sue Gabor under 42 U.S.C. § 1983 on the basis of his

6

public advocacy in opposition to plaintiffs' permit application to renovate 96 Broadway. As this non-state actor could not make any official decisions on plaintiffs' application, and his advocacy cannot as a matter of law be responsible for the City's adverse determinations, this case should be dismissed as to Gabor, particularly in light of the heightened pleading requirements under New York's law prohibiting strategic lawsuits against public participation (SLAPP).

**POINT I**

**THIS CASE IS A SLAPP SUIT IN VIOLATION OF NEW YORK LAW**

In an effort to prevent developers from intimidating citizen-activists from speaking out "against proposed land use development and other activities requiring approval of public boards," the State legislature in 1992 enacted the anti-SLAPP law to prohibit strategic lawsuits against public participation. 600 W. 115th St. v. Von Gutfeld, 80 N.Y.2d 130, 138, n.1 (1992).

"The ripple effect of [SLAPP] suits in our society is enormous. Persons who have been outspoken on issues of public importance targeted in such suits or who have witnessed such suits will often choose in the future to stay silent. Short of a gun to the head, a greater threat to First Amendment expression can scarcely be imagined." Gordon v. Marrone, 155 Misc.2d 726, 736 (1992). Accordingly, "Civil Rights Law §§ 70-a and 76-a were enacted to protect citizen activists from law suits brought against them in retaliation for their public advocacy." City of Saratoga Springs v. ZBA, 279 A.D.2d 756, 759 (3d Dept. 2001).

SLAPP suits should be dismissed "unless the plaintiff can demonstrate that 'the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law.'" Harfenes v. Sea Gate Association, 167 Misc.2d 647, 651 (1995) (citing CPLR §§ 3211(g)) and 3212 (h)). In requiring plaintiffs to present a "substantial"

7

case, the law increases their burden in avoiding dismissal. "A finding that an action is a SLAPP suit entails serious consequences to the plaintiff: a heightened standard of proof is imposed upon the plaintiff to avoid dismissal of the action." Guerrero v. Carva, 10 A.D.3d 105, 116 (1st Dept. 2004) (citing CPLR 3212(h)). "Prior to adoption of the new legislation, plaintiffs in actions involving public participation needed only demonstrate a reasonable basis in law to defeat a motion to dismiss or summary judgment." Harfenes, 167 Misc.2d at 651.[2] See also, Yeshiva Chofetz Chaim Radin, Inc. v. Village of New Hempstead, 98 F. Supp. 2d 347, 359 (S.D.N.Y. 2000) (the SLAPP law "set higher standards of proof for the plaintiffs to meet in actions in which the truth or falsity of defendants' communications was material, and amended New York's Civil Procedure Law & Rules to make it easier for defendants in SLAPP suits to win motions to dismiss or for summary judgment under CPLR Rules 3211 and 3212").

CRL § 76-a (1)(a) defines "[a]n action involving public petition and participation" as "an action, claim, cross claim or counterclaim for damages that is brought by a public applicant or permittee, and is materially related to any efforts of the defendant to report on, comment on, rule on, challenge or oppose such application or permission."

A "public applicant or permittee" is "any person who has applied for or obtained a permit, zoning change, lease, license, certificate or other entitlement for use or permission to act from any government body, or any person with an interest, connection or affiliation with such person that is materially related to such application or permission." CRL § 76-a (1)(b).

The SLAPP law does not simply prohibit retaliatory defamation claims. It prohibits any

---

[2] The SLAPP law has equal force in Federal court. See, e.g., Friends of Rockland Shelter Animals, Inc. v. Mullen, 313 F. Supp. 2d 339, 344 (S.D.N.Y. 2004); Yeshiva Chofetz, 98 F. Supp. 2d at 359.

action that falls within the statutory definitions.  See, e.g., Matter of Related Props., Inc. v. Town Bd. of Town/Village of Harrison, 22 A.D.3d 587, 591 (2d Dept. 2005).  As plaintiffs sought a permit for the property renovation at 96 Broadway, they fall within the broad definition of "public applicant or permittee." CRL § 76-a (1)(b).  As plaintiffs sue those who publicly criticized the project in the context of the permit process, to avoid dismissal, they must satisfy the heightened pleading requirements.  They cannot do so.

## POINT II

## GABOR DID NOT ACT UNDER COLOR OF LAW

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988).[3] Attempting to meet the state action requirement, plaintiffs repeatedly assert that, through his advocacy, Gabor and others "conspired" with public officials to deny plaintiffs' permit application. This pleading tactic must fail.

Under the "joint participation" theory, private actors may not conspire with public officials to violate the plaintiff's civil rights.  Dennis v. Sparks, 449 U.S. 24, 27-28 (1988), Ginsberg v. Healey Car & Truck Leasing, 189 F.3d 268, 271 (2d Cir. 1999).  Citing Gabor's outspoken advocacy, plaintiffs claim that City decisionmakers violated their rights in capitulating to public pressure from the Enterprise.  The Complaint fails to state a claim.  Defendants are improperly suing Gabor over his First Amendment right to petition the government.  See, Dougherty v. Town of N.

---

[3] The City's Rule 12(b)(6) motion to dismiss thoroughly details why the Complaint fails to state any Federal cause of action.  Defendant Gabor incorporates those arguments herein.

Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 91 (2d Cir. 2002) ("[t]he rights to complain to public officials and to seek administrative and judicial relief from their actions are protected by the First Amendment") (citing United Mine Workers v. Illinois State Bar Ass'n., 389 U.S. 217, 222 (1967) (right to petition government for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights"); Dutton v. Buckingham Twp., 1997 U.S. Dist. LEXIS 18068, at *7 (E.D. Pa. 1997).

Moreover, courts have repeatedly held that joint action does not exist merely because a private party induces a public official to take action. Scott v. Greenville County, 716 F.2d 1409, 1424 (4th Cir. 1983) ("biased citizens who write letters, speak up at public meetings, or even express their prejudices in private meetings with public officials without formulating a joint plan of action are not 'conspiring' with those officials in a way that subjects them to § 1983 liability"); Daniel v. Ferguson, 839 F.2d 1124, 1130 (5th Cir. 1988) ("a private party does not act under color of state law when she merely elicits but does not join in an exercise of official state authority"); Culebras Enterprises Corp. v. Rios, 813 F.2d 506, 519 (1st Cir. 1987) ("One who conspires with state actors to violate another's civil rights under color of state law may be liable under section 1983. Something more, however, than simple endorsement and encouragement of legislation that turns out to be unconstitutional is a necessary element of a section 1983 claim based upon a conspiracy theory. Responsibility for ascertaining the constitutionality of enacted legislation will ordinarily rest with the legislating body. Absent factors such as bribe-taking or other criminal misconduct, considerations of free speech normally militate against finding the basis for section 1983 damages in the advocacy of programs and legislation, even if the programs or statutes are themselves unconstitutional"); Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980) (dismissing case where, "[a]part from conclusory

10

statements that all defendants acted under color of law, and generalized allegations of conspiracy between all defendants, there was only the allegation that the individual private defendants cooperated in the surveillance of plaintiff on the request of government agencies"); Serbalik v. Gray, 27 F. Supp. 2d 127, 132 (N.D.N.Y. 1998) ("plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.  A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss") (citing  Powell v. Workmen's Compensation Board, 327 F.2d 131, 137 (2d Cir. 1964) and Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997)).

Rather than particularize this allegation, the Complaint generally refers to a "conspiracy." This is not enough to survive a Rule 12 motion.  Boddie, 105 F.3d at 862.  See also, Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1208 (7th Cir. 1980) ("Mere conjecture that there has been a conspiracy is not enough to state a claim"); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1988) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim"); Serbalik, 27 F. Supp. 2d at 133 ("General allegations of cooperation between private individuals and [] government agencies do not . . . make out a claim of action taken under color of state law") (citing Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980)); Shapiro v. City of Glen Cove, 2005 U.S. Dist. LEXIS 43276, at *17 (E.D.N.Y. 2005) ("[a] plaintiff must . . . allege with at least some degree of particularity overt acts which defendant[] engaged in which were reasonably related to the promotion of the claimed conspiracy") (quoting Auster Oil & Gas, Inc. v. Stream, 764 F.2d 381, 388 (5th Cir. 1985)).

The Complaint attempts to lay out the particulars at ¶ 79, which claims the City agreed

11

that Gabor would file a false complaint about 96 Broadway with the Building Department and disseminate false information about the project on-line and in the media.  Not only is Gabor's public advocacy protected under the First Amendment and the New York anti-SLAPP law, but the Building Department complaint cannot establish joint participation under § 1983. While plaintiffs allege that Gabor filed this false complaint on April 28, 2006 "alleging that the work performed at 96 Broadway was being performed on the building without permits or prior ARC approval" (Complaint ¶ 80), as the Complaint alleges that plaintiffs <u>did</u> possess a permit at this time (<u>id.</u> at ¶ 78), this allegation makes no sense at all.  If Gabor's complaint about the permit-less renovations was factually incorrect, the Building Department – which would certainly know the truthfulness of such an allegation – could not act on it.  The City has nothing to gain from an agreement to procure a citizen complaint which is easily proven inaccurate by reviewing the Building Department's files to confirm that plaintiffs had a permit.  Accordingly, while ¶ 80 attempts to specify an agreement between public and private officials, that alleged agreement cannot possibly support a § 1983 conspiracy claim.

Moreover, plaintiffs do not allege that the City revoked the permit on the basis of Gabor's alleged false complaint with the Building Department.  Rather, the Complaint repeatedly alleges that the permit was revoked for an entirely different reason: public opposition to the project.  <u>See</u>, <u>id.</u> at ¶¶ 82-83, 86, 88, 92.  <u>See also</u>, Complaint ¶ 112 ("At all times material hereto, the stop work order has nothing to do with public safety, but was issued due entirely to political and public pressure falsely and viciously created by the ARC-NAG Enterprise members to as to illegally sway public opinion on the project").  Gabor's alleged complaint to the City that plaintiffs were renovating the building without a permit is irrelevant to this case because the municipality's articulated reason for

12

the stop-work order was "public safety," not the unauthorized renovations. Id. at ¶¶ 87, 93, 111. As plaintiffs acknowledge that the stop-work order had nothing to do with the false complaint alleged in ¶ 80, their attempt to meet the "joint action" requirement by alleging that City officials procured a bogus complaint from Gabor must fail, particularly under the stringent test governing defamation claims under the SLAPP law. Guerrero, 10 A.D.3d at 116; Harfenes, 167 Misc.2d at 651.

### POINT III

### ASSUMING GABOR WAS A STATE ACTOR, THE CAUSAL CHAIN WAS BROKEN WHEN THE CITY LIFTED THE STOP-WORK ORDER

"The 'basic purpose' of § 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.' The type and amount of such damages is ordinarily determined according to principles derived from the common law of torts.'" Townes v. City of New York, 176 F.3d 138, 147-48 (2d Cir. 1999).

"This Court adheres to the common law definition of superseding cause: 'an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.'" Higazy v. Templeton, 2007 U.S. App. LEXIS 24443, at *37-38 (2d Cir. 2007). See also, id. at *38, n. 16 ("Put differently, a superseding cause is '[a]n intervening act that the law considers sufficient to override the cause for which the original tortfeasor was responsible, thereby exonerating that tortfeasor from liability'"); Warner v. Orange County Dep't of Prob., 115 F.3d 1068, 1071 (2d Cir. 1996) ("tort defendants, including those sued under § 1983, are 'responsible for the natural consequences of [their] actions.' . . . [A]n actor may be held liable for 'those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties'").

As to their claims against Gabor, plaintiffs plead themselves out of Federal court. Even if the City did <u>issue</u> the stop-work order in response to Gabor's alleged false complaint to the Building Department, the City next "<u>lifted</u> the stop work orders . . . on May 2, 2006." (Complaint at ¶ 99) (emphasis supplied). That favorable act breaks the causal chain allegedly triggered by the City's alleged agreement with Gabor to file a bogus complaint. Any influence on the alleged conspiratorial agreement to file a false complaint about the project was both short-lived and remedied when the Building Inspector lifted the stop-work order only a few weeks later. While the Complaint next alleges that the City again issued a stop-work order a month later, that decision had nothing to do with any alleged agreement for Gabor to file the false Building Department complaint; instead, it stemmed from public opposition to the project. <u>Id.</u> at ¶ 102. Nothing in the Complaint supports the inference that Gabor's illicit complaint to the Building Department in April 2006 caused defendants to later revoke and then re-instate the stop-work order or that the latter chain of events was foreseeable. Accordingly, under the stringent test governing defamation claims under the SLAPP law, this Court should grant the instant motion. <u>Guerrero</u>, 10 A.D.3d at 116; <u>Harfenes</u>, 167 Misc.2d at 651.

## POINT IV

### THE STATE LAW CLAIMS SHOULD BE DISMISSED

The Complaint alleges the following State law claims: intentional and negligent infliction of emotional distress, common-law fraud, abuse of process and defamation. Defendant Gabor incorporates the City's memorandum of law on these claims, emphasizing that (1) this Court should decline to exercise supplemental jurisdiction in the event it dismisses all Federal claims and (2) since case is a SLAPP suit, under the stringent test governing defamation claims under the SLAPP law,

14

plaintiffs cannot overcome the presumption against these claims.

### A.  Any defamation from June 2006 public comments is not actionable

As this action was filed on July 25, 2007, any defamation claim arising from Gabor's comment to the newspaper in June 2006 (Complaint ¶ 108) is time-barred under the one-year statute of limitations.  Morrison v. National Broadcasting Co., 19 N.Y.2d 453, 457-58 (1967).  Likewise, although plaintiffs claim that anonymous statements on an Internet message board about Dollinger are defamatory, the only such comments specified in the Complaint are reproduced at ¶ 121.  As the most recent Internet speech is dated June 22, 2006 – more than one year before plaintiffs filed this action – the Internet defamation claim is also time-barred.

### B. The remaining defamation claims have no merit

While "[c]omplaints which do not plead the allegedly defamatory statements in haec verba have in the past been held sufficient," the complaint must "afford defendant sufficient notice of the communications complained of to enable him to defend himself."  Kelly v. Schmidberger, 806 F.2d 44, 46 (2d Cir. 1986).  In addition to the (nonactionable) Internet defamation outlined above, the Complaint alleges that Gabor "repeat[ed] the same false allegations to the City's Chief Corporation Counsel and before the City Council meeting [sic] . . . or otherwise made at a public forum." (Complaint ¶ 256).  Likewise, plaintiffs claim that Gabor falsely asserted over the Internet and elsewhere that Dollinger acquired 113 Liberty Street by bribing City officials to condemn the building. However, nowhere in the 81-page Complaint do plaintiffs provide any specifics that would allow Gabor to defend himself; the Complaint tells us nothing about what exactly Gabor said about the Liberty Street bribery.  See, ¶¶ 185-87.  Without further detail, the Complaint fails as a matter of law.

15

Finally, to the extent plaintiffs suggest that Gabor claimed "at a public forum" (¶ 256) and "at public meetings" (¶ 185) that plaintiffs acquired 113 Liberty Street by bribing the City, the Complaint fails to state a claim.

"There is simply no special rule of law making criminal slurs actionable regardless of whether they are asserted as opinion or fact." Gross v. New York Times, 82 N.Y.2d 146, 155 (1993). In these cases, courts examine the context in which the statement was made. A statement represents nonactionable opinion where "the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff." Immuno AG v. Moor-Jankowski, 77 N.Y.2d 235, 254 (1991). "The courts are obliged to consider the communication as a whole, as well as its immediate and broader social contexts, to determine whether the reasonable listener or reader is likely to understand the remark as an assertion of provable fact." Gross, 82 N.Y.2d at 155.[4] Accordingly, in Greenbelt Publishing v. Bresler, 398 U.S. 6 (1970), speakers at a public hearing who accused a real estate developer of "the crime of blackmail" could not be sued for defamation. "As a matter of constitutional law, the word 'blackmail' in these circumstances was not slander when spoken." Rather, the speech was "rhetorical hyperbole, a vigorous epithet" and "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the developer's] negotiating position extremely unreasonable." Id. at 13-14.

Likewise, in 600 W. 115th St. v. Von Gutfeld, 80 N.Y.2d 130, 137 (2d Cir. 1992), the Court of Appeals held that allegations of criminal activity represent nonactionable defamation when

---

[4] The Court must resolve whether the statements represent expressions of opinion or fact. Steinhilber v. Alphonse, 68 N.Y.2d 283, 290 (1986). This issue should be resolved "by the Court in the first instance." Von Gutfeld, 80 N.Y.2d at 139.

uttered at a public hearing, "where citizens can come forward to be heard in a full and free debate of matters of public concern." In that case, a member of a condominium board of governors spoke out concerning the board's opposition to a permit application. While the defendant said the permit was "fraudulent" and the entire transaction "smells of bribery and corruption" (id. at 135), in context, this hyperbole uttered at a public hearing "was a statement of opinion and advocacy and not a presentation alleging objective fact." Id. at 145. See also, id. at 141-42 ("Reasonable listeners also are aware that impromptu comments at a heated public debate, unlike official testimony before a governmental subcommittee or even the reading of prepared remarks, are more likely to be the product of passionate advocacy than careful, logically developed reason. Finally, the type of forum is relevant because reasonable listeners arrive armed with the knowledge that the deliberations are in progress, that no expertise is required of those who choose to speak, and that robust, controversial debate is expected and frequently encouraged"). The solution to comments at a public hearing is not a lawsuit but "self help," as the target of the speech can defend himself and correct the record on the spot. Von Gutfeld, 80 N.Y.2d at 138 (the public hearing is "the embodiment of self-help. The defamed, in the same setting and with the same audience, had the immediate opportunity to air his competing view").

        As courts presume that offensive comments in a public forum cannot give rise to a defamation claim, plaintiffs' failure to identify any details about what Gabor allegedly said and where he said it doom this claim, particularly since this case falls within the protections of New York's anti-SLAPP law. Guerrero, 10 A.D.3d at 116; Harfenes, 167 Misc.2d at 651.

17

## <u>CONCLUSION</u>

Michael Gabor is not a State actor.  Nor does the Complaint sufficiently allege that he was a joint participant with government officials to deny any of plaintiffs' rights.  The Complaint also fails to state a claim for defamation.  For these reasons – along with the arguments in the City's Rule 12 motion on the merits of plaintiffs' constitutional claims – this Honorable Court should dismiss this case in its entirety.

Dated:     November 21, 2007

Respectfully submitted,

S/_____
STEPHEN BERGSTEIN (6810)

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for defendant Michael Gabor

18