UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
96 BROADWAY LLC, its members, DOUGLAS
DOLLINGER MICHAEL MOLUS and CAROL
MOLUS, DOUGLAS R. DOLLINGER, and the
LAW OFFICES OF DOUGLAS R. DOLLINGER,
individually and others so similarly situated,      07 Civ. 6689 (SCR)
    ECF Case
        Plaintiffs,

     -vs-

THE CITY OF NEWBURGH, et al.,

        Defendants.
-------------------------------------------------------------X


**DEFENDANT MICHAEL GABOR'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

STEPHEN BERGSTEIN (6810)

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(845) 469-1277
Counsel for defendant Michael Gabor

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I:     THE COMPLAINT DOES NOT STATE A CLAIM FOR RELIEF
               AND THIS COURT SHOULD IGNORE PLAINTIFFS' EVIDENTIARY
               SUBMISSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT II:    THIS CASE IS A SLAPP SUIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT III:   THIS COURT SHOULD NOT ALLOW PLAINTIFFS TO
               PUNISH GABOR FOR EXERCISING HIS RIGHT TO FREE SPEECH . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

Aronson v. Wiersma, 65 N.Y.2d 592 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Blue v. Koren, 72 F.3d 1075 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Boddie v. Schnieder, 105 F.3d 857 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Brian v Richardson, 87 N.Y.2d 46 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Connell v. Signoracci, 153 F.3d 74 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Davis v. Vill. Park II Realty, 578 F.2d 461 (2d Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Eastern Railroad Presidents Conference v. Noerr Motor Freight, 365 U.S. 127 (1961) . . . . . . . . 9

Friedl v. City of New York, 210 F.3d 79 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Global Network Communs., Inc. v. City of New York, 458 F.3d 150 (2d Cir. 2006) . . . . . . . . . 3

Gross v. New York Times, 82 N.Y.2d 146 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Harfenes v. Sea Gate Association, 167 Misc.2d 647 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

Immuno AG v. Moor-Jankowski, 77 N.Y.2d 235 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Steinhilber v. Alphonse, 68 N.Y.2d 283 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Webb v. Goord, 340 F.3d 105 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

600 West 115th Street v. Von Gutfeld, 80 N.Y.2d 130 (1992) . . . . . . . . . . . . . . . . . . . . . . . 7, 8

**PRELIMINARY STATEMENT**

Defendant Michael Gabor submits this memorandum of law in further support of his motion to dismiss the Complaint under Rule 12(b)(6). Although Gabor is not a member of the City government, plaintiffs sue this private actor under 42 U.S.C. § 1983 alleging that he and other community activists illegally conspired with public officials to stop plaintiffs' development project at 96 Broadway. In response, plaintiffs (1) offer conclusory factual arguments about the alleged conspiracy to violate their constitutional rights; (2) ignore Gabor's arguments under the anti-SLAPP law and (3) improperly rely on materials outside the Complaint.

**POINT I**

**THE COMPLAINT DOES NOT STATE A CLAIM FOR RELIEF AND THIS COURT SHOULD IGNORE PLAINTIFFS' EVIDENTIARY SUBMISSION**

As outlined in Gabor's opening brief, the Complaint states no Federal claim against this defendant. The Complaint alleges as follows:

1. After the City declined to re-appoint Gabor to the ARC, he and other members of a conspiratorial "Enterprise" agreed with municipal officials to obstruct plaintiffs' building project by filing a bogus complaint with the Building Department and disseminating false information to sway public opinion against plaintiffs. The false complaint alleged that plaintiffs lacked any permit or ARC approval to renovate 96 Broadway. (Complaint ¶¶ 80-81). We note that, while plaintiffs have improperly opposed this Rule 12(b)(6) motion by submitting a large volume of documents, Gabor's narrow written complaint on April 28, 2006 (Exhibit 15 to Dollinger aff.) bears no relationship to the broad violation notices which the City issued a few days later (Exhibits 16 and 17).

2. In May 2006, bowing to public pressure to stop the project, the City revoked the permit. Id. at ¶¶ 86-88, 92-93. However, a few days later, the building inspector lifted the stop-work

order, only to advise plaintiffs in less than a month that public pressure <u>again</u> compelled the City to shut down the project. Id. at ¶¶ 99, 102-04, 106.

3. Public opposition to the project continued through June 2006 as Gabor and others spoke out in the newspaper and on-line. Id. at ¶¶ 108-112, 119-122. When plaintiff Douglas Dollinger appeared before the ARC that month, that body had already predetermined to deny his application, having conferred with members of the Enterprise without his knowledge. Id at ¶¶ 124, 128, 134, 137-39.

4. In Spring 2007, after the City Manager told Dollinger that re-submitting his application would resolve the matter, the ARC again pulled the rug from under plaintiffs, denying the application in response to public pressure. Id. at ¶¶144, 146, 149-152.

This sequence of events confirms that any causal connection between Gabor's community activism and the City's denial of plaintiffs' application is too attenuated to hold this non-state actor liable under the Constitution. While the City granted and then revoked the permit, the timeline shows that Gabor's alleged illicit role was no longer a factor, especially since the City re-issued the permit in May 2006 and the primary reason for denying plaintiffs' application was public pressure, i.e., First Amendment activity. Even assuming this Court overlooks plaintiffs' failure to file an Article 78 petition, any relief in this zoning dispute lies with the municipal defendants, not Gabor. The only rational inference drawn from the Complaint is that Gabor is not legally responsible for plaintiffs' failed development project.

Plaintiffs improperly rely on exhibits in opposition to Gabor's motion. Rather than cite relevant portions of the Complaint, plaintiffs routinely reference "Exhibits 1 through 34." As plaintiffs do not even highlight which exhibits in particular support the rhetoric in their brief, they

evidently expect this Court to page through this extensive documentary submission to determine for itself which documents support plaintiffs' claim. This Court should decline that invitation and rely solely on the allegations in the Complaint.

"A district court errs when it 'considers affidavits and exhibits submitted by' defendants, or relies on factual allegations contained in legal briefs or memoranda, in ruling on a 12(b)(6) motion to dismiss." Friedl v. City of New York, 210 F.3d 79, 84 (2d Cir. 2000). See also, Global Network Communs., Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) ("The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits").

As plaintiffs may not oppose a Rule 12(b)(6) motion with materials outside the Complaint, this Court should disregard the voluminous extrinsic evidence. This Court should also ignore rhetoric in plaintiffs' brief which appears nowhere in the Complaint, such as the allegation that community activists like Gabor "illegally control application approvals for the City's landowners" and utilize "intimidating tactics to intimidate City employees." (Pl. Br. at 2). Indeed, unlike the Complaint, Dollinger's affidavit (¶ 32) states that "although he was not reappointed by the City Council, while acting under color of law, [Gabor] continued to make decisions for the ARC, even acting as Commission Chairperson after his position on the ARC was not renewed and had expired."[1] This Court should also reject the fanciful claim that City officials deputized Gabor and other activists in allowing their opposition to the project to unduly influence the approval process.

---

[1] We note that, while plaintiffs have access to public records in connection with his permit dispute with the City, belying his claim that Gabor unlawfully sat on the ARC board in furtherance of the illegal conspiracy against his project, the minutes provided in support of Dollinger's improper Rule 12(b)(6) affidavit do not reflect Gabor's presence on that board. (Exhibit 24 to Dollinger aff.).

See, i.e., Dollinger aff. ¶¶ 76-78.  As reflected in plaintiffs' repeated charge that City officials capitulated to public pressure, this allegation represents a back-door challenge to Gabor's First Amendment right to petition the government.

Plaintiffs' arguments boil down to the following: Gabor and other community activists have aggressively participated in City politics by "plac[ing] themselves on all of the City boards and commissions they can" in order to "control the City." (Pl. Br. at 9).  Moreover, by issuing false and misleading public statements about plaintiffs' building project (id. at 9-10, 11-12) and serving as unlawful members of the ARC (id. at 11), Gabor and others corrupted the process and "the City [was] nothing more than a facade for their illegal activities including crushing Plaintiffs' project and running them out of town." Id. at 10.  However, as set forth in Gabor's opening brief, the Complaint fails to allege non-conclusory facts in support of any of these allegations.  As conclusory allegations of conspiracy cannot repel a Rule 12(b)(6) motion, the Complaint fails to state a claim against Gabor. See, Webb v. Goord, 340 F.3d 105, 111 (2d Cir. 2003) ("[t]he plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail") (citing Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (authorizing dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

## POINT II

## THIS CASE IS A SLAPP SUIT

New York's anti-SLAPP law places this case in context.  As set forth in Gabor's opening brief, developers cannot retaliate against community activists for their public advocacy during the permit process.  To avoid dismissal, the plaintiff must demonstrate that "the cause of action has a

substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." Harfenes v. Sea Gate Association, 167 Misc.2d 647, 651 (1995) (citing CPLR §§ 3211(g) and 3212(h)). This increases the plaintiff's burden to avoid dismissal. Guerrero v. Carva, 10 A.D.3d 105, 116 (1st Dept. 2004); Yeshiva Chofetz Chaim Radin v. Village of New Hempstead, 98 F. Supp. 2d 347, 359 (S.D.N.Y. 2000).

Plaintiffs neither analyze the anti-SLAPP law nor respond to Gabor's arguments. Instead, they claim the law does not protect Gabor because he illegally sat on the ARC, filed a false complaint about plaintiffs with the Building Department and defamed Dollinger in June 2006. (Pl. Br. at 18-19). These arguments cannot satisfy the heightened burden under the SLAPP law.

As outlined in Point I and Gabor's opening brief, the Complaint fails to properly allege that Gabor illegally sat on the ARC or filed a false complaint against plaintiffs. In addition, Gabor's time-barred public comment in June 2006 does not represent actionable defamation sufficient to get around the anti-SLAPP law. (As set forth in their brief at p. 25, plaintiffs also cite this alleged defamation in support of their claim for intentional infliction of emotional distress, which also carries a one-year statute of limitation). Plaintiffs annexed the newspaper article as Exhibit 19 to Dollinger's affidavit.

Not all offending statements are defamatory. A statement represents nonactionable opinion unless "the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff." Immuno AG v. Moor-Jankowski, 77 N.Y.2d 235, 254 (1991). This Court resolves whether the statements represent protected opinion. Steinhilber v. Alphonse, 68 N.Y.2d 283, 290 (1986). "The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if

5

not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction." Aronson v. Wiersma, 65 N.Y.2d 592, 594 (1985). This Court should not "isolate particular phrases but . . . consider the publication as a whole." Immuno, 77 N.Y.2d at 250.

Read in context, Gabor's published statement that the building project involved "payoffs" is not sufficiently defamatory to survive a SLAPP motion. The article confirms that Gabor addressed a controversial building project which divided the community over the irregular building permit. In the same article, even Dollinger and the code enforcement officer conceded that the permit was improper and the project was controversial. Consistent with the article's focus, as an outspoken critic, Gabor said the process was "shady" and that the community speculated that "there must be favoritism or payoffs." A few paragraphs later, Dollinger acknowledged that the permit was improper and that "I'm sure that are people out there who think it's some big payoff or conspiracy." Critically, the code enforcement officer conceded that "I blew it. With all the projects going on in the city, this one got past me. It's my fault." Plaintiffs cannot highlight Gabor's statement in isolation. Viewed in context of the article as a whole, see, Immuno, 77 N.Y.2d at 250, anyone reading the article would discount the possibility of payoffs in light of the City official's admission that the questionable permit was his fault alone.

Moreover, the reader would understand that Gabor's comment was the kind of overheated hyperbole that typically characterizes political disputes in the community. New York courts recognize that public comments in this context are taken with a grain of salt. Compare, 600 West 115th Street v. Von Gutfeld, 80 N.Y.2d 130, 134-35, 141-42 (1992) (as "[r]easonable listeners also . . . aware that impromptu comments at a heated public debate, unlike official testimony before a

6

governmental subcommittee or even the reading of prepared remarks, are more likely to be the product of passionate advocacy than careful, logically developed reason," no defamation claim where a citizen was sued after complaining at public meeting about a "fraudulent" permit resulting from "bribery and corruption"); Steinhilber, 68 N.Y.2d at 294 ("even apparent statements of fact may assume the character of statements of opinion, and thus be privileged, when made in public debate, heated labor dispute, or other circumstances in which an 'audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole'"). Gabor's off-the-cuff statement about what the community thought about the permit is distinguished from what the public would regard as more reliable and thoughtful commentary. Brian v Richardson, 87 N.Y.2d 46, 51-52 (1995) (contrasting a letter to the editor with "a lengthy, copiously documented newspaper series that was written . . . after what purported to be a thorough investigation").

Similarly, no one reading the article would assume that Gabor was speaking on the basis of undisclosed facts. Gabor opined that the process was "shady" and said that others in the community thought "there must be favoritism or payoffs." Gabor did not claim to possess any facts informing his opinion that the permit process was "very, very wrong" and "so secretive." As Gabor summarized community sentiment in criticizing the project, he did not draw from his own investigation suggesting that a concrete factual basis informed his comment. Compare, Steinhilber, 68 N.Y.2d at 289-290 ("[w]hen . . . the statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is actionable. The actionable element of a 'mixed opinion' is not the false opinion itself – it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking"). See also, Gross v. New York Times,

7

82 N.Y.2d 146, 153-54 (1993).

Finally, "[t]he first remedy of any victim of defamation is self-help — using available opportunities to contradict the lie or correct the error and thereby to minimize its adverse impact on reputation.'" Von Gutfeld, 80 N.Y.2d at 138. The newspaper gave Dollinger an opportunity to defend plaintiffs in the same article. While acknowledging that the permit process raised questions about "some big payoff or conspiracy," he said that "[s]omeone [simply] dropped the ball somewhere down the line" and that plaintiffs were "trying to do well by the city." As plaintiffs resorted to "self help" in defending themselves, they cannot meet the stringent test governing defamation claims under the SLAPP law.

Particularly since Dollinger defended himself in the same article and the reader understood through the code enforcement officer's mea culpa that an innocent reason explained the irregular permit, under the stringent test governing defamation claims under the SLAPP law, the benefit of any doubt should redound to Gabor. This Court should grant the instant motion. Guerrero, 10 A.D.3d at 116; Harfenes, 167 Misc.2d at 651.

## POINT III

### THIS COURT SHOULD NOT ALLOW PLAINTIFFS TO PUNISH GABOR FOR EXERCISING HIS RIGHT TO FREE SPEECH

No matter how plaintiffs frame the issues, this Complaint would ultimately punish Gabor for petitioning the government for grievances and exercising his right to free speech. The Complaint confirms that this non-state actor is active in the community and has sparred with Dollinger about 96 Broadway. Even without the protections of New York's anti-SLAPP law, this Court should not allow plaintiffs to recover damages for Gabor's public advocacy.

8

In opposition to Gabor's motion to dismiss, plaintiffs' legal arguments make no sense at all. It is not clear how <u>Eastern Railroad Presidents Conference v. Noerr Motor Freight</u>, 365 U.S. 127 (1961), helps plaintiffs, who cite that case for the proposition that speech is not protected when the speaker wants to injure the plaintiff. (Pl. Br. at 18). That case does not involve the First Amendment. It addresses whether, in violation of the Sherman Anti-Trust Act, the railroad industry conspired to restrain trade and monopolize the long-distance freight business by conducting a publicity campaign against truck operators.

Moreover, plaintiffs misunderstand the First Amendment in asserting that the lawsuit has not chilled Gabor's speech. (Pl. Br. at 19) (citing <u>Connell v. Signoracci</u>, 153 F.3d 74 (2d Cir. 1998)). The three part test under <u>Connell</u> applies where the plaintiff alleges that the government has violated the First Amendment. In contrast, plaintiffs seek damages for the consequences of Gabor's public advocacy. Gabor's First Amendment right to petition the government outweighs plaintiffs' objection to the City's administrative decisions concerning 96 Broadway. As outlined in Gabor's opening brief (at pp. 9-10), courts have repeatedly held that joint action does not exist merely because a private party induces a public official to take action. As Gabor's activity represents classic First Amendment activity, the Complaint fails to state a claim against this private citizen.

The cases holding that § 1983 joint-action cases cannot punish pure First Amendment activity do not require the defendants to affirmatively show that the lawsuit has chilled their speech. In their brief, plaintiffs argue that Gabor has failed to prove this chilling effect. (Pl. Br. at 20) (citing <u>Davis v. Vill. Park II Realty</u>, 578 F.2d 461 (2d Cir. 1978)). They further argue that Gabor must affirmatively prove plaintiffs' ill-motive in filing this case. <u>Id.</u> (citing <u>Blue v. Koren</u>, 72 F.3d 1075 (2d Cir. 1995)). These and other cases in plaintiffs' brief (at pp. 20-21) outline the elements of an

9

affirmative First Amendment claim against the government. See, e.g., Davis, 578 F.2d at 464 ("[o]n remand, . . . [t]he district court must determine whether there is governmental action"). Plaintiff cannot simply find cases interpreting the First Amendment in other contexts and then argue that Gabor has failed to satisfy inapposite legal standards.

## CONCLUSION

The Complaint fails to state any cognizable claims against Michael Gabor, a non-government actor who exercised his right to petition the government in the context of plaintiffs' development project at 96 Broadway. As this case violates the anti-SLAPP law and fails to establish that Gabor is legally responsible for any of plaintiffs' damages, this Court should grant the instant motion.

Dated:     January 15, 2008

Respectfully submitted,

S/_____
STEPHEN BERGSTEIN (6810)

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
(9845) 469-1277
Counsel for defendant Michael Gabor